THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

Kirk King
A-039-746-517

      Petitioner, Pro Se

      v.

Mr. Merrick Garland
United States Attorney General
Mr. Alejandro Mayorkas
Secretary of the
Department
of Homeland Security
Mr. Thomas Feely
Field Office Director
for Detention Removal
Mr. Jeffrey Searls
Facility Director
Buffalo Federal Detention Center
Mr. Klaybor
Deportation Officer
      Respondents.

VERIFIED PETITION FOR A WRIT OF

HABEAS CORPUS PURSUANT TO

28 U. S. C. § 2241

---

KIRK KING: A # 039-746-517

# Table of Contents

| Content | Pages |
|---|---|
| **Table of Contents** | **I-II** |
| QUESTIONS TO BE ANSWERED IN OPPOSITION | III-IV |
| INTRODUCTION | 1-3 |
| PARTIES TO THE PROCEEDING | 3-4 |
| JURISDICTION AND VENUE | 4 |
| EXHAUSTION OF REMEDIES | 4-5 |
| RELEVANT FACTS AND PROCEDURAL HISTORY | 5-11 |
| LEGAL FRAMEWORK | 11 |
| I. DHS/ICE IS ATTEMPTING TO REMOVE PETITIONER BEFORE HIS BOARD OF IMMIGRATION APPEALS PETITION CAN BE ADJUDICATED AND PETITIONER'S ADJUSTMENT OF STATUS VIA U VISA APPLICATION CAN BE PROCESSED IN VIOLATION OF PETITIONERS DUE PROCESS RIGHTS. | 11-13 |
| II. DHS/ICE IS ENGAGED IN ANIMUS OR RETALIATION BASED ON PROTECTED SPEECH WHICH IS A VIOLATION OF PETITIONER'S DUE PROCESS RIGHTS. | 13-15 |
| III. PETITIONER IS SEEKING A STAY OF DEPORTATION DUE TO DEPORTATION BEING MOTIVATED BY ANIMUS BASED ON THE JAMAICAN NATIONALITY OF PETITIONER WHICH VIOLATES THE PETITIONER'S DUE PROCESS RIGHTS. | 15-18 |
| IV. PETITIONER SEEKS A PRILIMINARY INJUNCTION AGAINST DHS/ICE IN THERE ATTEMPTS TO REMOVE PETITIONER ILLEGALLY. | 18-19 |
| STAY OF REMOVAL AND PRELIMINARY INJUNCTION | 19 |
| A. LIKELIHOOD OF SUCCESS ON THE MERITS: | 20-22 |

I.

039-746-517

**B. IRREPARABLE INJURY TO PETITIONER:**      **22-23**

**C. HARM TO OTHERS AND THE PUBLIC INTREST:**      **23-24**

**D. THE GOVERNMENTAL INTEREST:**      **24**

**NO BENEFIT FROM OWN WRONGDOING:**      24-25

**Rooker-Feldman Doctrine:**      25-26

**Fraud Upon The Court:**      26-28

**V. PETITIONER REQUEST THAT SECOND CIRCUIT RETAIN JURISDICTION OVER THIS MATTER**      **28-29**

For the avoidance of doubt, the terms of the requested mandate should include at least
the following:      **29-30**

The requested mandate finds support in the following legal authority and/or
compelled by the following facts and circumstances of Petitioner:      **30-34**

**CONCLUSION**      **35**

**Affidavit of Service**      **36**

II.

039-746-517

jurisdiction) as a Habeas Corpus petition and/or the Board of Immigration Appeals for full development of the record within the agency to facilitate Appellate review and Judicial review.

(c) That, upon remand to the WDNY and/or the BIA, the Second Circuit Court of Appeals maintains jurisdiction over Petitioner's claims.

(d) That the Court order discovery within the WDNY.


VI. SHOULD THE COURT GRANT THE PETITIONER LEAVE AND TIME TO FILE A BILL OF PARTICULARS PROVIDING TEH FACTS, SUPPORTING LAW, AND THE RELIEF REQUESTED REGARDING HIS CONDITIONS OF CONFINEMENT?

VII. SHOULD PETITIONER BE GRANTED RELIEF PURSUANT TO A BIVENS ACTION AND/OR ACTION PURSUANT OT SECTION 1985 BECAUSE THE DHS/ICE IS ENGAGED IN A PROCESS TO WRONGFULLY REMOVE PETITIONE BASED ON VIOLATIONS OF HIS CONSTITUTIONAL RIGHTS?

VIII. SHOULD PETITIONER BE RELEASED DUE TO THE ANIMUS AND RETALIATORY ACTIONS OF DHS/ICE?

IV

**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

---

Kirk King
A-039-746-517

      Petitioner, Pro Se


      v.


Mr. Merrick Garland           **VERIFIED PETITION FOR A WRIT OF**
United States Attorney General
Mr. Alejandro Mayorkas       **HABEAS CORPUS PURSUANT TO**
Secretary of the
Department                   **28 U. S. C. § 2241**
of Homeland Security
Mr. Thomas Feely
Field Office Director
for Detention Removal
Mr. Jeffrey Searls
Facility Director
Buffalo Federal Detention Center
Mr. Klaybor
Deportation Officer
         Respondents.

---


## INTRODUCTION

1.     Kirk King ("Petitioner"), is a native of Jamaica who entered the United States as a Legal

Permanent Resident on August 22, 1985.

2.     Petitioner is currently being detained by the Department of Homeland Security (" DHS") at the

1.

039-746-517

Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Petitioner has been in immigration detention since February 17, 2023.

3.      Petitioner was served with a Notice to Appear (NTA) on June 29, 2017 charging him with removability based on his conviction(s) for Criminal Possession of a Weapon in the Second Degree (Two Counts), Attempted Murder in the Second Degree, Attempted Assault in the First Degree, Assault in the Second Degree in 2012 and Attempted Possession of a Weapon in the Third Degree in 1991.

4.      Petitioner was found to be removable under Section 237 (a) of the Immigration and Nationality Act (Act).

5.      As such, Petitioner has been subject to mandatory immigration detention for approximately three (3) months while removal proceedings are ongoing.

6.      Without intervention from this Court, Petitioner's removal will proceed illegally, as it seems Petitioner's immigration case has been concluded after only one court appearance on June 29, 2017.

7.      Petitioner filed an Emergency Motion to Reopen and for a Stay of Removal on March 15, 2023. This Motion was denied by the Honorable Judge Sagerman on March 23, 2023. Petitioner then filed a timely appeal to the Board of Immigration Appeals on April 4, 2023 for his Motion to Reopen and asked for an Emergency Stay of Removal so that he can fully present his claim for Deferral of Removal under the Convention Against Torture (CAT) and have his U Visa application processed.

8.      Petitioner was granted his motion to Appeal by the Board of Immigration Appeals on April 25, 2023.

9.      Petitioner filed a timely Appeal on May 3, 2023 and is currently awaiting the response from the Department of Homeland Security.  Petitioner served documents on DHS/ICE on May 3, 2023.

2.

039-746-517

10.     Mr. King petitions this Court to challenge the Constitutionality of his removal while he has

pending litigation for relief in several venues afforded by the due process clause of the United States

Constitution. Petitioner here asserts, inter alia, that DHS/ICE is seeking to remove him while he has

current legal motions pending with the Board of Immigration Appeals and is seeking relief via the

adjustment of his status with the United States Citizenship and Immigration Services.

11.     To remedy this violation, Petitioner respectfully requests this Court to order the Department of

Homeland Security to halt their forced unlawful removal where no AFOR exist. Removal should be

stayed pending the outcome of his current ongoing Court proceedings, Asylum Application, and U Visa

Application which is in line with substantive and/or procedural due process norms, unless the DHS/ICE

can show that Petitioner does not deserve the Equal Protection of the law to not be removed while his

Motion to Reopen (MTR) is pending before the BIA and or to file a Petition for Review (PFR) with the

Second Circuit Court. Petitioner's removal must be stayed, with an order barring DHS/ICE from

executing a planned May 2023 removal. A removal that is without authority, as due to MTR there is no

AFOR to execute.

## PARTIES

12.     Petitioner, Kirk King is a native of Jamaica who has resided in the United States since his

arriving as a Legal Permanent Resident on August 22, 1985, he is currently detained at Buffalo Federal

Detention Facility.

13.     Respondents, Mr. Merrick Garland United States Attorney General, Mr. Alejandro Mayorkas

Secretary of the Department of Homeland Security; Mr. Thomas Feely, Field Office Director

for Detention Removal; Mr. Jeffrey Searls, Facility Director Buffalo Federal Detention Facility and

3.

039-746-517

Mr. Klaybor and Mr. Secore Deportation Officers are sued in their official capacity as the Officers-in-Charge of the Buffalo Federal Detention Facility, at which Petitioner is currently detained and with authority over Petitioner's detention and removal. Mr. Klaybor and Mr. Secore are sued in their personal capacity for violating teh Equal Protection Clause; the Due Process Clause; for Nationality and Protected Speech based animus.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction under the U.S. Constitution, U.S. CONST. art. I § 9, cl. 2 ("Suspension Clause"), and federal statutes 28 U.S.C. § 1331 (federal question); 28 U.S.C. 2241 (habeas corpus); and 28 U.S.C. § 1651 (All Writs Act) and 42 U.S.C. 1985(2)sections (A) and (C) as well as under a Bivens Action for violation of the Constitutional or Federal laws.

15.     Additionally, this Court has jurisdiction to grant injunctive relief pursuant to the Declaratory Judgement Act, 28 U.S.C. § 2202.

16.     Federal District Courts have jurisdiction to hear habeas corpus claims by noncitizens challenging their detention by DHS. (see Demore v. Kim, 538 U.S. 510, 516-17 [2003]) also (see Zadvydas v. Davis, 533 U.S. 678, 687-88 [2001]).

17.     Petitioner is suing Deportation Officers Klaybor and Secore in their Official Capacity via the Bivens Action or 42 U.S.C. § 1985 (2). (Bivens v. Six Unknown Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 [1971]). Deportation Officer Klaybor has violated the Equal Protection Clause of the United States Constitution. Deportation Officer Klaybor has been attempting to remove Petitioner while there is no Administratively Final Order of Removal (AFOR) for Petitioner from the Board of Immigration Appeals. Petitioner has suffered an adverse life event over which Congress has legislated statutory

4.

039-746-517

rights and/or opportunity to adjustment of status in the form of the U Visa, which is currently being

processed in Petitioner's case. As a matter of fact, Deportation Officers Klaybor and Secore actions are

unlawful because DHS/ICE's own policy forbids a removal while a U Visa application is pending. This

venue is proper in the U.S. District Court for the Western District of New York under 28 U.S.C. § 1391

because Kirk King is currently being detained within this District. Petitioner is currently being detained

at the Buffalo Federal (DF) New York; and a substantial part of the events giving rise to the claims in this

action took place in this District. Similarly the District Court has jurisdiction pursuant to the Nationality

and/or Protected Speech based animus.


## EXHAUSTION OF REMEDIES

18.     No statutory exhaustion requirement exists for petitions challenging immigration detention

under 28 U.S.C. § 1226(c). see Abdi v. Nielson, 287 F.Supp. 3d 327, 341 [W.D.N.Y. 2018]; see Aranjo-

Cortes v. Shanahan, 35 F.Supp. 3d 533 [S.D.N.Y. 2014] ("There is no statutory requirement that a habeas

petitioner exhaust his administrative remedies before challenging his immigration detention.").

19.     While Courts may discretionally require administrative exhaustion for prudential reason---"the

general rule is that a party may not seek Federal judicial review of an adverse administrative

determination until the party has first sought all possible relief with the agency itself". see Beharry v.

Ashcroft, 329 F.3d 51, 56 [2d Cir. 2003] (internal citation and quotation omitted)---the Court should not

require Mr. King to do so in the instant matter because Mr. King's detention under 8 U.S.C. § 1226 (c) is

mandatory and does not provide him any administrative options with which to challenge his ongoing

detention. (see Cave v. East Meadow Union Free Sch. Dist., 514 F.3d 240, 249 [2d Cir. 2008]). ("The

5.

039-746-517

exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy."). Indeed, Mr King's detention or restraint of liberty is about to be illegally transformed to confinement at BFDF into removal to Jamaica, without an apportunity to travel to the U.S. per Ragbir 2019, transfer to Jamaica leaves the habeas corpus remedy available. The WDNY should act to prevent an unlawful removal.

20.     Furthermore, excusal of administrative exhaustion is generally warranted in cases where the petitioner "has raised a substantial constitutional question." see Blandon v. Barr, 434 F.Supp. 3d 30, 37 [W.D.N.Y. 2020], see also Unites States v. Gonzalez-Roque, 301 F.3d 39, 48 [2d Cir. 2002] ("The BIA does not have jurisdiction to adjudicate constitutional issues."). Here, Mr. King's petition raises the substantial constitutional question of whether his continued detention pursuant to  8 U.S.C. § 1226 (c) comports with due process. Accordingly, Petitioner should be excused from pursuing administrative exhaustion before proceeding with this petition. Furthermore, the unlawful proposed May 2023 removal has no statutory basis as removal is only authorized where there is an AFOR. (see Footnote 1 of Nken stating Where the BIA's decision is stayed until after judicial review, there is no AFOR for the DHS/ICE to execute. That is, **"there is no longer a final order of removal pursuant to which the alien [DT] could be removed."** )

## RELEVANT FACTS AND PROCEDURAL HISTORY

21.     Kirk King immigrated to the United States as a Lawful Permanent Resident in August of 1985. He was ten (10) years old and came to the United States with his mother who was also a Lawful Permanent Resident.

6.

039-746-517

22.    Petitioner became a run away at the age of 14 and was turned on to using crack cocaine and

trafficked for sex by and adult male. This led to Petitioner having frequent encounters with Law

Enforcement at an early age. Petitioner was convicted for the attempted possession of a weapon in the

third degree in 1991 when he was seventeen years old. He was sentenceed to probation and was not

deportable due to this conviction. Petitioner was convicted of attempted possession of cocaine in 1992

when he was eighteen years old. He was sentenced to four and a half to nine years in prison but was

still not deportable for this conviction , due to the protection offered by 212 (c) which was the law in

effect at the time.

25.    Petitioner was able to get help for his substance abuse in prison and completed drug treatment

and has been drug free since his release in 1996. Petitioner completed his Bachelors and a Masters in

Social Work at Adelphi University upon his release from prison in 1996. Petitioner has consistently

worked in the field of Social Work to help other individuals with substance abuse related issues from

the time he was released from prison in 1996.

27.    Due to Petitioner's early sexual abuse encounters he identifies as a bi-sexual male and has been

in long term relationships with both male and females beginning in 1988 when petitioner was first

trafficked for sex by an adult male. Petitioner had to keep his sexual orientation a secret because in his

culture anyone who engages in same sex relationships is considered a homo-sexual and is an outcast.

Petitioner kept his sexual orientation a secret because he was concerned for his well being and the well

being of his mother and eventually his son.

28.    Petitioner was the victim of attempted extortion beginning in 2010. It was discovered by

members of the Jamaican gang the "GAZA EMPIRE" that Petitioner was in a relationship with another

7.

039-746-517

male while living with the mother of his child. This information was used to attempt to extort money and services from Petitioner. Petitioner was subject to extortion and was shot when he did not pay the money that was demanded from him due to his sexual orientation. (see TAB 1 Asylum Application).

29.     On the night of July 2, 2012 Petitioner had an encounter with these gang members at a store in Far Rockaway, Queens, New York. Petitioner was shot during this encounter and was later arrested at Jamaica Hospital for the shooting of one of the relatives of these gang members. On July 2, 2012 Petitioner was shot five (5) times and blamed for a crime that he did not commit due to refusing to pay extortion money to Jamaican gang members who found out that petitioner is bi-sexual. (see TAB 1 Asylum Application).

30.     Petitioner maintained his innocence and went to trial in September of 2013. At the trial the people presented a .45 caliber Bursa hand gun which they claimed Petitioner used to shoot Andre Black (victim). There was no proof that the victim was shot by this gun nor was there any proof presented that Petitioner handled this gun via finger prints or DNA. Petitioner's counsel at his trial failed to prepare for trial because his goal was to secure a plea deal for Petitioner. Petitioner would not accept a plea deal to a crime that he did not commit. Petitioner  continued to maintain his actual/factual innocence.

31.     Petitioner was found guilty of all charges after a jury trial. Petitioner was sentenced to 13 years incarceration and 5 years post release supervision. Petitioner continued to maintain his innocence and filed an appeal with the Appellate Division Second Department in 2015, which was denied in 2016. (see People v. King, 144 A.D.3d 1176 [2016]). The Court of Appeals denied Petitioner leave to appeal in 2017. (see People v. King, 28 N.Y.3d 1185 [2017]).

8.

039-746-517

32.     In 2016 Petitioner began to file Freedom of Information Law Request seeking documents to

support a post conviction motion. Petitioner was sent a partial copy of the medical records of the victim

that were entered as evidence against Petitioner at his trial. These medical records speak about three

(3) x-rays that were taken of an intact bullet that is lodged in the victim. This bullet was never removed

to identify the caliber of the bullet that struck the victim. Petitioner discovered that the x-rays can be

used to identify the caliber a bullet, if the bullet is intact based on the size of the projectile. 'State

official were able to determine the caliber of the bullet that struck the victim based on the size of the

projectile depicted in the x-rays when bullet could not be removed' (paraphrasing). (see Pelkey v. Viger,

289 A.D.2d 899 ) also (see People v. Allini, 60 A.D.2d 866).

33.     In 2017 Petitioner filed a new Freedom of Information Law Request with the Queens County

District Attorney's Office seeking disclosure of the x-rays which were part of the victims medical

records. They were entered into evidence against Petitioner at his trial as part of the medical records.

The complainant was allowed to testify about the x-rays at Petitioner's trial and what they were used

for. (see TAB 5 Trial Transcript pgs. 311-313). The Queens County District Attorney has refused to

produce these records claiming that they are now confidential and not disclosable or not located.

34.     In 2018 Petitioner filed an Article 78 with the Supreme Court of Queens County. The Supreme

Court ruled in favor of the Queens County District Attorney claiming that the partial medical records

that were disclosed to Petitioner was sufficient disclosure by the People.  In 2019 Petitioner filed an

appeal to the denial of his Article 78 with the Appellate Division Second Department. (see TAB 3 Article

78 Motion) The Court ruled that "if a Petitioner can show that the records exist and that the People had

control of these records then a hearing should be held and the Court shall inspect the records in camera

9.

039-746-517

to determine if the records are disclosable". (see Oddone v. Suffolk County, Police Dept., 96 A.D.3d 785 [2012]). This motion is still pending being calendared for review and decision. (see TAB 4 letter from the Appellate Division Second Department dated March 10, 2023). Largely the motion remains pending because the People have refused to release the records. In effect the People are engaging wrongdoing and benefiting from said wrong doing. This is so as Petitioner is about to be deported based on a crime that would be over turned once the People produce the records. Futhermore, but for the misrepresentation occasioned by the People's presentation of selective portions of the evidence , not including protions unfavorable to the People. The People could not have secured a conviction against Petitioner.

35.      on August 11, 2017, Petitioner was told that he had a call-out by the correction staff at Downstate Correctional Facility. Petitioner was never informed what the call-out was for just that he had to go to Building 5. When Petitioner got to building 5 he was placed in a visiting room and at that time was informed that he was there for Immigration Court. Petitioner was not given a chance to prepare for this Immigration hearing by being able to bring documentation with him to support any argument that he might have to help him in his circumstances. Petitioner was not given the opportunity to seek the aid of counsel.

36.      Petitioner had a twenty (20) minute encounter with the Immigration Judge. When the hearing was over Petitioner was under the impression that he would have more hearing or Court session, however that was not the case. The Judge found Petitioner deportable at his one and only court appearance. It appeared that Petitioner's appearance was only a formality and that a decision was already made in predetermined fashion by the Immigration Judge.

039-746-517

37.     Petitioner was picked up by Immigration and Customs Enforcement(ICE) upon his release from New York State Prison on February 17, 2023. Petitioner was under the impression that he was going to see an Immigration Judge but was informed that he had no further Court appearances. Petitioner was informed that he was in the final stages of removal because a final order of removal was issued against him on November 15, 2017 and that Petitioner had failed to file a timely appeal.

38.     Petitioner filed an Emergency Motion to Reopen and for a Stay of Removal on March 15, 2023. This Motion was denied by the Honorable Judge Sagerman on March 23, 2023. Petitioner filed a timely appeal to the Board of Immigration Appeals on April 4, 2023 for his Motion to Reopen and seeking an Emergency Stay of Removal so that he can fully present his claim for Deferral of Removal under the Convention Against Torture (CAT) and have his U Visa application processed.

39.     Petitioner's appeal was accepted and he was granted permission to submit a brief to the Board of Immigration Appeals on April 25, 2023. Petitioner submitted his appeal brief on May 3, 2023 to the Board of Immigration Appeals. (see TAB 1 Asylum Application attached to main BIA brief) also (see TAB 2 U Visa Application attached to main BIA brief). Petitioner served DHS/ICE with these documents on May 3, 2023.

40.     On May 8, 2023, Petitioner was sent a letter by one Mr. Jeffrey Searls, Facility Director of Buffalo Federal Detention Facility, that he intended to have Petitioner deported at some point in the month of May 2023. This notice was given after Petitioner had submitted his appellate brief to the Board of Immigration Appeal and served the DHS/ICE . On May 11, Petitioner was summoned to processing section of the BFDF to speak with the Jamaican Consulate Attache, Mrs. Gloria Davis. This was done so that DHS/ICE could secure travel documents for Petitioner. DHS/ICE did not inform the

11.

039-746-517

Consulate that Petitioner had filed an appeal with the BIA.

41.     Petitioner's criminal case was picked up by the Queens County Conviction Integrity Unit (CIU) in

August of 2022, it is currently under review by the Queens County District Attorney's Office. Due to

many instances of wrongful convictions the State of New York has created conviction review units in the

five boroughs to review convictions where there is suspected wrong doing by the prosecution.

Petitioner's case is  being reviewed by Assistant District Attorney for Queens County Bryce Benjit, due to

the fact that evidence was withheld in Petitioner's criminal case that will prove that he did not commit

the crimes of which he is convicted. Based on this new evidence Petitioner will be able to establish his

actual and factual innocence of these crimes. "In New York State Petitioner had a right to a freestanding

claim of actual innocence based on new evidence not presented at trial". (see People v. Hamilton, 115

A.D.3d 12 [2014]). (see Tab 1 Asylum Application at Exhibit B pending Article 78 in the Appellate Division

Second Department) also (see Tab 4 Letter from the Appellate Division Second Department of pending

Article 78 Appeal).

42.     Petitioner was notified by the Appellate Division Second Department on or about March 15,

2013 that his Article 78 Motion is still pending and is being calendared for review and decision.

Petitioner filed his Article 78 Motion in 2019. (see Tab 1 Asylum Application at Exhibit B pending Article

78 in the Appellate Division Second Department) also (see Tab 4 Letter from the Appellate Division

Second Department of pending Article 78  Appeal on March 10, 2023).

43.     Petitioner is represented in his criminal case by Justin C. Bonus Esq.. On or about May 5, 2023,

he informed petitioner that he will be speaking with Assistant District Attorney Bryce Benjit on May 8,

2023. This will be to see how the review of the case file is coming with the CIU. He will also again

039-746-517

request a copy of the case file. Mr. Bonus also informed Petitioner that the withheld records will create

a significant problem for the District Attorney's Office as it is a key piece of evidence for the defense

that was withheld. "The people were in violation for failing to turn over evidence that was favorable to

the defense". (see Brady v. Maryland, 373 U.S. 83 [1963]).


## LEGAL FRAMEWORK

**I. DHS/ICE IS ATTEMPTING TO REMOVE PETITIONER BEFORE HIS BOARD OF IMMIGRATION APPEALS**

**PETITION CAN BE ADJUDICATED AND PETITIONER'S ADJUSTMENT OF STATUS VIA U VISA**

**APPLICATION CAN BE PROCESSED IN VIOLATION OF PETITIONERS DUE PROCESS RIGHTS.**

44.      Petitioner has applied for adjustment of status with the USCIS and has submitted his application

for a U Visa. Petitioner was the victim of a violent crime. Petitioner was helpful to the authorities in

prosecuting this crime. Petitioner sent a copy of his application for adjustment of status to DHS/ICE

Chief Counsel. Petitioner qualified for the adjustment of status because it was certified by Law

Enforcement Personnel that Petitioner was the victim of the crime of Attempted Murder when he was

shot several times and that Petitioner was helpful in prosecuting the person(s) who committed this

crime. (see TAB 1 U Visa Application at Supplemental B signed Schedule B to Form 918).  U Visas are

"available to victims of specified crimes who cooperate with law enforcement authorities in the

investigation or prosecution of those crimes.  A U Visa accords the applicant lawful temporary resident

status" and "authorizes the applicant to work in the United States during the life of the U visa." (N-N v.

Mayorkas, 540 F. Supp. 3d 240, 247 [E.D.N.Y. 2021]) also (see TAB 1 U Visa Application at Supplemental

B).

13.

039-746-517

45.     Petitioner has the due process right to seek adjustment of status for U Visa when it has been

certified by a member of Law Enforcement or District Attorney's Office by the Supplemental B that

12.

039-746-517

Petitioner is the victim of a violent crime. The Queens County District Attorney's Office certified via the

Supplemental B that Petitioner was the victim of an attempted Murder when he was shot five (5) times.

It was also certified that Petitioner was helpful to Law enforcement in bringing the matter to legal

prosecution and conclusion.  (see TAB 2 U Visa Application at Supplemental B).

46.     The Fifth Amendment's Due Process Clause forbids the government to "depriv[e]" any "person

. . of . .{2020 U.S. Dist. LEXIS 45} . liberty . . . without due process of law." "Freedom from imprisonment

from government custody, detention, or other forms of physical restraint lies at the heart of the liberty

that Clause protects." Zadvydas, 533 U.S. at 690. That protection extends to aliens present in the

country, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. And in

Zadvydas, the Court commented that "a statute permitting indefinite detention of an alien would raise

a serious constitutional problem." *Ragbir v. Homan 2019 at* Subsections III(A)-(C) stands for the

proposition that a deported person is still in custody. Under the referenced section of *Ragbir v. Homan*

*2019*, deporting Petitioner would amount to no more than a transfer of "custody," thereby causing the

habeas remedy to remain available. In fact, if Petitioner prevails the DHS/ICE would be forced to bring

Petitioner back to the U.S. after removing him. This is clearly not in the interests of the DHS/ICE  as they

would incur costs to effect removal, and again would incur costs to bring back Petitioner.

**14.**

039-746-517

## II. DHS/ICE IS ENGAGED IN ANIMUS OR RETALIATION BASED ON PROTECTED SPEECH WHICH IS A VIOLATION OF PETITIONER'S DUE PROCESS.

47.      For two and a half months there was no effort to remove petitioner, or at least the DHS/ICE failed to communicate any such efforts. Petitioner received a briefing schedule from the BIA on April 25, 2023. Moreover,  the Petitioner filed a BIA brief and served it on DHS/ICE on May 3, 2023. Within two weeks of filing and serving the BIA brief the DHS/ ICE suddenly indicated to the Petitioner that he would be removed this month, May 2023. For Jamaican Nationals  removals usually occur some time between the 23rd and 31st of each month. As such, the DHS/ICE's May 8, 2023 correspondence that the Petitioner will be removed in May gave less than 21 days' notice. This short notice period violates a critical Second Circuit notification arrangement. This is so because a Petitioner who has not yet been ordered removed by the BIA should enjoy greater benefits or protections from removal than a person who has already been ordered removed by the BIA. (see TAB 4 letter from Jeffery Searls, DHS/ICE).

48.      In the Second Circuit after a person has already been ordered removed by the BIA, the Second Circuit Court of Appeals may remand the case to the BIA, and under these circumstances the Second Circuit forbearance policy mandates that the DHS/ICE must notify the Petitioner of removal at least 21 days before said removal. However, as soon as Petitioner submitted his BIA appeal brief to DHS/ICE and speaking with my criminal attorney about progress in my criminal case it triggered a notice of removal from DHS/ICE, which lacked Administrative athority and without notification to Petitioner. In particular in (In The Matter Of Immigration Petitions For Review Pending In the United States Court Of Appeals For The Second Circuit, 702 F3d 160702 F.3d 160; 2012 US App LEXIS 21555) the Second Circuit Court of Appeals states: "If the Government decides to resume efforts to remove a petitioner, the Government

15.

039-746-517

will notify both the Court and Petitioner at least 21 days before removing Petitioner. Upon receipt of the notice, the Clerk of Court will reinstate the case."

49.     Petitioner was notified of his scheduled removal on May 8, 2023 after he submitted his appeal brief to the BIA and DHS/ICE on May 3, 2023. On May 12, 2023 DHS/ICE had Petitioner speak with his Consulate Attache. Petitioner informed the Consulate that his appeal was submitted on May 3, 2023 to Board of Immigration Appeals and a U Visa Application due to him being a victim of a violent crime. The Consulate stated that they were never informed of Petitioner's current appeal and would have to follow up with DHS/ICE on the matter. The Consulate informed Petitioner that after following up with DHS/ICE, a follow up interview will be scheduled for Petitioner.

50.     This sudden notice of pending removal is circumstantial evidence of a violation of Petitioner's protected speech and right to due process. "contending that his claim arises "from immigration officials' unlawful decision to retaliate against [his] protected speech." (see Ragbir v Homan, 923 F3d 53 F.3d 53; 2019 US App LEXIS 12348). In Petitioner's case the fact that Petitioner has filed an appeal with the Board of Immigration Appeals and a U Visa Application with the USCIS and is continuing to challenge his criminal conviction was enough to trigger a frantic rush to have Petitioner removed, even if it means removing Petitioner illegally and without adequate notification.

51.     First Amendment speech is preeminent among the liberties that the Constitution protects. Indeed, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics . . . or other matters of opinion." Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31, 138 S. Ct. 2448, 2463, 201 L. Ed. 2d 924 (2018) (quoting West Va. Bd. of Educ. v. Barnette, 319 U.S. 624, 642, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943)).

16.

039-746-517

52.     Petitioner's speech and advocacy for himself (being self represented in this matter) is

preeminent among the liberties that the Constitution protects. As such, Petitioner speaking on his own

behalf in matters concerning his liberty should not trigger a reaction from DHS/ICE to persecute

Petitioner without legal authority for asserting a Constitutional right. First Amendment

protection"occupies the highest rung of the hierarchy of First Amendment values,'" Snyder v. Phelps,

562 U.S. 443, 451-52, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011) (quoting Connick v. Myers, 461 U.S. 138,

145, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983); Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472

U.S. 749, 758-59, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985)). Due to Petitioner's claims of wrongful

conviction and actual/factual innocence of his crimes it seems as if DHS/ICE has been weaponized to

silence Petitioner's every claim to relief, even those guaranteed by the Constitution and Congress.


**III. PETITIONER IS SEEKING A STAY OF DEPORTATION DUE TO DEPORTATION BEING MOTIVATED BY
ANIMUS BASED ON THE JAMAICAN NATIONALITY OF PETITIONER WHICH VIOLATES THE PETITIONER'S
DUE PROCESS RIGHTS.**

53.     The Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE)

in their conduct has shown discrimination against Jamaicans. Evidence of this discrimination is provided

by the circumstances of individuals such as Wayne Gray (see Gray v. Weselmann, 274 F. Supp. 3d 81;

2017 U.S. Dist. LEXIS 48451), Davino Watson (see Watson v. U.S., 179 F. Supp. 3d 251; 2016 U.S. Dist.

LEXIS 23350), Micheal Robinson (see Robinson v. U.S., 332 F. Supp. 3d 516; 2018 U.S. Dist. LEXIS

142643), Damian Campbell (see Campbell v. Barr, 387 F. Supp. 3d 286; 2019 U.S. Dist. LEXIS 81224), and

Damion Davis (see Davis v. Garland, 2022 U.S. Dist. LEXIS 211691). These cases highlight some examples

17.

039-746-517

of the discrimination being faced by immigrants from Jamaica.

54.      This Discrimination is particularly pronounced where a Jamaican is detained at the Buffalo

Federal Detention Facility in Batavia New York. Evidence in support of this claim is that each of the

persons named in the last paragraph are (likely) United States Citizens, but each is Jamaican born.

Despite their United States citizenship they have all been subjected to the following treatment:

A.  Many of these individuals has been detained in excess of three (3) years at the  Buffalo Federal

Detention Facility in Batavia New York (Wayne Gray may be the only exception).

B.  One of these individuals was removed from the United States by DHS/ICE and upon reentry was

charged with criminal reentry despite being a United States citizen.

C. Each of these person had his A File withheld or DHS/ICE misrepresented information in his A-File  so

that he could not prove his citizenship claim. Meanwhile each of the Board of Immigration Appeals and

Immigration Courts, under the weight and pressure of the DHS/ICE claim that these persons are not

citizens of the United States and each of these Jamaican born persons deported.

55.      In the circumstances of Petitioner, the DHS/ICE has informed Petitioner that he is scheduled to

be deported in May of 2023. (see TAB 5 Letter from Mr. Jeffrey Searls Facility Director

Buffalo Federal Detention Center). However, the DHS/ICE does not have statutory authority to deport

Petitioner because there is no administrative Final Order of removal against Petitioner. This is so

because Petitioner's removal proceedings are still ongoing at the Board of Immigration Appeals as

evidenced by:

A.  Petitioner filed a motion to reopen his immigration proceeding to process Asylum Application based

on credible fear on March 15, 2023. This motion was denied by the Honorable Judge Sagerman on

18.

039-746-517

March 23, 2023.

B. Petitioner filed a timely appeal to the Board of Immigration Appeals on April 4, 2023 for his Motion to Reopen and seeking an Emergency Stay of Removal so that he can fully present his claim for Deferral of Removal under the Convention Against Torture (CAT) and have his U Visa application processed due to him being the victim of a documented crime of violence in the United States.

C. Petitioner's appeal was accepted and he was granted permission to submit a brief to the Board of Immigration Appeals on April 25, 2023.

D. Petitioner submitted his appeal brief on May 3, 2023 to the Board of Immigration Appeals. Petitioner also submitted copies of his Asylum Application and U Visa Application as exhibits with his BIA brief. DHS/ICE was also served a copy of this brief on the same date as the BIA. (see TAB 1 Asylum Application attached to main BIA brief) also (see TAB 2 U Visa Application attached to main BIA brief).

56.    The plain language of 8 U.S.C. § 1231 affords DHS/ICE the authority to remove a noncitizens only after an Administratively Final Order of deportation is in effect against such a noncitizens. While Petitioner is not a citizen, in like fashion to the way the DHS/ICE insisted on removing Jamaicans that are actually citizens, which clearly means that DHS/ICE lacks authority to remove those persons, in the circumstances of Petitioner the DHS/ICE also seeks to remove Petitioner without legal authority. To the best of Petitioner's knowledge, information, and belief the DHS/ICE is not without authority, seeking to remove persons who are not Jamaican nationals, where such persons are also detained at the Buffalo Federal Detention Facility in Batavia New York:

57.    There is clear evidence that within the class of persons detained at the Buffalo Federal Detention Facility in Batavia New York, the DHS/ICE is expressing nationality based animus by unlawfully

19.

039-746-517

deporting Jamaican born persons and denying them the benefit of due process. The Court has found

that "Petitioners are likely to succeed on their claim that removal without an opportunity to file and

litigate motions to reopen constitutes a deprivation of Petitioners' due process rights. Further, "[i]t is

well established that the deprivation of constitutional rights unquestionably constitutes irreparable

injury." (see Chhoeun v. Marin, 306 F. Supp. 3d 1147; 2018 US Dist LEXIS 13539).

58.       The Court goes on to state that "The Governmental interest at stake is minimal, and amounts to

a brief delay of the deportations. The Government will not be required to restart the process of issuing

travel papers for Petitioners, nor does the Government face any other risk to the integrity of the

removal process. The minimal administrative costs to the Government are far outweighed by the

considerable harm to Petitioners' constitutional rights in the absence of the injunction. The injunction

will also potentially prevent the unnecessary harm that would inevitably arise in the case of an

erroneous removal, including Petitioners being forced to rebuild their lives in an unfamiliar country, far

away from the ones they love and support." (see Chhoeun v. Marin, supra).


**IV. PETITIONER SEEKS A PRILIMINARY INJUNCTION AGAINST DHS/ICE IN THEIR ATTEMPTS TO**

**REMOVE PETITIONER ILLEGALLY.**

59.       Petitioner seeks an injunction and stay of removal against DHS/ICE to halt their attempts to

remove him illegally before his appeal with the BIA can be adjudicated. Petitioner also seeks an

injunction until his status can be adjusted. Congress has approved adjustment of status for Petitioners

who have experienced adverse life events. Petitioner has experienced an adverse life event in that he

was shot five (5) times as the victim of attempted murder. Petitioner was helpful to Law Enforcement

20.

039-746-517

against the perpetrator(s). This cooperation led to a conviction.  (see TAB 1 U Visa Application at Supplemental B signed Schedule B to Form 918).

60.     If DHS/ICE was to remove Petitioner before his application for adjustment is processed  it would amount to the denial of due process approved by Congress. Petitioner here states that he belongs to a class of noncitizens whom congress has conferred a right to adjustment of status due to adverse life events. Two such groups of noncitizens are (1) the right to Special Immigrant Juvenile status for abused and neglected children (2) U Visa status for victims of certain enumerated crimes.

61.     In L.V. v. Cuccinelli the Courts have given sanctions and held DHS/ICE in contempt for removing Petitioners who have been granted or qualify for special adjustment status where DHS/ICE has removed these individuals. This is due to the harm and injustice caused to the class members. DHS/ICE failure to comply with the preliminary injunction caused significant harm to the five removed class members. The Courts have ruled that "DHS/ICE  could and should monitor ICE's enforcement actions against class members." The Courts have issued sanctions against running afoul of the standards to be followed when an injunction has been issued and group members have been removed illegally. (see J.L. v. Cuccinelli, 2020 U.S. Dist. LEXIS 91071) also (see Diaz-Calderon v. Barr, 535 F. Supp. 3d 669, 2020 U.S. Dist. LEXIS 210046).

### STAY OF REMOVAL AND PRELIMINARY INJUNCTION

62.     Petitioner seeks a stay of removal so that his BIA appeal can be processed as DHS/ICE is attempting to remove him illegally. Petitioner here contends that a Stay of Removal is appropriate under  § 1252(b)(3)(B), which permits the stay under the traditional standard which require only a showing of likely success on the merits, irreparable injury, lack of injury to other parties, and the public

21.

039-746-517

interest. (see Nken v. Holder, 585 F.3d 818, 2009 U.S. App. LEXIS 23947 (4th Cir., Oct. 30, 2009).

## A. LIKELIHOOD OF SUCCESS ON THE MERITS:

63.     The Fifth Amendment's Due Process Clause forbids the government to "depriv[e]" any "person .

. . of . .{2020 U.S. Dist. LEXIS 45} . liberty . . . without due process of law." "Freedom from imprisonment-

from government custody, detention, or other forms of physical restraint lies at the heart of the liberty

that the Due Process Clause protects." Zadvydas, 533 U.S. at 690. That protection extends to aliens

present in the country, "whether their presence here is lawful, unlawful, temporary, or permanent."

(Zadvydas v. Davis, 533 U.S. 678, 695, 150 L. Ed. 2d 653, 121 S. Ct. 2491 [2001]). Per Section III (A)-(C) of

the discussion section of Ragbir the Petitioner would still be in "custody" if deported to Jamaica,

especially unlawfully so.

64.     Here, the issue is  8 U.S.C. § 1231 affords DHS/ICE the authority to remove a noncitizens only

after an Administratively Final Order of deportation is in effect against such a noncitizens.  However, in

Petitioner's case DHS/ICE is applying unique circumstances where DHS/ICE is attempting to remove

Petitioner with no clear statutory authority. Petitioner's appeal is still pending in the BIA and has not

been adjudicated and therefore, no Administrative Final Order has been issued.

65.     As a victim of criminal activity Petitioner qualifies for a (U) Nonimmigrant Exemption

consideration: DHS has revised the regulatory provision relating to the exemption from public charge

inadmissibility for individuals who have a pending application for U nonimmigrant status, or who are

granted U nonimmigrant status, to align these regulations with the changes to the law made by VAWA

2013.

66.     In the proposed rule, U nonimmigrant petitioners or those granted U nonimmigrant status

22.

039-746-517

were exempted from the public charge inadmissibility ground for purposes of U nonimmigrant status or

for purposes of adjustment of status under section 245(m) of the Act, 8 U.S.C. 1255(m). DHS has

clarified that, in general, U visa petitioners and those granted U nonimmigrant status are exempt from a

public charge inadmissibility determination in any future immigration benefit request that requires a

finding of admissibility, not only adjustment of status under section 245(m) of the Act, 8 U.S.C. 1255(m).

67.     "[T]he Due Process Clause of the Fifth Amendment subjects the federal government to

Constitutional limitations that are the equivalent of those imposed on the states by the Equal

Protection Clause of the Fourteenth Amendment." (see Consejo de Desarrollo Economico de Mexicali,

A.C. v. United States, 482 F.3d 1157, 1170 n.4 [9th Cir. 2007]). "The Equal Protection Clause of the

Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the

equal protection of the laws,' which is essentially a direction that all persons similarly situated should be

treated alike." ( see City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed.

2d 313 [1985] (quoting Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 72 L. Ed. 2d 786 [1982]).

68.     Classifications of groups of noncitizens are subject to rational basis review. (See Aleman v.

Glickman, 217 F.3d 1191, 1197 [9th Cir. 2000]). Applying rational basis review, a classification "is

accorded a strong presumption of validity and must be upheld if there is a rational relationship between

{2020 U.S. App. LEXIS 23} the disparity of treatment and some legitimate governmental purpose." Id. at

1200 (internal quotation marks and citation omitted).

69.     Clearly by DHS/ICE attempting to remove Petitioner before an Administrative Final Order has

been issued they are acting illegally because Petitioner has a probability of succeeding on his Motion to

Reopen and his U Visa adjustment application. DHS/ICE is attempting to treat Petitioner differently than

23.

039-746-517

other individuals detained at the Buffalo Federal Detention Facility in Batavia, New York which violates Section 1985.

70.    The actions of DHS/ICE against Petitioner for engaging in protected speech by illegally attempting to remove Petitioner runs afoul of Constitutional protections. It amounts to "outrageous" conduct on the part of DHS/ICE. (see Ragbir v. Homan, 2018 U.S. Dist. LEXIS 86753). Petitioner's criminal case is currently under review due to a **Brady violation** by the Conviction Integrity Unit of the Queens County District Attorney's Office. (see Brady v. Maryland, supra). Petitioner was last in contact with his criminal attorney, Justin C. Bonus, on May 5, 2023. Petitioner's attorney informed him via this phone that he will be in contact with the District Attorney, Bryce Benjit  who is assigned to Petitioner's case on May 8, 2023, to again press for disclosure of materials in the case file.

71.    Petitioner has a motion in the Appellate Division Second Department to compel discovery in his criminal case. (see Tab 1 Asylum Application at Exhibit B pending Article 78 in the Appellate Division Second Department) also (see Tab 4 Letter from the Appellate Division Second Department of pending Appeal). Petitioner has a high probability of succeeding in having his removal order over turned and his criminal conviction over turned. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." (see Mathews v. Eldridge, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 [1976]).

**B. IRREPARABLE INJURY TO PETITIONER:**

72.    A violation of Constitutional rights always constitutes irreparable harm or injury. Petitioner's

24.

039-746-517

Constitutional rights to due process are being violated by DHS/ICE attempting to remove him illegally. "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." (see Rockies v. Cottrell, 632 F.3d 1127, 1135 [9th Cir. 2011]).

73.    Removing Petitioner without the benefit of due process of the law will create irreparable harm to Petitioner. The Court has found that Petitioners are likely to succeed on their claim that removal without an opportunity to file and litigate motions to reopen constitutes a deprivation of Petitioners' due process rights. Further, "[i]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." Id. at 994. It logically follows that Petitioners have met their burden to establish a likelihood of irreparable injury. Id. (see Section III, IV(B), (1)-(4) of Chhoeun v. Marin, 442 F. Supp. 3d 1233, 2020 U.S. Dist. LEXIS 153463 [C.D. Cal., Mar. 4, 2020]).

**C. HARM TO OTHERS AND THE PUBLIC INTREST:**

74.    Petitioner here contends that any deprivation of a Constitutional right is a harm to the public interest. Whether that right is to protected speech or to the due process of law. The public interest also undoubtedly favors entry of a preliminary injunction. The injunction will serve the interests of the general public by ensuring that Petitioners' due process rights are not violated. (see Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (citing Winter, 555 U.S. at 20). ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

75.    "The preliminary injunction is also in the interest of Petitioners' families and communities. The

25.

039-746-517

record contains substantial evidence indicating that removal of Petitioners would result in a significant emotional, psychological, and physical strain on their families and children, and that churches and workplaces would be deprived of Petitioners' support and active engagement. For these reasons, the Court finds that Petitioners face a likelihood of irreparable harm and the balance of equities and the public interest weigh in favor of granting the requested preliminary injunction". (see Chhoeun v. Marin, 442 F. Supp. 3d 1233, 2020 U.S. Dist. LEXIS 153463 [C.D. Cal., Mar. 4, 2020]).

## D. THE GOVERNMENTAL INTEREST

76.     The Court has found that the relief that Petitioner is seeking does not materially impinge on the Government's interests. "The the Governmental interest at stake is minimal and amounts to a delay of a few weeks before it can begin deporting Petitioners. This minimal interest does not warrant a denial of Petitioners' due process rights." (see Chhoeun v. Marin, 442 F. Supp. 3d 1233, 2020 U.S. Dist. LEXIS 153463 [C.D. Cal., Mar. 4, 2020]). Petitioner's appeal will not interrupt the DHS/ICE actions in the removal process. The BIA is the body that enters the administrative final order of removal and is integral to the removal process. DHS/ICE should allow Petitioner to have his "one day in Court" . (see Sied v. Nielsen, 2018 U.S. App. LEXIS 36789 (9th Cir. Cal., Sept. 14, 2018).

## NO BENEFIT FROM OWN WRONGDOING:

77.     An urgent resolution on the issues presented is requested on or before 10 AM on 05/22/2023 because the Department of Homeland Security (DHS), in particular  ICE; together with the State of New York, as represented by the Queens County Prosecution's Office intend to accentuate and protect years of wrongdoing/errors by attempting to remove Petitioner without an Administrative Final order which is both serious and manifestly unjust as captured

26.

039-746-517

by the Second Circuit Court of Appeals statement:

> "a 'fundamental and unquestioned' principle of our jurisprudence [is] that no one shall
> be permitted to . . . take advantage of his own wrong." Corniel-Rodriguez, 532 F.2d at
> 302 (alteration in original) (quoting R. H. Stearns Co. v. United States, 291 U.S. 54, 61-
> 62, 54 S. Ct. 325, 78 L. Ed. 647, 78 Ct. Cl. 843 (1934) (Cardozo, J.)). Permitting the
> government to initiate [or maintain] rescission [removal] proceedings and subject {967
> F.3d 107} Schwebel [Kirk King] to removal would "sanction a manifest injustice
> occasioned by the [g]overnment's own failures." Id. at 307. For these reasons, "basic
> notions of fairness must preclude the [g]overnment from taking advantage of [its error],
> and . . . a contrary result would work a serious and manifest injustice." Id. at 302."
> **(See *Schwebel v. Crandall*,** UNITED STATES COURT OF APPEALS FOR THE SECOND
> CIRCUIT 967 F3d 96 967 F.3d 96; 2020 US App LEXIS 22844, at HN 6).

78.     Petitioner here claims that the state is coordinating with DHS/ICE to have
Petitioner removed illegally without a final administrative order of removal. This is due
to the fact that Petitioner is seeking to prove his actual and factual innocence of the
crimes of which he is convicted. It is to be noted that there is some uncertainty aroud
whether Petitioner's removal would cause forfeiture of his criminal appeal. (see §
C.P.L.R. 440.10 (i).

**Rooker-Feldman Doctrine:**

79.     **"Except as provided in this section"** in 8 USC s 1252(g) opens the door for 1252(f)(2), 1252(a)(2)
(D), 1252(b)(5)(A)-(B) and/or 1252(c) to come in and do their work. Petitioner does not seek to review

27.

039-746-517

an order of removal such that the phrase ".. **a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e) ...**" in 1252(a)(5) must do its work, thereby not creating a jurisdictional bar to Petitioner's challenges brought to the WDNY and the Second Circuit Court of Appeals prior to any Administratively Final Order of Removal (AFOR), being entered against Petitioner. Furthermore, once an order of removal is entered, a challenge to such an order must become available to give meaning to the word "entry" in the phrase "**the entry or execution of such order is prohibited as a matter of law**" as used in 1252(f)(2). By way of analogy to the exception to the Rooker-Feldman Doctrine as set out in (**Young v. Domestic Relations Dir. Enf't Unit**, 05-4498, 2007 U.S. Dist. LEXIS 58907, 2007 WL 2319771, at *2 [EDPa, August 10, 2007]), where there is a constitutional violation en route to an order by an arm of government, remedy should exist to cure that constitutional violation. It would be an absurd result for such a remedy to exist and for the victim of the constitutional violation to be forced to endure such a constitutional violation, especially when deprived of his liberty, while awaiting the outcome of proceedings by an agency such as the BIA, which does not have jurisdiction over the constitutional violations in issue. Now that the issues have been presented to the WDNY for review, the claim that the WDNY does not have jurisdiction would result in the absurd result that government actors can violate the constitution without opportunities for review, save and except until after the victim has been forced to endure an unfair process.

**Fraud Upon The Court**:

80.     "The "independent action" referenced in Rule 60(d)(1) refers to a writ used prior to the

28.

039-746-517

enactment of the Federal Rules of Procedure known as "the original action" or the "independent action."(see **United States v. Beggerly**, 524 U.S. 38, 45, 118 S. Ct. 1862, 141 L. Ed. 2d 32 [1998]). There has long "existed . . . a rule of equity to the effect that under certain circumstances, one of which is after-discovered fraud, **relief will be granted against judgments regardless of the term of their entry."** (see **Hazel-Atlas Glass Co. v. Hartford-Empire Co**., 322 U.S. 238, 244, 64 S. Ct. 997, 88 L. Ed. 1250, 1944 Dec. Comm'r Pat. 675 [1944]).   The Supreme Court explained that after Rule 60 was amended in 1946, all old forms of relief from final judgments, except the independent action, were abolished. **Beggerly**, 524 U.S. at 45. While the independent action writ remains, **it is "reserved for those cases of injustices which . . . are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata."** Claims that have met this high standard almost universally involve forgery and other sorts of fraud.

82.      Compare **Marshall v. Holmes**, 141 U.S. 589, 12 S. Ct. 62, 35 L. Ed. 870 (1891) (vacating a judgment where the letter used in the original suit was alleged to be forged) and **Hazel-Atlas Glass Co**., 322 U.S. at 245 (setting aside **"fraudulently begotten judgments"** based on a **"deliberately planned and carefully executed scheme to defraud"** both the court and a federal agency).

83.      Petitioner here states that his conviction is not final as the People committed fraud upon the Court when they entered fraudulent documents to the Court in Petitioner's criminal conviction. The people entered Certified copies of the victim's medical records as evidence against Petitioner at his trial. However, the people removed the x-rays which were a part of the records and crucial to Petitioner's defense. The people certified under CPLR 4518 that the documents were a true copy of the original documents when they entered them as evidence against Petitioner at his trial. (see TAB 5 Article 78

29.

039-746-517

Petition at victim's partial medical records) also (see TAB 5 Article 78 Petition at victim's trial

testimony). This constituted misrepresentation by omission. This in turn denied the Court or the

Judicial machinery the opportunity to perform its judicial duty. The people presented partial medical

records but removed the parts of the documents (x-rays) that were relevant to Petitioner's defense.

84.      Petitioner is still currently in litigation with the Queens County District Attorney's office to have

these documents disclosed to the defense. Petitioner has submitted an Article 78 to compel the people

to disclose this additional pages of the medical records that were left out of the documents turned over

to the defense at Petitioner's trial.(see TAB 5 Article 78 Petition). The People have for years withheld

these records, amounting to wrongdoing. If Petitioner is removed and said removal hampers his

defense the People would be allowed to benefit from their own wrongdoing.


## V. PETITIONER REQUESTS THAT SECOND CIRCUIT RETAIN JURISDICTION OVER THIS MATTER

85.      Petitioner request that following the mandate in United States v. Jacobson, 15 F.3d 19, the

Second Circuit Court of Appeals accepts and maintains jurisdiction over Petitioner's claims as a Petition

For Review(PFR). Such a mandate also finds support in immigration cases in particular in ; *In re*

*Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160,

162 (2d Cir. 2012).

> "When granting a motion to dismiss an appeal under FRAP 42(b) and remand to
> the BIA, we are mindful that it is **the petitioner who has sought judicial review, and
> who is secure from removal during the pendency of the case before the Court**. To
> ensure an opportunity for prompt restoration of this case to our jurisdiction as the
> petitioners may wish, a remand will be pursuant to the principles and procedures set
> out in *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994).
>
> **While a petition is pending in this Court, the Government's forbearance policy has
> assured that removal will not occur.** We will assume that forbearance will continue

30.

039-746-517

while the case remains with the agency following our remand and during its return to this Court, if that should occur. In the event that the Court and a {2012 U.S. App. LEXIS 8} petitioner are advised at any time that this assumption is unwarranted, the petitioner may promptly apply for a stay of removal.

At the time a remand is ordered, the Clerk of Court will issue the mandate in compliance with the Federal Rules of Appellate Procedure, with the stated condition that either party may reinstate the case in this Court at any time by filing a letter to that effect with the Clerk of Court. No new petition for review or additional filing fee will be required to restore the Court's jurisdiction.

If the Government decides to resume efforts to remove a petitioner, the Government will notify both the Court and Petitioner at least 21 days before removing Petitioner. Upon receipt of the notice, the Clerk of Court will reinstate the case. **In all pending immigration cases and, until further notice, in all subsequently filed immigration cases, the Clerk of Court is directed to issue an order consistent with this decision on a rolling basis commencing seven days from this date."**

**For the avoidance of doubt, the terms of the requested mandate should include at least the following:**

86.      (a) The Second Circuit Court of Appeals accepting jurisdiction over Petitioner's claims as a Petition For Review (PFR).

(b) The Second Circuit Court of Appeals remanding or transferring all or portions of the case, as appropriate, to the Western District of New York (The Federal District Court with appropriate jurisdiction) as a Habeas Corpus petition and/or the Board of Immigration Appeals for full development of the record within the agency to facilitate Appellate review and Judicial review.

(c) That, upon remand to the WDNY and/or the BIA, the Second Circuit Court of Appeals maintains

31.

039-746-517

jurisdiction over Petitioner's claims, such that the full force and effect of the Second Circuit forbearance

policy in terms of *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second*

*Circuit*, 702 F.3d 160, 162 (2d Cir. 2012) are triggered and given full effect.

(d) That the Court order discovery within the WDNY. This is governed by the fact finding provisions for

federal habeas proceedings and are currently set forth in 28 U.S.C. § 2243. As such, "Petitioners in

habeas corpus proceedings . . . are [presently] entitled to careful consideration and plenary processing

of their claims including full opportunity for presentation of the relevant facts." (see Harris, 394 U.S. at

298-301) also (see Wingo v. Wedding, 418 U.S. 461, 468-70, 94 S. Ct. 2842, 41 L. Ed. 2d 879 [1974]). The

Court has stated that a habeas judge "may direct a hearing to determine the facts before handing down

a final disposition". (see U.S. ex rel. Mitchell v. Follette, 358 F.2d 922, 928 [2d Cir. 1966]). Petitioner in

the present matter requests that he may need to initiate fact find as petition lacks some of the

necessary records and transcripts.


**The requested mandate finds support in the following legal authority and/or in compelled by**

**the following facts and circumstances of Petitioner:**

87.      (a) As indicated by Petitioner that "On the night of July 2, 2012 Petitioner had an encounter

with gang members at a store in Far Rockaway, Queens, New York. Petitioner was shot during this

encounter and was later arrested at Jamaica Hospital for the shooting of one of the relatives of these

gang members. On July 2, 2012 Petition was shot five (5) times and blamed for a crime that he did not

commit due to refusing to pay extortion money to Jamaican gang members who found out that

petitioner is bi-sexual". ( see Statement of Facts).

039-746-517

Petitioner has maintained that an adverse life event - being the victim of a particular violent crime--- over which Congress has exercised it's Constitutionally provided law making authority to create a statutory right to adjustment of status for persons who have experienced certain adverse life events. Two examples of such adverse life events over which Congress has legislated a statutory right to an opportunity at adjustment of status are:

(1) U Visa for victims of particular specified crimes, and

(2) SIJ Visas for abused or neglected children.

88.    The circumstances in **J.L. v. Cuccinelli and Diaz-Calderon v. Barr**, compel the conclusion and is authority for the proposition that, where Congress has legislated an opportunity to adjustment of status, for persons who have suffered a qualifying life event Courts have authority and are willing to issue preliminary injunctions to bar the DHS/ICE from removing such persons, before said person has had a chance to apply for adjustment of status and have that adjustment of status application processed by the relevant authority.

89.    Indeed, as indicated in **Morales v. Barr**, it is the policy of the DHS not to remove a noncitizen who has a pending U-Visa application. The attempts to remove Petitioner in May 2023 is further evidence that the DHS/ICE is engaging in wrong doing or is trying to remove Petitioner without proper authority to do so. **F.C.C. v. Fox Television Station Inc., 566 U.S. 502, 515, 129 S.Ct.**, stands for the proposition that it is unlawful for federal agencies, including the DHS/ICE to act contrary to their own rules.

(b) **J.L. v. Cuccinelli and Diaz-Calderon v. Barr** also stands for the proposition that it would be a waste of public resources and therefore it is not in the public interests to remove Petitioner before he has had

33.

an opportunity to have his adjustment of status application adjudicated. That is, in the referenced cases the DHS/ICE expended resources to remove at least one person who Congress had provided with a statutory opportunity at adjustment of status based on that person's status under one of "the adverse life event" categories that Congress provided an opportunity at adjustment of status. Under the weight of a Court Order, the DHS/ICE were compelled to bring back the Petitioners in **J.L. v. Cuccinelli,** after DHS/ICE had wrongfully removed them. This was another unnecessary expense imposed on the public purse by an unlawful removal. Still, in (**J.L. v. Cuccinelli**), the Court went one step further and imposed sanctions for the wrongful removals. As such, there is clear authority that in the present set of circumstances it is unlawful to remove Petitioner.

(c) In **You v. Nielsen,** after Mr. You's Motion to Reopen (MTR) was dismissed by the BIA the District Court concluded that it did not have jurisdiction over Mr. You's adjustment of status claims. (see You v. Nielsen, 2019 US Dist LEXIS 130786). As such, it is the Second Circuit Court of Appeals which has jurisdiction, within a Petition For Review (PFR), to jurisdictionally review any issues of law, and possibly discretion, which arise in removal proceedings. (see the dissenting opinion of Gorsuch, In speaking for both the dissent and the majority, in ***Patel et. al. v. Garland,*** 142 S Ct 1614142 S. Ct. 1614; 212 L Ed 2d 685212 L. Ed. 2d 685; 2022 US LEXIS 2494, citing the majority in the same case. Even though with reference to the interaction between 8 USC ss 1252(a)(2)(B)(i) and 1252(a)(2)(D), Gorsuch J states, "**[m]eanwhile, as the majority acknowledges, Congress adopted subparagraph (D) nearly a decade later and did so to address a much larger problem, the potential that many statutes in the INA foreclosing judicial review might be unconstitutional in certain applications. Ante, at 9.**" He goes on to say: "**[s]o, for example, if the Attorney General sought to exercise his discretion to discriminate against an**

039-746-517

applicant on the basis of race, subparagraph (D) would allow judicial review despite the terms of

subparagraph (B)(i). ... The majority says subparagraph (D) preserves constitutional and legal

questions for judicial review, ... Gorsuch J's statement that where the denial of adjustment of status

implicates issues of law, including amicus, the Article III Courts have review authority and jurisdiction.

For these reasons the Second Circuit Court of Appeals must accept jurisdiction and/or the WDNY must

transfer, at least the issues of law related to Petitioner's adjustment of status claims to the  Second

Circuit Court of Appeals.

90.       Legal authority for such a transfer is **8 U.S.C. § 1252(b), which provides for a petition for**

**review to be filed "with the court of appeals for the judicial circuit in which the immigration judge**

**completed the proceedings."** 8 U.S.C. § 1252(b)(2). If such an action is erroneously filed in the district

court, the district court *must* transfer the action to the appropriate court of appeals. 28 U.S.C. § 1631

(permitting district court in which an action is erroneously filed to "in the interest of justice, transfer

such action or appeal to any other such court in which the action or appeal could have been brought

at the time it was filed or noticed."). (see *Paul v. Immigration and Naturalization Service*, 348 F.3d 43,

46 [2d Cir. 2003]).

(d) To avoid a scarcity of details on the authority for the WDNY to transfer this habeas corpus petition

points to the Second Circuit Court of Appeals "**observing that where a habeas petition for review of**

**BIA's deportation decision is mistakenly, but timely, filed in district court, the district court is**

***obligated* to transfer such action to the appropriate court of appeals with jurisdiction over the**

**matter."** (see *Paul v. Immigration and Naturalization Service*, 348 F.3d 43, 46 [2d Cir. 2003]) .

(e) For transfer to be completely appropriate under the last two (2) sub-items, it usually needs to be the

35.

039-746-517

case that a habeas corpus petition is filed with the District Court in error. While this Petitioner's

information and belief is that there is no Administrative Final Order of Removal (AFOR) due to his

pending Motion to Reopen with the Board of Immigration Appeals. The DHS/ICE's removal attempt

suggests otherwise. It is either that the DHS/ICE is knowingly wrongfully erroneously attempting to

remove Petitioner or the DHS/ICE has information that Petitioner's Motion to Reopen has been

dismissed by the Board of Immigration Appeals.  It is these circumstances which have created

uncertainty in Petitioner's mind. If the Board of Immigration Appeals has dismissed the Motion to

Reopen the Second Circuit Court of Appeals is the appropriate venue. If the Board of Immigration

Appeals has not dismissed the Motion to Reopen, at least Petitioner's Constitutional claims discussing

due process violations and freedom of speech are appropriate in the District Court. Since Petitioner is

uncertain about the state of affairs, out of an abundance of caution, Petitioner is filing with both the

District Court and the Second Circuit Court.

(f) The Constitutional issues raised at the last sub-item segues into the fact that the Board of

Immigration Appeals has no authority over Constitutional issues. As such, it is appropriate for the

Second Circuit Court of Appeals to take jurisdiction over the Constitutional issues and remand to the

Board of Immigration Appeals for appropriate development of the record.

(g) Remanding to the WDNY will facilitate the efficient use of judicial resources.


## VI. CONSPIRACY TO INTERFERE WITH PETITIONER'S CONSTITUTIONAL AND CIVIL RIGHTS ACCORDING TO § 1985 (2)

91.     Petitioner here stated that DHS/ICE and the Queens District Attorney's Office are guilty of

36.

039-746-517

Obstructing justice; **intimidating party, witness**, or juror. In that "If two or more persons in any State or

Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the

United States from attending such court, or from testifying to any matter pending therein, freely, fully,

and truthfully, or to injure such party or witness in his person or property on account of his having so

attended or testified,  or if two or more persons conspire for the purpose of impeding, hindering,

obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent

to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully

enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection

of the laws". (see  42 U.S.C.S. § 1985(2)) also (see KIMBLE v. D. J. McDUFFY, INC., 1980 U.S. App. LEXIS

14856).

92.      By DHS/ICE attempting to remove Petitioner illegally they are serving the function of the

Queens District Attorney by denying Petitioner his right to challenge his wrongful state conviction and

from having due process in his immigration proceedings. (see **RELEVANT FACTS AND PROCEDURAL**

**HISTORY**  Pages 5-11). They are conspiring or acting individually to deny Petitioner his right to be

present and to testify in a pending Court proceedings relating to his criminal conviction and pending BIA

proceedings. Once DHS/ICE was notified that Petitioner is still fighting his criminal conviction and was

notified that Petitioner was granted permission to submit an appeal brief to the BIA and that Petitioner

had indeed submitted his brief on May 3, 2023, to the BIA, DHS/ICE notified Petitioner that he would be

removed in the same month of May 2023. (see TAB 3 Letter from Mr. Jeffrey Searls, ICE Deputy Field

Office Director, Buffalo, New York dated May 8, 2023).

93.      It is to be noted that the DHS/ICE had made no attempts to remove or communicate attempts

to remove Petitioner between Febraury 17th and May 1st, 2023. It was only after Petitioner's most

recent attempts to litigate with the BIA and advance his claims regarding the very public issue of wrongful convictions in the State of New York, that the DHS/ICE suddenly indicated that Petitioner is to be removed in May 2023. The retaliatory intent is highlighted by the fact that Petitioner's early May 2023 actions caused the DHS/ICE to attempt to remove Petitioner without providing for the customary/mandatory 21 days notice usually applicable in the Second Circuit. Indeed, Petitioner was only allowed to consult with his Consulate on May 12, 2023, via a process facilitated by DHS/ICE. This suggests that DHS/ICE was following no standard process or practice but was acting to speedily remove Petitioner to obstruct or thwart his Court actions.

**According to   42 U.S.C.S. § 1985(2) sections :**

**A.** If two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein.

**C.** if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, then that person's rights have been violated as the case of Petitioner.

94.      Petitioner is being subjected to this treatment because he is (1) Black, (2) Jamaican in nationality, (3) challenging his criminal conviction, and (4) challenging the denial of due process in his immigration proceedings. The Courts has held that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, animus behind the conspiratorial actions." (see   KIMBLE v. D. J. McDUFFY, INC., 1980 U.S. App. LEXIS 14856). The Court held that "conspirators who acted with a racially discriminatory animus could be found to be in violation of Section 1985(3)" also (see Slavin v. Curry, 574 F.2d 1256, 1262, modified 583 F.2d 779 [5th Cir. 1978]).

039-746-517

## VII.   WHETHER THE DETENTION FACILITY IS MEANINGFULLY DIFFERENT FROM A PENAL INSTITUTION.

95.   Petitioner contends that his confinement is tantamount to being held in prison at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. As multiple courts have found, the detention center where Petitioner is imprisoned, Batavia, is indistinguishable from criminal incarceration. (see, e.g., Rosado Valerio, 2019 WL 3017412, at *4; Rachinskiy v. Barr 422 F. Supp. 3d 789 [W.D.N.Y. 2019]). Finding factor weighed in Petitioner's favor where the government failed to rebut Petitioner's contention that "his ongoing detention at [Batavia] is indistinguishable from criminal incarceration"(quoting *Gomes Herbert*, 2019 WL 1434272, at *3). Like a prison, Batavia confines people to cells, restraints and subjects them to discipline in solitary confinement. (see also, Rosado Valerio, 2019 WL 3017 412, at *4 ("Because of the cells, restraints, and discipline in the SHU, conditions at [Batavia] certainly resemble penal confinement.).

96.   Moreover, detainees with criminal convictions like Petitioner, are subject to even greater physical restrictions and unable to access what limited privileges are available. Because of the cells, restraints, and discipline in the "SHU", conditions  at BFDF "resemble penal confinement". Sajous, 2018 U.S. Dist. LEXIS 86921, 2018 WL 2357266, at *11. Petitioner claims conditions under which aliens are being held at Buffalo Federal Detention  Facility resemble penal confinement. Detainees with criminal history have cell doors that close at night. Persons held at BFDF are required to wear restraints when being booked in or booked out or when they are facing discipline are brought to the Special Housing Unit ("SHU") which is a solitary confinement cell. Because of the cells, restraints, and discipline in the "SHU", conditions  at BFDF "resemble penal confinement". (see *Sajous v. Decker*, 2018 U.S. Dist LEXIS 86921, 2018

39.

039-746-517

WL 2357266, at 8* (S.D.N.Y)(Judge Nathan)(Directing bond hearing for criminal alien detained for **eight** months pursuant to § 1226(c)).

## Whether the Petitioner has Prolonged His Own Detention.

97.    The Second Circuit has found that a noncitizen "[has] simply made use of the statutorily permitted appeals process" Hechavarria, 891 F. 3d at 56 n.6 (First quoting Nken v. Holder, 556 U.S. 418, 436 129, S. Ct. 1749, 173 L. Ed 2d 550 (2009)). As the Sixth Circuit has noted, "Appeals and Petitions for Relief are to be expected as a natural part of the process. A [noncitizen], who would not normally be subject to indefinite detention cannot be detained merely because he seeks to explore avenues of Relief that the law makes available to him".

98.    In *Demore v. Kim, 538* U.S. 510 (2003), the Supreme Court held that the government could constitutionally hold without bail a noncitizen who had certain crimes, had completed their sentences and were in removal proceedings.

> **However, the Supreme Court wrote that the "detention at stake... last roughly a month and half in the majority of the cases in which it is invoked and about 5 months in the minority of cases in which the alien chooses to appeal" id., at 530, 123 S. Ct. 1708 155 L. Ed 2d 724. In *Jennings* analyzing *Demore v. Kim* Justice Kennedy stated "stated in concurrence that the Due Process Clause might require bail hearing if the continued detention became unreasonable or unjustified".**

In *Jennings*, following the logic of Justice Kennedy's concurrence in *Demore* and treating the constitutional analysis in *Lora* as persuasive, if no longer binding, multiple District Courts have routinely held that, under § 1226(c), prolonged mandatory detention pending removal proceedings, without a bond hearing "*will at some point - violate Due Process*".

40.

039-746-517

Using *Demore* to keep detainees in jail like facility for a prolonged period of time has to be rigorously reviewed. Petitioner is requesting a bond hearing as soon as he hits the six month detention, in case his immediate release is not order to protect Petitioner from the animus the DHS/ICE has unleashed by trying to unlawfully remove Petitioner, "freedom from imprisonment" while his criminal and immigration cases are pending, is the norm.

039-746-517

## CONCLUSION

WHEREFORE, Petitioner prays that this Honorable Court grant the following relief:

1). Assume jurisdiction over this matter.

2). If the Boad of Immigration of Appeals has dismissed Petitioner's appeal as DHS/ICE is suggesting in the letter dated May 8, 2023, I ask this Court to Grant a Stay of Removal.

3). Petitioner aks this Court to issue a Priliminary Injuction barring DHS/ICE from removing Petitioner based on animus based on petitioner's nationality and/or protected speech.

4). Petitioner requests that the Court grants Petitioner time adn leave to address the conditions of confinement by submitting further details regarding conditions of confinement in a Bill of Particulars.

5). Petitioner asks this Court to consolidate this petition for habeas corpus releif, including a challenge to the conditions of confinement; and for the Civil Rights action pursuant to section 1985(2) section (A) (C) and/or Bivens v. Six Unknown.

6). Order the Attorney General and his agents not to remove Petitioner from the jurisdiction of this Court during the duration of the consideration of this petition.

7).Petitioner asks the Court to grant hearing on the Perliminary Injunction and the Emergency

42.

039-746-517

**Certificate of Service**

I, Kirk King, hereby certify that on  May _____, 2023, a true copy of the above Petition for a Writ of Habeas Corpus were served via


 **X** Facility United States Postal Service Mail Box


___Hand-Delivery


To the Following address:

*Clerk of the Court*
U.S. District Court
2 Niagara Square
Buffalo, NY 14202


       I affirm, under penalty of perjury, that the foregoing is true and correct.


                          Respectfully submitted,


                          _____

                          Kirk King
                          A  039-746-517
                          Buffalo Federal Detention Facility
                          4250 Federal Drive
                          Batavia, New York  14020


44.

# AFFIDAVIT IN LIEU OF NOTARY PUBLIC STAMP

STATE OF NEW YORK    )
                                )    SS:

COUNTY OF GENESEE   )

I, _Kirk King_ depose and state:

That I am presently unable to acquire a notary stamp to confirm my affixed signature as required in compliance of my _Verified Petition for Writ of Habeas corpus_
(name of document)

Please accept this Affidavit in Lieu of the required notary public stamp.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed on the: _19_ day of _MAY_ 2023

_Kirk King_

Name:

A #:

Buffalo Federal Detention Facility

4250 Federal Drive

Batavia, NY 14020

_Arel H_ WITNESS 5-19-23
_Darron Thomas_
_D. Thomas_ A098 78966/
_May 19, 2023_

TAB-1

U.S. Citizenship and Immigration Security
U.S. Department of Justice
Executive Office for Immigration Review

OMB No. 1615-0067, Expires 01/

**I-589, Application for Asy**
**and for Withholding of Rem**

**START HERE** - Type or print in black ink. See the instructions for information about eligibility and how to complete and file this application. There is no filing fee for this application.

NOTE: ☒ Check this box if you also want to apply for withholding of removal under the Convention Against Torture.

**Part A**

| 1. Alien Registration Number(s) (A-Number) (if any) | 2. U.S. Social Security Number (if any) | 3. USCIS Online Account Number (if any) |
|---|---|---|
| A-039 746 517 | 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 | |

| 4. Complete Last Name | 5. First Name | 6. Middle Name |
|---|---|---|
| King | Kirk | Kevin |

7. What other names have you used (include maiden name and aliases)?

8. Residence in the U.S. (where you physically reside)

Street Number and Name
428 Beach 65th Street

| City | State | Zip Code | |
|---|---|---|---|
| Arverne | New York | 11692 | Apt. Number |

(NOTE: You must be residing in the United States to submit this form.)

Telephone Number
(718) 755-2989

9. Mailing Address in the U.S. (if different than the address in Item Number 8)

In Care Of (if applicable):
Baffalo Federal Detention Facility

Street Number and Name
4250 Federal Drive

Telephone Number
( )

| City | State | Zip Code | Apt. Number |
|---|---|---|---|
| Bataviia | New York | 14020 | |

| 10. Gender: ☒ Male ☐ Female | 11. Marital Status: ☒ Single ☐ Married ☐ Divorced ☐ Widowed |
|---|---|

| 12. Date of Birth (mm/dd/yyyy) | 13. City and Country of Birth |
|---|---|
| 10/04/1973 | Jamaica |

| 14. Present Nationality (Citizenship) | 15. Nationality at Birth | 16. Race, Ethnic, or Tribal Group | 17. Religion |
|---|---|---|---|
| Jamaica | Jamaica | Black | Muslim |

18. Check the box, a through c, that applies: a. ☐ I have never been in Immigration Court proceedings.
b. ☐ I am now in Immigration Court proceedings. c. ☒ I am not now in Immigration Court proceedings, but I have been in the past.

19. Complete 19 a through c.
a. When did you last leave your country? (mm/dd/yyyy) 1986   b. What is your current I-94 Number, if any?

c. List each entry into the U.S. beginning with your most recent entry. List date (mm/dd/yyyy), place, and your status for each entry.
(Attach additional sheets as needed.)

| Date | Place | Status | Date Status Expires |
|---|---|---|---|
| 08/1985 | JFK | PR | |
| 1985 | | | |
| | | | |

| 20. What country issued your last passport or travel document? | 21. Passport Number | 22. Expiration Date (mm/dd/yyyy) |
|---|---|---|
| Jamaica | Travel Document Number | |

| 23. What is your native language (include dialect, if applicable)? | 24. Are you fluent in English? | 25. What other languages do you speak fluently |
|---|---|---|
| English | ☒ Yes ☐ No | |

| For EOIR use only. | For USCIS use only. | Action: Interview Date: Asylum Officer ID No.: | Decision: Approval Date: Denial Date: Referral Date: |
|---|---|---|---|

Form I-589  Edition 10/12/22

Page 1

Part

**Your spouse**

[X] I am not married. *(Skip to Your Children below.)*

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Date of Birth *(mm/dd/yyyy)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Other names used *(include maiden name and aliases)* |
|---|---|---|---|

| 9. Date of Marriage *(mm/dd/yyyy)* | 10. Place of Marriage | 11. City and Country of Birth |
|---|---|---|

| 12. Nationality *(Citizenship)* | 13. Race, Ethnic, or Tribal Group | 14. Gender |
|---|---|---|

15. Is this person in the U.S.?
[ ] Yes *(Complete Blocks 16 to 24.)*    [ ] No *(Specify location)*

14. Gender  [ ] Male   [ ] Female

| 16. Place of last entry into the U.S. | 17. Date of last entry into the U.S. *(mm/dd/yyyy)* | 18. I-94 Number *(if any)* | 19. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|

| 20. What is your spouse's current status? | 21. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 22. Is your spouse in Immigration Court proceedings? [ ] Yes [ ] No | 23. If previously in the U.S., date of previous arrival *(mm/dd/yyyy)* |
|---|---|---|---|

24. If in the U.S., is your spouse to be included in this application? *(Check the appropriate box.)*
[ ] Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
[ ] No

**Your Children.** List all of your children, regardless of age, location, or marital status.

[ ] I do not have any children. *(Skip to Part A.III., Information about your background.)*

[X] I have children.   Total number of children: 1

(**NOTE**: Use Form I-589 Supplement A or attach additional sheets of paper and documentation if you have more than four children.)

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|

| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
|---|---|---|---|
| King | Sean | Kosien | 03/30/2009 |

| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Gender |
|---|---|---|---|
| Queens/United States | American | Mixed | [XX] Male  [ ] Female |

13. Is this child in the U.S.? [X] Yes *(Complete Blocks 14 to 21.)*  [ ] No *(Specify location)*:

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? [ ] Yes [ ] No |
|---|---|---|
| U.S. Citizen | | |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
[ ] Yes *(Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
[X] No

Case 3:23-cv-00212-PPS Document 21 Filed 03/23/23 Page 52 of 249

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|

| 5. Complete Last Name | 6. First Name | 7. Middle Name | |
|---|---|---|---|

| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 8. Date of Birth *(mm/dd/yyyy)* |
|---|---|---|---|

**13. Is this child in the U.S. ?**  ☐ Yes *(Complete Blocks 14 to 21.)*  ☐ No *(Specify location):*    **12. Gender** ☐ Male  ☐ Female

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes  ☐ No |
|---|---|---|

**21. If in the U.S., is this child to be included in this application?** *(Check the appropriate box.)*
☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
☐ No

---

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|

| 5. Complete Last Name | 6. First Name | 7. Middle Name | |
|---|---|---|---|

| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 8. Date of Birth *(mm/dd/yyyy)* |
|---|---|---|---|

**13. Is this child in the U.S. ?**  ☐ Yes *(Complete Blocks 14 to 21.)*  ☐ No *(Specify location):*    **12. Gender** ☐ Male  ☐ Female

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes  ☐ No |
|---|---|---|

**21. If in the U.S., is this child to be included in this application?** *(Check the appropriate box.)*
☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
☐ No

---

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|

| 5. Complete Last Name | 6. First Name | 7. Middle Name | |
|---|---|---|---|

| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 8. Date of Birth *(mm/dd/yyyy)* |
|---|---|---|---|

**13. Is this child in the U.S. ?**  ☐ Yes *(Complete Blocks 14 to 21.)*  ☐ No *(Specify location):*    **12. Gender** ☐ Male  ☐ Female

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|

| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes  ☐ No |
|---|---|---|

**21. If in the U.S., is this child to be included in this application?** *(Check the appropriate box.)*
☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*
☐ No

Form I-589   Edition   10/12/22

1. List your last address where you lived before coming to the United States. If this is not the country where you fear persecution, also list the last address in the country where you fear persecution. (List Address, City/Town, Department, Province, or State and Country.)
(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Number and Street (Provide if available) | City/Town | Department, Province, or State | Country | Dates From (Mo/Yr) | To (Mo/ |
|---|---|---|---|---|---|
| | | | | | |

2. Provide the following information about your residences during the past 5 years. List your present address first.
(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Number and Street | City/Town | Department, Province, or State | Country | Dates From (Mo/Yr) | To (Mo. |
|---|---|---|---|---|---|
| 4250 Federal Drive | Batavia | New York | U.S.A. | 02/2023 | 02/2 |
| Greene CF | Greene | New York | U.S.A. | 02/2022 | 02/ |
| Downstate CF | Fishkill | New York | U.S.A. | 12/2015 | 02/ |

3. Provide the following information about your education, beginning with the most recent school that you attended.
(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Name of School | Type of School | Location (Address) | Attended From (Mo/Yr) | To (Mo/ |
|---|---|---|---|---|
| Adelphi Uni. | Graduate | Garden City L.I. | 09/2000 | 07/2 |
| Brooklyn College | Under-Grad | Brooklyn, N.Y. | 09/2003 | 07/2 |

4. Provide the following information about your employment during the past 5 years. List your present employment first.
(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Name and Address of Employer | Your Occupation | Dates From (Mo/Yr) | To (M |
|---|---|---|---|
| Bowb - Downstate CF, Greene CF | Paralegal | 02/2022 | 02/ |
| Greene CF - Downstate CF | Paralegal | 07/2017 | 02/ |
| Downstate CF | Program Assistant | 01/2016 | 07/ |

5. Provide the following information about your parents and siblings (brothers and sisters). Check the box if the person is deceased.
(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)

| Full Name | City/Town and Country of Birth | Current Location |
|---|---|---|
| Mother Monica Garriques | Jamaica | ☐ Deceased |
| Father Franklyn King | Jamaica | ☐ Deceased  Queens, New Yor |
| Sibling Gayon King | Jamaica | ☒ Deceased |
| Sibling Elvis King | Jamaica | ☐ Deceased |
| Sibling Horace King | Jamaica | ☐ Deceased |
| Sibling | | ☐ Deceased |
| | | ☐ Deceased |

Form I-589  Edition  10/12/22

Page

**Part B**

(NOTE: Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part B.)

When answering the following questions about your asylum or other protection claim (withholding of removal under 241(b)(3) of the INA or withholding of removal under the Convention Against Torture), you must provide a detailed and specific account of the basis of your claim to asylum or other protection. To the best of your ability, provide specific dates, places, and descriptions about each event or action described. You must also provide documents evidencing the general conditions in the country from which you are seeking asylum or other protection and the specific facts on which you are relying to support your claim. If this documentation is unavailable or you are not providing this documentation with your application, explain why in your responses to the following questions.

Refer to Instructions, Part 1: Filing Instructions, Section II, "Basis of Eligibility," Parts A - D, Section V, Completing the Form," Part B, and Section VII, "Additional Evidence That You Should Submit," for more information on completing this section of the form.

1. Why are you applying for asylum or withholding of removal under section 241(b)(3) of the INA, or for withholding of removal under the Convention Against Torture? Check the appropriate box(es) below and then provide detailed answers to questions A and B below.

I am seeking asylum or withholding of removal based on:

- [ ] Race
- [ ] Religion
- [ ] Nationality
- [ ] Political opinion
- [X] Membership in a particular social group
- [X] Torture Convention

A. Have you, your family, or close friends or colleagues ever experienced harm or mistreatment or threats in the past by anyone?

- [ ] No
- [X] Yes

If "Yes," explain in detail:
1. What happened;
2. When the harm or mistreatment or threats occurred;
3. Who caused the harm or mistreatment or threats; and
4. Why you believe the harm or mistreatment or threats occurred.

In 2010 I was opperating a small phone store where I paid phone bills and bought and sold phones in Queens New York. I was approached by memebers of the "Gaza Empire" Criminal Organization they told me a Jamaican I had ot pay "Taxes". This was protection money that is sent back to Jamaica to the "Dons". I refused to payhbut I continued to get threats because I continued to refuse to comply with what they wanted. After about (2) years of me getting into confrontations with these people, I felt that things would be fine because they had not harmed me or my family.

B. Do you fear harm or mistreatment if you return to your home country?

- [ ] No
- [X] Yes

If "Yes," explain in detail:
1. What harm or mistreatment you fear;
2. Who you believe would harm or mistreat you; and
3. Why you believe you would or could be harmed or mistreated.

I fear that I will be burned alive if I am sent back to Jamaica. I know that the "Gaza Empire" is going to kill me. I will be tortured and abused before I am killed. I will be made an example for defying the "Dons" this organization. The "Gaza Empire" is a very large international criminal organization. It has many members, some of whom are in prisons in Jamaica. They kill without fear or regret. A very famous member is the musician "Vibez Kartel", who is currently locked up in Jamaica for burning someone alive and recording it

2. Have you or your family members ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in a country other than the United States (including for an immigration law violation)?

☒ No    ☐ Yes

If "Yes," explain the circumstances and reasons for the action.

3.A. Have you or your family members ever belonged to or been associated with any organizations or groups in your home country, such as, but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerrilla organization, ethnic group, human rights group, or the press or media?

☒ No    ☐ Yes

If "Yes," describe for each person the level of participation, any leadership or other positions held, and the length of time you or your family members were involved in each organization or activity.

3.B. Do you or your family members continue to participate in any way in these organizations or groups?

☒ No    ☐ Yes

If "Yes," describe for each person your or your family members' current level of participation, any leadership or other positions currently held, and the length of time you or your family members have been involved in each organization or group.

4. Are you afraid of being subjected to torture in your home country or any other country to which you may be returned?

☐ No    ☒ Yes

If "Yes," explain why you are afraid and describe the nature of torture you fear, by whom, and why it would be inflicted.

I am affraid of being burned alive. I was already shot (5) times by members of the "Gaza Empire" in the United States. I was sent to prison for a crime I did not commit by these same people in the United States. I am sure they can do all these things and worse to me in Jamaica, where that control sections of the country that I do not know and exercise some control over the police forces.

Form I-589  Edition  10/12/22

**Part C.**

*(NOTE: Use Form I-589 Supplement B, or attach additional sheets of paper as needed to complete your responses to the questions contained in Part C.)*

1. Have you, your spouse, your child(ren), your parents or your siblings ever applied to the U.S. Government for refugee status, asylum, or withholding of removal?

   ☒ No        ☐ Yes

   If "Yes," explain the decision and what happened to any status you, your spouse, your child(ren), your parents, or your siblings received as a result of that decision. Indicate whether or not you were included in a parent or spouse's application. If so, include your parent or spouse's A-number in your response. If you have been denied asylum by an immigration judge or the Board of Immigration Appeals, describe any change(s) in conditions in your country or your own personal circumstances since the date of the denial that may affect your eligibility for asylum.

2.A. After leaving the country from which you are claiming asylum, did you or your spouse or child(ren) who are now in the United States travel through or reside in any other country before entering the United States?

   ☒ No        ☐ Yes

2.B. Have you, your spouse, your child(ren), or other family members, such as your parents or siblings, ever applied for or received any lawful status in any country other than the one from which you are now claiming asylum?

   ☒ No        ☐ Yes

   If "Yes" to either or both questions (2A and/or 2B), provide for each person the following: the name of each country and the length of stay, the person's status while there, the reasons for leaving, whether or not the person is entitled to return for lawful residence purposes, and whether the person applied for refugee status or for asylum while there, and if not, why he or she did not do so.

3. Have you, your spouse or your child(ren) ever ordered, incited, assisted or otherwise participated in causing harm or suffering to any person because of his or her race, religion, nationality, membership in a particular social group or belief in a particular political opinion?

   ☒ No        ☐ Yes

   If "Yes," describe in detail each such incident and your own, your spouse's, or your child(ren)'s involvement.

Form I-589   Edition   10/12/22

Part...

4. After you left the country where you were harmed or fear harm, did you return to that country?

[ ] No       [X] Yes

If "Yes," describe in detail the circumstances of your visit(s) (for example, the date(s) of the trip(s), the purpose(s) of the trip(s), and the length of time you remained in that country for the visit(s).)

I returned once as a child at age 12. This was in 1996, this was to visit with my father ;who was very ill at the time. He was my last time seeing him before he died from his illness some years later. I have never been back to Jamaica since this last visit to see my father.

5. Are you filing this application more than 1 year after your last arrival in the United States?

[ ] No       [X] Yes

If "Yes," explain why you did not file within the first year after you arrived. You must be prepared to explain at your interview or hearing why you did not file your asylum application within the first year after you arrived. For guidance in answering this question, see Instructions, Filing Instructions, Section V, "Completing the Form," Part C.

I was brought to the United States as a child and did not know the process of any of this. One day I was packed up and put an a plane and told that I was going to America. I was 11 years old and did not know what was going on. I was not a victim of these actions until I became an adult. I was not aware of my status until I was imprisonned. I thought that because I was brought here by my mother, whatever her status was that was also my status.

6. Have you or any member of your family included in the application ever committed any crime and/or been arrested, charged, convicted, or sentenced for any crimes in the United States (including for an immigration law violation)?

[ ] No       [X] Yes

If "Yes," for each instance, specify in your response: what occurred and the circumstances, dates, length of sentence received, location, the duration of the detention or imprisonment, reason(s) for the detention or conviction, any formal charges that were lodged against you or your relatives included in your application, and the reason(s) for release. Attach documents referring to these incidents, if they are available, or an explanation of why documents are not available.

I was charged and sentenced in 1991 for attempted possession of a weapon in Rochester, New York. I was sentenced to 5 years probation. This crime I have been informed by the Rochester Supreme Court and District Attorney's Office, was not a deportable offense at the time I pled guilty. The crime occured when I was in a building with some friends one of them was showing off a gun that he had. The police showed up and we all ran. I was caught and the gun was recovered and I was charged with attempting to possessing it. I took the blame and was sentenced to probation. I was 17 years old at the time.

Form I-589 Edition 10/12/22

**Part**

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it are all true and correct. Title 18, United States Code, Section 1546(a), provides in part: Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact - shall be fined in accordance with this title or imprisoned for up to 25 years. I certify that I am physically present in the United States or seeking admission at a Port of Entry when I execute this application. I authorize the release of any information from my immigration record that U.S. Citizenship and Immigration Services (USCIS) needs to determine eligibility for the benefit I am seeking.

Staple your photograph here the photograph of the family member to be included on an extra copy of the application submitted for that person.

**WARNING:** Applicants who are in the United States unlawfully are subject to removal if their asylum or withholding claims are not granted by an asylum officer or an immigration judge. Any information provided in completing this application may be used as a basis the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. You may not avoid a frivolous finding simply because someone advised you to provide false information in your asylum application. filing with USCIS, unexcused failure to appear for an appointment to provide biometrics (such as fingerprints) and your biographical information within the time allowed may result in an asylum officer dismissing your asylum application or referring it to an immigration judge. Failure without good cause to provide DHS with biometrics or other biographical information while in removal proceedings may result in your application being found abandoned by the immigration judge. See sections 208(d)(5)(A) and 208(d)(6) of the INA and 8 CFR sections 208.10, 1208.10, 208.20, 1003.47(d) and 1208.20.

Print your complete name.
Kirk Kevin King

Write your name in your native alphabet.
Kirk Kevin King

Did your spouse, parent, or child(ren) assist you in completing this application? [X] No  [ ] Yes (If "Yes," list the name and relationship)

(Name) (Relationship) (Name) (Relationship)

Did someone other than your spouse, parent, or child(ren) prepare this application? [ ] No [ ] Yes (If "Yes,"complete Part E)

Asylum applicants may be represented by counsel. Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim? [ ] No [ ] Yes

Signature of Applicant (The person in Part A.I.)

Sign your name so it all appears within the brackets

Date (mm/dd/yyyy)

**Part**

I declare that I have prepared this application at the request of the person named in Part D, that the responses provided are based on all information which I have knowledge, or which was provided to me by the applicant, and that the completed application was read to the applicant in his or her native language or a language he or she understands for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. 1324c and/or criminal penalties under 18 U.S.C. 1546(a).

Signature of Preparer
Print Complete Name of Preparer

Daytime Telephone Number
( )
Address of Preparer: Street Number and Name

Apt. Number
City
State
Zip Code

To be completed by attorney or accredited representative (if any). [ ] Select this box if Form G-28 is attached.
Attorney State Bar Number (if applicable)
Attorney or Accredited Representative USCIS Online Account Number (if any)

Form I-589 Edition 10/12/22

**Part**

**NOTE:** *You will be asked to complete this part when you appear for examination before an asylum officer of the Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS).*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are [ ] all true or [ ] not all true to the best of my knowledge and that correction(s) numbered _____ to _____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

_____
Signature of Applicant

_____
Date *(mm/dd/yyyy)*

_____
Write Your Name in Your Native Alphabet

_____
Signature of Asylum Officer

**Part**

**NOTE:** *You will be asked to complete this Part when you appear before an immigration judge of the U.S. Department of Justice, Executive Office for Immigration Review (EOIR), for a hearing.*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are [ ] all true or [ ] not all true to the best of my knowledge and that correction(s) numbered _____ to _____ were made by me or at my request. Furthermore, I am aware that if I am determined to have knowingly made a frivolous application for asylum I will be permanently ineligible for benefits under the Immigration and Nationality Act, and that I may not avoid a frivolous finding simply because someone advised me to provide false information in my asylum application.

Signed and sworn to before me by the above named applicant on:

_____
Signature of Applicant

_____
Date *(mm/dd/yyyy)*

_____
Write Your Name in Your Native Alphabet

_____
Signature of Immigration Judge

Form I-589  Edition  10/12/22

# Supplement A, Form I-

| A-Number *(If available)* | Date |
|---|---|
| Applicant's Name | Applicant's Signature |

List All...
NOTE...

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Numb... *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy...* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

| 13. Is this child in the U.S. ? ☐ Yes *(Complete Blocks 14 to 21.)* ☐ No *(Specify location)*: |
|---|

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
☐ Yes *(Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this pers...*
☐ No

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

| 13. Is this child in the U.S. ? ☐ Yes *(Complete Blocks 14 to 21.)* ☐ No *(Specify location)*: |
|---|

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitte... *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*
☐ Yes *(Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person )*
☐ No

Supplement B, Form

| | |
|---|---|
| A-Number *(if available)* 039 746 517 | |
| Applicant's Name Kirk Kevin King | Date February 27, 2023 |
| | Applicant's Signature |

NOTE: *Use this as a continuation page for any additional information requested.  Copy and complete as needed.*

Part    Part B

Question    1-A

In 2012 the harrassment began again and I was confronted at a store on Beach 67th Street in Arverne, New York. I shot (5) times by several members of the "Gaza Empire" Criminal Organization. This was done becuase I would not pay my "Taxes" to the "Dons" in Jamaica.

This harm was caused by several members of the "Gaza Empire" Criminal Orginazation who were located in Queens, New York.
(1) "Fab"-Later identified as Marvin Mitchell.
(2) "Blacka"-who was never Identified (my current attorney is trying to identify this individual because he shot the person that I am in prison for shooting in his attempt to kill me. Both of these members of the "Gaza Empire" Criminal Organization shot me on the night of July 2, 2012. Before shooting me they told me that if I did not comply with their request I would be sorry. They showed me pictures of burned, mutalated, and bodies filled with gun shot wounds and told that "This is what happens when you do not comply with the "Dons"". They told me it would happen to me if I did not pay in money, goods, and/or services to the "Dons". This happened to me becuase the International Criminal Organization extorts money, goods, and services from Jamaicans internationally. They use violence and the threat of violence to get there victims to comply with there orders. When you do not comply you face death in horrific ways. I refused to pay and I was shot (5) times and sent to prison for a crime that I did not commit. I now  face torture and burning if I am sent back to Jamaica.

Additional Information About Your Claim to Asylum    SUPPLEMENT B, FORM I-589
Part-B
Question-1-B

on a cell phone. This incident has made international news
This was only made international news because "Vibez Kartel"
is famous. I fear this will happen to me and now one will ever
know what happened to me.
I know this is my fate if I am returned to Jamaica because I was
told so. I went to trial in my case and two of the members of
the "Gaza Empire" had to testify against me. I was told to plea
guilty to a crime I did not commit. This was to avoid people
being exposed at my trial. I refused to comply and went to trial
this forced "Fab" - Marvin Mitchell and "Boysie"- Andre Black to come to my
trial and testify that I shot Andre Black. This was done to
protect "Blacka" - (real name unknown to me). Not only did I not
comply with paying them "Taxes" (extrotion money). I forced there
members to come to court and take the stand against me. I have
already been told that I will be killed if I return to Jamaica
for my actions against the "Gaza Empire" and there members.
I was targeted for extortion because I am bi-sexual. I am viewed
as a homesexual by these individuals and was told because of this
I had to pay the bons to live. If I am sent back to Jamaica they
will alert people in Jamaica that I am there and I will be killed
for refusing to pay and for exposing them in court and I will
definately be killed for being part of whats viewed as the
homosexual sexuals. I fear being burned to death. I know this is
what will happen to me if I am sent back to Jamaica.

13

SUPPLEMENT C-FORM I-589

Additional Information About Your Claim to Asylum

Part -C
Question- 6-C

In 1992 I was charged after a house where I was squating was raided, with attempted possession of cocaine. I was a drug user at the time and one of several people caught in this raid. This occurred in Syracuse New York. For this charge I was sentenced to $4\frac{1}{2}$-9 years in state prison. This charge was not a deportable offense.

In 2012 I was charged with attempted second degree murder, attempted first degree assault, second degree assault and two (2) counts of weapons possession. I was convicted of all these charges charges after a jury trial. I am still fighting this conviction and I am currently in post conviction proceedings. These charges occurred at the incident where I was shot (5) times by members of the "Gaza Empire" criminal organization. I was confronted by "Fab" - Marvin Mitchell
"Boysie" - Andre Black
"Blacka" - Name Unknown to me.
on the night of July 2, 2012. During the confrontation they tried rob me, they eventually shot me (5) times in various parts of my body. This happened in front of a store. Andre Black was also shot. He was and I were both shot by "Blacka" as "Blacka" tried to shoot me from a distance. Andre Black "Boysie" was shot by accident by one of his fellow organization members, "Backa". Some of this incident was caught on camera. However, "Blacka" was not caught on camera shooting. Both Andre Black and Marvin Mitchell told the police that I shot Andre so that "Blacka" would not be implicated in the incident. I have been threatned to keep "Blacka" out of this incident. My mother and child have been used against me to not involve this person in my prosecution or to mention that he was present at the time of the incident. I have come to understand that "Blacka" was or is working as a confidential informant for the 100 Precienct in Queens, New York. He was working for the police at the time he helped to shoot me (5) times. He was able to put people next to me on Rikers Island, who would remind me to keep my mouth shut. I filed a complaint with the security staff at Rikers Island. I did not plead guilty as they were presuring me to but took my case to trial. This forced Marvin Mitchell and Andre Black to testify at my trial.

My case is currently in the Queens County District Attorney's Conviction Intergrity Unit, it is being investigated due to the denial of evidence to the defense at my trial. This evidence will prove factually that I did not shoot Andre Black and that I did not possess that weapon I was charged with possessing. I fact the gun recovered belong to one of my nephews and was found in his room. He was pressured into say that the gun was mine. I am unable to provide documentation to all of these facts at this time because I am in the Buffolo Federal Detention Facility and I am limited to the amount of paper work and property that I can have with me.

14

SUPPLEMENT C-FORM I-589
Additional Information About Your Claim to Asylum

Part- C
Question- 6 C

My case is at present in the Queens County District Office
it is being reviewed by Assistant District Attorney Bryce Benjit.

I am being represented in this matter by Justin C. Bonus, Esq.
(347) 920-0160
Kew Gardens
Queens New York.

15

TAB-2



# Petition for U Nonimmigrant Status

### Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-918**
OMB No. 1615-0104
Expires 06/30/2023

| | Remarks | Receipt | Action Block |
|---|---|---|---|
| **For USCIS Use Only** | | | |

| U.S. Embassy Consulate | Validity Dates (mm/dd/yyyy) From: / / To: / / | Wait Listed Stamp Number Date (mm/dd/yyyy) | |

☐ Select this box if Form G-28 is attached.

**Attorney State Bar Number** (if applicable)

**Attorney or Accredited Representative USCIS Online Account Number** (if any)

▶ **START HERE - Type or print in black or blue ink.**

**1.a.** Family Name (Last Name) **King**

**1.b.** Given Name (First Name) **Kirk**

**1.c.** Middle Name **Kevin**

**Other Names Used** (Include maiden name, nicknames, and aliases, if applicable)

**2.a.** Family Name (Last Name)

**2.b.** Given Name (First Name)

**2.c.** Middle Name

**Home Address**

**3.a.** Street Number and Name **4250 Federal Drive**

**3.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**3.c.** City or Town **Batavia**

**3.d.** State **NY** **3.e.** ZIP Code **14020**

**3.f.** Province

**3.g.** Postal Code

**3.h.** Country **United States**

**Safe Mailing Address (if other than Home Address)**

**4.a.** In Care Of Name

**4.b.** Street Number and Name

**4.c.** ☐ Apt. ☐ Ste. ☐ Flr.

**4.d.** City or Town

**4.e.** State **4.f.** ZIP Code

**4.g.** Province

**4.h.** Postal Code

**4.i.** Country

**Other Information**

**5.** Alien Registration Number (A-Number) (if any)
▶ A- 0 8 9 7 4 6 5 1 7

**6.** U.S. Social Security Number (if any)
▶ 0 6 9 7 0 2 6 4 0

**7.** USCIS Online Account Number (if any)
▶

**8.** Marital Status
☐ Single ☐ Married ☐ Divorced ☐ Widowed

9. Gender  ☒ Male  ☐ Female

10. Date of Birth (mm/dd/yyyy)  `10/04/1973`

11. Country of Birth
`Jamaica`

12. Country of Citizenship or Nationality
`Jamaica`

13. Form I-94 Arrival-Departure Record Number
▶ [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

14. Passport Number

15. Travel Document Number

16. Country of Issuance for Passport or Travel Document
`Jamaica`

17. Date of Issuance for Passport or Travel Document (mm/dd/yyyy)  `08/22/1985`

18. Expiration Date for Passport or Travel Document (mm/dd/yyyy)

Place and Date of Last Entry into the United States and Date Authorized Stay Expired

19.a. City or Town  `Queens`

19.b. State  `NNY`

20. Date of Last Entry into the United States (mm/dd/yyyy)

21. Date Authorized Stay Expired (mm/dd/yyyy)

22. Current Immigration Status
`In Removal Proceedings`

Answering "Yes" to the following questions below requires explanations and supporting documentation. Attach relevant documents in support of your claims that you are a victim of criminal activity listed in the Immigration and Nationality Act (INA) section 101(a)(15)(U)(iii). You must also attach a personal narrative statement describing the criminal activity of which you are a victim. If you are only petitioning for U derivative status for qualifying family members subsequent to your (the principal petitioner) initial filing, you are not required to submit evidence supporting the original petition with the new Form I-918.

If you need extra space to complete **Part 2.**, use the space provided in **Part 8. Additional Information.**

Select "Yes" or "No," as appropriate, for each of the following questions.

1. I am a victim of criminal activity listed in the INA at section 101(a)(15)(U)(iii).  ☒ Yes  ☐ No

2. I have suffered substantial physical or mental abuse as a result of having been a victim of this criminal activity.  ☒ Yes  ☐ No

3. I possess information concerning the criminal activity of which I was a victim.  ☒ Yes  ☐ No

4. I am submitting Form I-918, Supplement B, U Nonimmigrant Status Certification, from a certifying official.  ☒ Yes  ☐ No

5. The crime of which I am a victim occurred in the United States (including Indian country and military installations) or violated the laws of the United States.  ☒ Yes  ☐ No

6. I am under 16 years of age.  ☐ Yes  ☒ No

7.a. I was or am in immigration proceedings.  ☒ Yes  ☐ No

If you answered "Yes," select the type of proceedings. If you were in proceedings in the past and are no longer in proceedings, provide the date of action. If you are currently in proceedings, type or print "Current" in the appropriate date field. Select **all applicable** boxes. Use the space provided in **Part 8. Additional Information** to provide an explanation.

7.b. ☒ Removal Proceedings
Removal Date (mm/dd/yyyy)  `06/29/2017`

7.c. ☐ Exclusion Proceedings
Exclusion Date (mm/dd/yyyy)

7.d. ☐ Deportation Proceedings
Deportation Date (mm/dd/yyyy)

7.e. ☐ Rescission Proceedings
Rescission Date (mm/dd/yyyy)

7.f. ☐ Judicial Proceedings
Judicial Date (mm/dd/yyyy)

Provide the date of entry, place of entry, and status under which you entered the United States for each entry during the five years preceding the filing of this petition.

**8.a.** Date of Entry (mm/dd/yyyy)

Place of Entry into the United States

**8.b.** City or Town

**8.c.** State

**8.d.** Status at the Time of Entry (for example, F-1 student, B-2 tourist, entered without inspection)

**9.a.** Date of Entry (mm/dd/yyyy)

Place of Entry into the United States

**9.b.** City or Town

**9.c.** State

**9.d.** Status at the Time of Entry (for example, F-1 student, B-2 tourist, entered without inspection)

**10.a.** Date of Entry (mm/dd/yyyy)

Place of Entry into the United States

**10.b.** City or Town

**10.c.** State

**10.d.** Status at the Time of Entry (for example, F-1 student, B-2 tourist, entered without inspection)

If you are outside of the United States, provide the U.S. Consulate or inspection facility or a safe foreign mailing address you want notified if this petition is approved.

**11.a.** Type of Office (Select **only one** box):
- [ ] U.S. Consulate
- [ ] Pre-Flight Inspection
- [ ] Port-of-Entry

**11.b.** City or Town

**11.c.** State

**11.d.** Country

Safe Foreign Address Where You Want Notification Sent (if other than U.S. Consulate, Pre-Flight Inspection, or Port-of-Entry)

**12.a.** Street Number and Name

**12.b.** [ ] Apt. [ ] Ste. [ ] Flr.

**12.c.** City or Town

**12.d.** Province

**12.e.** Postal Code

**12.f.** Country

Answer the following questions about yourself. For the purposes of this petition, you must answer "Yes" to the following questions, if applicable, even if your records were sealed or otherwise cleared or if anyone, including a judge, law enforcement officer, or attorney, told you that you no longer have a record.

**NOTE:** If you answer "Yes" to ANY question in **Part 3.**, provide an explanation in the space provided in **Part 8. Additional Information.**

**NOTE:** Answering "Yes" does not necessarily mean that U.S. Citizenship and Immigration Services (USCIS) will deny your Petition for U Nonimmigrant Status.

Have you **EVER**:

**1.a.** Committed a crime or offense for which you have not been arrested? [ ] Yes [X] No

**1.b.** Been arrested, cited, or detained by any law enforcement officer (including Department of Homeland Security (DHS) former Immigration and Naturalization Service (INS), and military officers) for any reason? [X] Yes [ ] No

**1.c.** Been charged with committing any crime or offense? [X] Yes [ ] No

**1.d.** Been convicted of a crime or offense (even if the violation was subsequently expunged or pardoned)? [X] Yes [ ] No

**1.e.** Been placed in an alternative sentencing or a rehabilitative program (for example, diversion, deferred prosecution, withheld adjudication, deferred adjudication)? [ ] Yes [X] No

**1.f.** Received a suspended sentence, been placed on probation, or been paroled?    ☒ Yes  ☐ No

**1.g.** Been in jail or prison?    ☒ Yes  ☐ No

**1.h.** Been the beneficiary of a pardon, amnesty, rehabilitation, or other act of clemency or similar action?    ☐ Yes  ☒ No

**1.i.** Exercised diplomatic immunity to avoid prosecution for a criminal offense in the United States?    ☐ Yes  ☒ No

**Information About Arrests, Citations, Detentions, or Charges**

If you answered "Yes" to any of the above questions, respond to the questions below to provide additional details. If you need extra space, use the space provided in **Part 8. Additional Information.**

**2.a** Why were you arrested, cited, detained, or charged?
Attp. CPW 3rd Degree

**2.b.** Date of arrest, citation, detention, or charge (mm/dd/yyyy)
04/24/1991

Where were you arrested, cited, detained, or charged?

**2.c.** City or Town  Rochester

**2.d.** State  NY

**2.e.** Country
United States

**2.f.** Outcome or disposition (for example, no charges filed, charges dismissed, jail, probation)
Probation

**3.a** Why were you arrested, cited, detained, or charged?
Attp. Poss. CS 3rd Degree

**3.b.** Date of arrest, citation, detention, or charge (mm/dd/yyyy)
08/15/1992

Where were you arrested, cited, detained, or charged?

**3.c.** City or Town  Seracuse

**3.d.** State  NY

**3.e.** Country
United States

**3.f.** Outcome or disposition (for example, no charges filed, charges dismissed, jail, probation)
Jail time

Have you **EVER**:

**4.a.** Engaged in, or do you intend to engage in, prostitution or procurement of prostitution?    ☐ Yes  ☒ No

**4.b.** Engaged in any unlawful commercialized vice, including, but not limited to, illegal gambling?    ☐ Yes  ☒ No

**4.c.** Knowingly encouraged, induced, assisted, abetted, or aided any alien to try to enter the United States illegally?    ☐ Yes  ☒ No

**4.d.** Illicitly trafficked in any controlled substance or knowingly assisted, abetted, or colluded in the illicit trafficking of any controlled substance?    ☐ Yes  ☒ No

Have you **EVER** committed, planned or prepared, participated in, threatened to, attempted to, conspired to commit, gathered information for, or solicited funds for any of the following:

**5.a.** Hijacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle)?    ☐ Yes  ☒ No

**5.b.** Seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained?    ☐ Yes  ☒ No

**5.c.** Assassination?    ☐ Yes  ☒ No

**5.d.** The use of any firearm with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property?    ☐ Yes  ☒ No

**5.e.** The use of any biological agent, chemical agent, nuclear weapon or device, explosive, or other weapon or dangerous device, with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property?    ☐ Yes  ☒ No

Have you **EVER** been a member of, solicited money or members for, provided support for, attended military training (as defined in section 2339D(c)(1) of Title 18, United States Code) by or on behalf of, or been associated with any other group of two or more individuals, whether organized or not, which has been designated as, or has engaged in or has a subgroup which has been designated as, or has engaged in:

**6.a.** A terrorist organization under section 219 of the INA?    ☐ Yes  ☒ No

**6.b.** Hijacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle)?    ☐ Yes  ☒ No

**6.c.** Seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained? ☐ Yes ☒ No

**6.d.** Assassination? ☐ Yes ☒ No

**6.e.** The use of any firearm with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property? ☐ Yes ☒ No

**6.f.** The use of any biological agent, chemical agent, nuclear weapon or device, explosive, or other weapon or dangerous device, with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property? ☐ Yes ☒ No

**6.g.** Soliciting money or members or otherwise providing material support to a terrorist organization? ☐ Yes ☒ No

Do you intend to engage in the United States in:

**7.a.** Espionage? ☐ Yes ☒ No

**7.b.** Any unlawful activity, or any activity the purpose of which is in opposition to, or the control, or overthrow of the government of the United States? ☐ Yes ☒ No

**7.c.** Solely, principally, or incidentally in any activity related to espionage or sabotage or to violate any law involving the export of goods, technology, or sensitive information? ☐ Yes ☒ No

**8.** Have you **EVER** been or do you continue to be a member of the Communist or other totalitarian party, except when membership was involuntary? ☐ Yes ☒ No

**9.** Have you **EVER**, during the period of March 23, 1933 to May 8, 1945, in association with either the Nazi Government of Germany or any organization or government associated or allied with the Nazi Government of Germany, ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, nationality, membership in a particular social group, or political opinion? ☐ Yes ☒ No

Have you **EVER** ordered, incited, called for, committed, assisted, helped with, or otherwise participated in any of the following:

**10.a.** Acts involving torture or genocide? ☐ Yes ☒ No

**10.b.** Killing any person? ☐ Yes ☒ No

**10.c.** Intentionally and severely injuring any person? ☐ Yes ☒ No

**10.d.** Engaging in any kind of sexual conduct or relations with any person who was being forced or threatened? ☐ Yes ☒ No

**10.e.** Limiting or denying any person's ability to exercise religious beliefs? ☐ Yes ☒ No

**10.f.** The persecution of any person because of race, religion, national origin, membership in a particular social group, or political opinion? ☐ Yes ☒ No

**10.g.** Displacing or moving any person from their residence by force, threat of force, compulsion, or duress? ☐ Yes ☒ No

**NOTE:** If you answered "Yes" to any question in **Item Numbers 10.a. - 10.g.**, please describe the circumstances in **Part 8. Additional Information**.

**11.** Have you **EVER** advocated that another person commit any of the acts described in the preceding question, urged, or encouraged another person, to commit such acts? ☐ Yes ☒ No

Have you **EVER** been present or nearby when any person was:

**12.a.** Intentionally killed, tortured, beaten, or injured? ☐ Yes ☒ No

**12.b.** Displaced or moved from his or her residence by force, compulsion, or duress? ☐ Yes ☒ No

**12.c.** In any way compelled or forced to engage in any kind of sexual contact or relations? ☐ Yes ☒ No

Have you **EVER**:

**13.a.** Served in, been a member of, assisted in, or participated in any military unit, paramilitary unit, police unit, self-defense unit, vigilante unit, rebel group, guerilla group, militia, or other insurgent organization? ☐ Yes ☒ No

**13.b.** Served in any prison, jail, prison camp, detention facility, labor camp, or any other situation that involved detaining persons? ☐ Yes ☒ No

**13.c.** Served in, been a member of, assisted in, or participated in any group, unit, or organization of any kind in which you or other persons transported, possessed, or used any type of weapon? ☐ Yes ☒ No

**NOTE:** If you answered "Yes" to any question in **Item Numbers 13.a. - 13.c.,** please describe the circumstances in **Part 8. Additional Information.**

Have you **EVER:**

**14.a.** Received any type of military, paramilitary, or weapons training? ☐ Yes ☒ No

**14.b.** Been a member of, assisted in, or participated in any group, unit, or organization of any kind in which you or other persons used any type of weapon against any person or threatened to do so? ☐ Yes ☒ No

**14.c.** Assisted or participated in selling or providing weapons to any person who to your knowledge used them against another person, or in transporting weapons to any person who to your knowledge used them against another person? ☐ Yes ☒ No

**NOTE:** If you answered "Yes" to any question in **Item Numbers 14.a. - 14.c.,** please describe the circumstances in **Part 8. Additional Information.**

Have you **EVER:**

**15.a.** Recruited, enlisted, conscripted, or used any person under 15 years of age to serve in or help an armed force or group? ☐ Yes ☒ No

**15.b.** Used any person under 15 years of age to take part in hostilities, or to help or provide services to people in combat? ☐ Yes ☒ No

**16.** Are you **NOW** in removal, exclusion, rescission, or deportation proceedings? ☒ Yes ☐ No

**17.** Have you **EVER** had removal, exclusion, rescission, or deportation proceedings initiated against you? ☐ Yes ☒ No

**18.** Have you **EVER** been removed, excluded, or deported from the United States? ☐ Yes ☒ No

**19.** Have you **EVER** been ordered to be removed, excluded, or deported from the United States? ☐ Yes ☒ No

**20.** Have you **EVER** been denied a visa or denied admission to the United States? ☐ Yes ☒ No

**21.** Have you **EVER** been granted voluntary departure by an immigration officer or an immigration judge and failed to depart within the allotted time? ☐ Yes ☒ No

**22.** Are you **NOW** under a final order or civil penalty for violating section 274C of the INA (producing and/or using false documentation to unlawfully satisfy a requirement of the INA)? ☐ Yes ☒ No

**23.** Have you **EVER,** by fraud or willful misrepresentation of a material fact, sought to procure or procured a visa or other documentation, for entry into the United States or any immigration benefit? ☐ Yes ☒ No

**24.** Have you **EVER** left the United States to avoid being drafted into the U.S. Armed Forces or U.S. Coast Guard? ☐ Yes ☒ No

**25.** Have you **EVER** been a J nonimmigrant exchange visitor who was subject to the 2-year foreign residence requirement and not yet complied with that requirement or obtained a waiver of such? ☐ Yes ☒ No

**26.** Have you **EVER** detained, retained, or withheld the custody of a child, having a lawful claim to United States citizenship, outside the United States from a United States citizen granted custody? ☐ Yes ☐ No

**27.** Do you plan to practice polygamy in the United States? ☐ Yes ☒ No

**28.** Have you **EVER** entered the United States as a stowaway? ☐ Yes ☒ No

**29.a.** Do you **NOW** have a communicable disease of public health significance? ☐ Yes ☒ No

**29.b.** Do you **NOW** have or have you **EVER** had a physical or mental disorder and behavior (or a history of behavior that is likely to recur) associated with the disorder which has posed or may pose a threat to the property, safety, or welfare of yourself or others? ☐ Yes ☒ No

**29.c.** Are you **NOW** or have you **EVER** been a drug abuser or drug addict? ☒ Yes ☐ No

If you need extra space to complete **Part 4.**, use the space provided in **Part 8. Additional Information**.

**1.a.** Family Name (Last Name)    King

**1.b.** Given Name (First Name)    SSean

**1.c.** Middle Name    KKosien

**2.** Date of Birth (mm/dd/yyyy)    03/30/2009

**3.** Country of Birth    United States

**4.** Relationship    Son

**5.** Current Location    Virginia, Unuted States

**6.a.** Family Name (Last Name)

**6.b.** Given Name (First Name)

**6.c.** Middle Name

**7.** Date of Birth (mm/dd/yyyy)

**8.** Country of Birth

**9.** Relationship

**10.** Current Location

**11.a.** Family Name (Last Name)

**11.b.** Given Name (First Name)

**11.c.** Middle Name

**12.** Date of Birth (mm/dd/yyyy)

**13.** Country of Birth

**14.** Relationship

**15.** Current Location

**16.a.** Family Name (Last Name)

**16.b.** Given Name (First Name)

**16.c.** Middle Name

**17.** Date of Birth (mm/dd/yyyy)

**18.** Country of Birth

**19.** Relationship

**20.** Current Location

**21.a.** Family Name (Last Name)

**21.b.** Given Name (First Name)

**21.c.** Middle Name

**22.** Date of Birth (mm/dd/yyyy)

**23.** Country of Birth

**24.** Relationship

**25.** Current Location

**26.** I am petitioning for one or more qualifying family members.    ☐ Yes  ☒ No

**NOTE:** If you answered "Yes" to **26.**, you must complete and include Supplement A for each family member for whom you are petitioning.

**NOTE:** Read the **Penalties** section of the Form I-918 Instructions before completing this part.

**NOTE:** Select the box for either **1.a.** or **1.b.** If applicable, select the box for **2.**

**1.a.** ☒ I can read and understand English, and I have read and understand every question and instruction on this petition and my answer to every question.

**1.b.** ☐ The interpreter named in **Part 6.** read to me every question and instruction on this petition and my answer to every question in

_____,

a language in which I am fluent, and I understood everything.

**2.** ☐ At my request, the preparer named in **Part 7.**,

_____

prepared this petition for me based only upon information I provided or authorized.

**3.** Petitioner's Daytime Telephone Number

_____

**4.** Petitioner's Mobile Telephone Number (if any)

_____

**5.** Petitioner's Email Address (if any)

_____

Copies of any documents I have submitted are exact photocopies of unaltered, original documents, and I understand that USCIS may require that I submit original documents to USCIS at a later date. Furthermore, I authorize the release of any information from any of my records that USCIS may need to determine my eligibility for the immigration benefit I seek.

I further authorize release of information contained in this petition, in supporting documents, and in my USCIS records to other entities and persons where necessary for the administration and enforcement of U.S. immigration laws.

I understand that USCIS may require me to appear for an appointment to take my biometrics (fingerprints, photograph, and/or signature) and, at that time, if I am required to provide biometrics, I will be required to sign an oath reaffirming that:

   1) I provided or authorized all of the information contained in, and submitted with, my petition;
   2) I reviewed and understood all of the information in, and submitted with, my petition; and
   3) All of this information was complete, true, and correct at the time of filing.

I certify, under penalty of perjury, that all of the information in my petition and any document submitted with it were provided or authorized by me, that I reviewed and understand all of the information contained in, and submitted with, my petition, and that all of this information is complete, true, and correct.

**6.a.** Petitioner's Signature

KIRK Kno

**6.b.** Date of Signature (mm/dd/yyyy)

04-04-2023

**NOTE TO ALL PETITIONERS:** If you do not completely fill out this petition or fail to submit required documents listed in the Instructions, USCIS may deny your petition.

**NOTE:** A parent or legal guardian may sign for a person who is less than 14 years of age. A legal guardian may sign for a mentally incompetent person.

Provide the following information about the interpreter.

**1.a.** Interpreter's Family Name (Last Name)

_____

**1.b.** Interpreter's Given Name (First Name)

_____

**2.** Interpreter's Business or Organization Name (if any)

_____

Provide the following information about the preparer.

**3.a.** Street Number and Name [                    ]

**3.b.** ☐ Apt. ☐ Ste. ☐ Flr. [          ]

**3.c.** City or Town [                    ]

**3.d.** State [    ] **3.e.** ZIP Code [          ]

**3.f.** Province [                    ]

**3.g.** Postal Code [                    ]

**3.h.** Country [                    ]

**4.** Interpreter's Daytime Telephone Number [                    ]

**5.** Interpreter's Mobile Telephone Number (if any) [                    ]

**6.** Interpreter's Email Address (if any) [                    ]

I certify, under penalty of perjury, that:

I am fluent in English and [                    ]

which is the same language specified in **Part 5., 1.b.**, and I have read to this petitioner in the identified language every question and instruction on this petition and his or her answer to every question. The petitioner informed me that he or she understands every instruction, question, and answer on the petition, including the **Petitioner's Declaration and Certification**, and has verified the accuracy of every answer.

**7.a.** Interpreter's Signature (sign in ink) [                    ]

**7.b.** Date of Signature (mm/dd/yyyy) [          ]

---

**1.a.** Preparer's Family Name (Last Name) [                    ]

**1.b.** Preparer's Given Name (First Name) [                    ]

**2.** Preparer's Business or Organization Name (if any) [                    ]

**3.a.** Street Number and Name [                    ]

**3.b.** ☐ Apt. ☐ Ste. ☐ Flr. [          ]

**3.c.** City or Town [                    ]

**3.d.** State [    ] **3.e.** ZIP Code [          ]

**3.f.** Province [                    ]

**3.g.** Postal Code [                    ]

**3.h.** Country [                    ]

**4.** Preparer's Daytime Telephone Number [                    ]

**5.** Preparer's Mobile Telephone Number (if any) [                    ]

**6.** Preparer's Email Address (if any) [                    ]

**7.a.** ☐ I am not an attorney or accredited representative but have prepared this petition on behalf of the petitioner and with the petitioner's consent.

**7.b.** ☐ I am an attorney or accredited representative and my representation of the petitioner in this case
☐ extends ☐ does not extend beyond the preparation of this petition.

**NOTE:** If you are an attorney or accredited representative whose representation extends beyond preparation of this petition, you may be obliged to submit a completed Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, with this petition.

By my signature, I certify, under penalty of perjury, that I prepared this petition at the request of the petitioner. The petitioner then reviewed this completed petition and informed me that he or she understands all of the information contained in, and submitted with, his or her petition, including the **Petitioner's Declaration and Certification**, and that all of this information is complete, true, and correct. I completed this petition based only on information that the petitioner provided to me or authorized me to obtain or use.

**8.a.** Preparer's Signature (sign in ink)

**8.b.** Date of Signature (mm/dd/yyyy)

If you need extra space to provide any additional information within this petition, use the space below. If you need more space than what is provided, you may make copies of this page to complete and file with this petition or attach a separate sheet of paper. Include your name and A-Number (if any) at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a.** Family Name (Last Name): King

**1.b.** Given Name (First Name): Kirk

**1.c.** Middle Name: Kevin

**2.** A-Number (if any) ▶ A- 0 3 9 7 4 6 5 1 7

**3.a.** Page Number: 4

**3.b.** Part Number: 3

**3.c.** Item Number: 1.f-1.g

**3.d.**
Attp. Murder 2nd Degree
Attp. Assault 1st Degree
CPW 2nd Degree @ Counts
July 2, 2012
Queens
NY
United States
Jail Time / Currently pending review
by the Queens County DA's
Conviction Integrity Unit (CIU)

**4.a.** Page Number: 6

**4.b.** Part Number: 3

**4.c.** Item Number: 29.c

**4.d.**
I was addicted to Drugs at the time
I was in a drug house and was
caught while using drugs and sentenced
Prison for being in the vecinity
of drugs and drug users. I completed
treatment while in prison .

**5.a.** Page Number: 2

**5.b.** Part Number: 2

**5.c.** Item Number: 1

**5.d.**
I was shot five (5) times by
Jamaican gang members because
I would not pay extortion money
due to my sexual orientation of
being a bisexual. (see attached
Supplemental B and letters from
Queens County District Attorney
and Office of Victims Services.
Applicant has also attached an
affidavit in support of his claim

**6.a.** Page Number:

**6.b.** Part Number:

**6.c.** Item Number:

**6.d.**

**7.a.** Page Number:

**7.b.** Part Number:

**7.c.** Item Number:

**7.d.**



## Supplement B, U Nonimmigrant Status Certification

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-918**
OMB No. 1615-0104
Expires 06/30/2023

| For USCIS Use Only | **Remarks** |
|---|---|

▶ **START HERE - Type or print in black or blue ink.**

### Part 1. Victim Information

**1.** Alien Registration Number (A-Number) (if any)

▶ A- | 0 | 3 | 9 | 7 | 4 | 6 | 5 | 5 | 1 |

**2.a.** Family Name (Last Name) `King`

**2.b.** Given Name (First Name) `Kirk`

**2.c.** Middle Name `Kevin`

**Other Names Used** (Include maiden names, nicknames, and aliases, if applicable.)

If you need extra space to provide additional names, use the space provided in **Part 7. Additional Information**.

**3.a.** Family Name (Last Name) `King`

**3.b.** Given Name (First Name) `Kirk`

**3.c.** Middle Name `none`

**4.** Date of Birth (mm/dd/yyyy) `10/04/1973`

**5.** Gender ☐ Male ☐ Female

### Part 2. Agency Information

**1.** Name of Certifying Agency
`QUEENS COUNTY DISTRICT ATTORNEY`

Name of Certifying Official

**2.a.** Family Name (Last Name) `LA ROSA`

**2.b.** Given Name (First Name) `RICHARD`

**2.c.** Middle Name `NONE`

**3.** Title and Division/Office of Certifying Official
`SENIOR ADA APPEALS SPECIAL LIT DIV`

Name of Head of Certifying Agency

**4.a.** Family Name (Last Name) `KATZ`

**4.b.** Given Name (First Name) `MELINDA`

**4.c.** Middle Name `R`

### Agency Address

**5.a.** Street Number and Name `125 01 QUEENS BOULEVARD`

**5.b.** ☐ Apt. ☐ Ste. ☒ Flr. `3RD`

**5.c.** City or Town `KEW GARDENS`

**5.d.** State `NY`   **5.f.** ZIP Code `11415`

**5.g.** Province `N/A`

**5.h.** Postal Code `N/A`

**5.i.** Country `USA`

### Other Agency Information

**6.** Agency Type
☐ Federal ☐ State ☒ Local

**7.** Case Status
☐ On-going ☒ Completed
☐ Other

**8.** Certifying Agency Category
☐ Judge ☐ Law Enforcement ☒ Prosecutor
☐ Other

**9.** Case Number
`2834/2012`

**10.** FBI Number or SID Number (if applicable)
`NONE`

If you need extra space to complete this section, use the space provided in **Part 7. Additional Information**.

1. The petitioner is a victim of criminal activity involving a violation of one of the following Federal, state, or local criminal offenses (or any similar activity). (Select **all applicable** boxes)

| | |
|---|---|
| ☐ Abduction | ☐ Manslaughter |
| ☐ Abusive Sexual Contact | ☒ Murder |
| ☒ Attempt to Commit Any of the Named Crimes | ☐ Obstruction of Justice |
| | ☐ Peonage |
| ☐ Being Held Hostage | ☐ Perjury |
| ☐ Blackmail | ☐ Prostitution |
| ☐ Conspiracy to Commit Any of the Named Crimes | ☐ Rape |
| | ☐ Sexual Assault |
| ☐ Domestic Violence | ☐ Sexual Exploitation |
| ☐ Extortion | ☐ Slave Trade |
| ☐ False Imprisonment | ☐ Solicitation to Commit Any of the Named Crimes |
| ☒ Felonious Assault | |
| ☐ Female Genital Mutilation | ☐ Stalking |
| | ☐ Torture |
| ☐ Fraud in Foreign Labor Contracting | ☐ Trafficking |
| ☐ Incest | ☐ Unlawful Criminal Restraint |
| ☐ Involuntary Servitude | ☐ Witness Tampering |
| ☐ Kidnapping | |

Provide the dates on which the criminal activity occurred.

2.a. Date (mm/dd/yyyy)  07/02/2012

2.b. Date (mm/dd/yyyy)  07/02/2012

2.c. Date (mm/dd/yyyy)  07/02/2012

2.d. Date (mm/dd/yyyy)  07/02/2012

3. List the statutory citations for the criminal activity being investigated or prosecuted, or that was investigated or prosecuted.

P.L.110/125.25-1,265.03(1)B),265.03(3)

120.05-1,120.25 & 110/265.03-3.

4.a. Did the criminal activity occur in the United States (including Indian country and military installations) or the territories or possessions of the United States?
☒ Yes  ☐ No

4.b. If you answered "Yes," where did the criminal activity occur?

QUEENS COUNTY, NY

5.a. Did the criminal activity violate a Federal extraterritorial jurisdiction statute?
☐ Yes  ☒ No

5.b. If you answered "Yes," provide the statutory citation providing the authority for extraterritorial jurisdiction.

6. Briefly describe the criminal activity being investigated and/or prosecuted and the involvement of the petitioner named in **Part 1**. Attach copies of all relevant reports and findings.

SEE ATTACHED.

7. Provide a description of any known or documented injury to the victim. Attach copies of all relevant reports and findings.

The victim received two gunshot wounds to his arm and one gunshot wound to his calf.

For the following questions, if the victim is under 16 years of age, incompetent or incapacitated, then a parent, guardian, or next friend may act on behalf of the victim.

1. Does the victim possess information concerning the criminal activity listed in **Part 3**.?

   [X] Yes    [ ] No

2. Has the victim been helpful, is the victim being helpful, or is the victim likely to be helpful in the investigation or prosecution of the criminal activity detailed above?

   [X] Yes    [ ] No

3. Since the initiation of cooperation, has the victim refused or failed to provide assistance reasonably requested in the investigation or prosecution of the criminal activity detailed above?

   [ ] Yes    [X] No

   If you answer "Yes" to **Item Numbers 1. - 3.**, provide an explanation in the space below. If you need extra space to complete this section, use the space provided in **Part 7. Additional Information**.

   THE VICTIM WAS FULLY COOPERATIVE ON

   THE CASE.

4. Other. Include any additional information you would like to provide.

   SEE ATTACHED.

## Part 5. Family Members Culpable in Criminal Activity

**1.** Are any of the victim's family members culpable or believed to be culpable in the criminal activity of which the petitioner is a victim?  ☐ Yes  ☒ No

If you answered "Yes," list the family members and their criminal involvement. (If you need extra space to complete this section, use the space provided in **Part 7. Additional Information**.)

**2.a.** Family Name
(Last Name)

**2.b.** Given Name
(First Name)

**2.c.** Middle Name

**2.d.** Relationship

**2.e.** Involvement

**3.a.** Family Name
(Last Name)

**3.b.** Given Name
(First Name)

**3.c.** Middle Name

**3.d.** Relationship

**3.e.** Involvement

**4.a.** Family Name
(Last Name)

**4.b.** Given Name
(First Name)

**4.c.** Middle Name

**4.d.** Relationship

**4.e.** Involvement

## Part 6. Certification

I am the head of the agency listed in **Part 2.** or I am the person in the agency who was specifically designated by the head of the agency to issue a U Nonimmigrant Status Certification on behalf of the agency. Based upon investigation of the facts, I certify, under penalty of perjury, that the individual identified in **Part 1.** is or was a victim of one or more of the crimes listed in **Part 3.** I certify that the above information is complete, true, and correct to the best of my knowledge, and that I have made and will make no promises regarding the above victim's ability to obtain a visa from U.S. Citizenship and Immigration Services (USCIS), based upon this certification. I further certify that if the victim unreasonably refuses to assist in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim, I will notify USCIS.

**1.** Signature of Certifying Official (sign in ink)

**2.** Date of Signature (mm/dd/yyyy)  3/29/2023

**3.** Daytime Telephone Number
7182865933

**4.** Fax Number
7182865877

If you need extra space to complete any item within this supplement, use the space below or attach a separate sheet of paper; type or print the agency's name, petitioner's name, and the Alien Registration Number (A-Number) (if any) at the top of each sheet; indicate the **Page Number, Part Number,** and **Item Number** to which your answer refers; and sign and date each sheet. If you need more space than what is provided, you may also make copies of this page to complete and file with this supplement.

1. Agency Name

   QUEENS COUNTY DISTRICT ATTORNEY

2.a. Family Name
     (Last Name)    King

2.b. Given Name
     (First Name)   Kirk

2.c. Middle Name   Kevin

3. A-Number (if any)

   ▶ A- 0 3 9 7 4 6 5 5 1

| 4.a. Page Number | 4.b. Part Number | 4.c. Item Number |
|---|---|---|
| 0 | 0 | 0 |

4.d. NONE.

| 5.a. Page Number | 5.b. Part Number | 5.c. Item Number |
|---|---|---|
| 0 | 0 | 0 |

5.d. NONE.

| 6.a. Page Number | 6.b. Part Number | 6.c. Item Number |
|---|---|---|
| 0 | 0 | 0 |

6.d. NONE.

# Application for Advance Permission to Enter as a Nonimmigrant

### Department of Homeland Security
U.S. Citizenship and Immigration Services

USCIS
**Form I-192**
OMB No. 1615-0017
Expires 10/31/2023

## For DHS Use Only

| Received | Returned Trans. Out | Fee Stamp |
|---|---|---|
| Trans. In | Completed | |

## Action by the Department of Homeland Security

**Ground of Inadmissibility**

☐ INA 212(a)(1)

☐ INA 212(a)(2)

☐ INA 212(a)(3)

☐ INA 212(a)(4)

☐ INA 212(a)(6)

☐ INA 212(a)(7)

☐ INA 212(a)(8)

☐ INA 212(a)(9)

☐ INA 212(a)(10)

☐ Other:

☐ Granted, subject to revocation at any time, upon the following terms and conditions

**Action Stamp**

**Benefits Category:**

☐ Nonimmigrant other than T or U nonimmigrant/Advance Permission under INA 212(d)(3)(A) and 8 CFR 212.4

☐ T Nonimmigrant/Advance Permission under INA 212(d)(3) and 8 CFR 212.16

☐ T Nonimmigrant/Waiver under INA 212(d)(13) and 8 CFR 212.16

☐ U Nonimmigrant/Waiver under INA 212(d)(14) and 8 CFR 212.17

☐ U Nonimmigrant/Advance Permission under INA 212(d)(3)(A) and 8 CFR 212.17

Date of Action (mm/dd/yyyy) _____ DD or OIC _____ Office _____

## To be completed by an attorney or accredited representative (if any).

☐ **Select this box if Form G-28 or Form G-28I is attached.**

| Volag Number (if any) | Attorney State Bar Number (if applicable) | Attorney or Accredited Representative USCIS Online Account Number (if any) |
|---|---|---|

▶ **START HERE - Type or print in black ink.**

## Part 1. Application Type

I am applying to the Secretary of Homeland Security for permission to enter the United States temporarily under the provisions of the Immigration and Nationality Act (INA) section 212(d)(3)(A)(ii), section 212(d)(13), or section 212(d)(14).

I am seeking this permission so that I may obtain (select **only one** box):

1. ☐ Admission as a nonimmigrant (other than as a T or U nonimmigrant).

2. ☒ Status as a victim of trafficking (T nonimmigrant status) or a victim of a crime (U nonimmigrant status).

## Part 2. Information About You

### Your Full Name

1.a. Family Name (Last Name) **King**

1.b. Given Name (First Name) **Kirk**

1.c. Middle Name **Kevin**

RECEIVED
VF-5134
APR 24 2023
VSC

## Part 2.  Information About You (continued)

### Other Names Used (if any)

Provide all other names you have ever used, including aliases, maiden name, and nicknames.  If you need extra space to complete this section, use the space provided in **Part 8. Additional Information.**

**2.a.** Family Name (Last Name)

**2.b.** Given Name (First Name)

**2.c.** Middle Name

---

**3.a.** Family Name (Last Name)

**3.b.** Given Name (First Name)

**3.c.** Middle Name

### Other Information

**4.** Alien Registration Number (A-Number) (if any)

▶ A- 0 3 9 7 4 6 5 1 7

**5.** USCIS Online Account Number (if any)

▶

**6.** Date of Birth (mm/dd/yyyy) 10/04/1973

**7.** Gender ☐ Male ☐ Female

Place of Birth

**8.a.** City or Town

Spanish Town

**8.b.** State or Province

St. Cathrine

**8.c.** Country

Jamaica

**9.** Country of Citizenship or Nationality

Jamaica

### Mailing Address

**10.a.** In Care Of Name (if any)

Buffalo Federal Detention Fac.

**10.b.** Street Number and Name 4250 Federal Drive

**10.c.** ☐ Apt. ☐ Ste. ☐ Flr.

**10.d.** City or Town Batavia

**10.e.** State NY **10.f.** ZIP Code 14020

**10.g.** Province

**10.h.** Postal Code

**10.i.** Country

United States

### Safe Mailing Address

If you are a T or U visa applicant, and do not want U.S. Citizenship and Immigration Services (USCIS) to send notices about this application to your home, you may provide a safe mailing address.

**11.a.** In Care Of Name (if any)

**11.b.** Organization Name (if applicable)

**11.c.** Street Number and Name

**11.d.** ☐ Apt. ☐ Ste. ☐ Flr.

**11.e.** City or Town

**11.f.** State **11.g.** ZIP Code

**11.h.** Province

**11.i.** Postal Code

**11.j.** Country

## Part 2. Information About You (continued)

### Address History

Provide physical addresses for everywhere you have lived during the last five years, whether inside or outside the United States. Provide your current address first. If you need extra space to complete this section, use the space provided in **Part 8. Additional Information**.

Physical Address 1 (current address)

**12.a.** Street Number and Name  428 Beach 65th Street

**12.b.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**12.c.** City or Town  Arverne

**12.d.** State  NY  **12.e.** ZIP Code  11692

**12.f.** Province

**12.g.** Postal Code

**12.h.** Country  United States

Dates of Residence

**13.a.** From (mm/dd/yyyy)  06/22/2005

**13.b.** To (mm/dd/yyyy)  PRESENT

Physical Address 2

**14.a.** Street Number and Name

**14.b.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**14.c.** City or Town

**14.d.** State  **14.e.** ZIP Code

**14.f.** Province

**14.g.** Postal Code

**14.h.** Country

Dates of Residence

**15.a.** From (mm/dd/yyyy)

**15.b.** To (mm/dd/yyyy)

Physical Address 3

**16.a.** Street Number and Name

**16.b.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**16.c.** City or Town

**16.d.** State  **16.e.** ZIP Code

**16.f.** Province

**16.g.** Postal Code

**16.h.** Country

Dates of Residence

**17.a.** From (mm/dd/yyyy)

**17.b.** To (mm/dd/yyyy)

Physical Address 4

**18.a.** Street Number and Name

**18.b.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**18.c.** City or Town

**18.d.** State  **18.e.** ZIP Code

**18.f.** Province

**18.g.** Postal Code

**18.h.** Country

Dates of Residence

**19.a.** From (mm/dd/yyyy)

**19.b.** To (mm/dd/yyyy)

## Part 2. Information About You (continued)

### *Travel Information*

**NOTE:** If you are applying for T or U nonimmigrant status and are in the United States, you may skip **Item Numbers 20. - 25.**

Location at Which you Plan to Enter the United States (desired Port-of-Entry)

**20.a.** City

**20.b.** State

**21.** Name of Port-of-Entry

**22.** How do you plan to travel to the United States? (For example, by plane, ship, car)

**23.** When do you plan to enter the United States? (mm/dd/yyyy)

**24.** Approximate Length of Stay in the United States

**25.** What is the purpose of your stay in the United States? Explain fully below.

_____

_____

_____

_____

_____

_____

### *Immigration and Criminal History*

**26.** Do you believe that you may be inadmissible to the United States? ☒ Yes ☐ No

If you answered "Yes" to **Item Number 26.**, explain the reasons why you believe, according to the best of your knowledge, that you may be inadmissible in **Part 8. Additional Information**. If you were told that you are inadmissible, provide the reason you were given.

**27.** Have you previously filed an application for advance permission to enter the United States as a nonimmigrant? ☐ Yes ☒ No

If you answered "Yes" to **Item Number 27.**, provide the details in **Item Numbers 28. - 29.e.** If you need extra space to complete this section, use the space provided in **Part 8. Additional Information**.

**28.** Date Application Filed (mm/dd/yyyy)

Location where you filed your application (for example, USCIS Office or Port-of-Entry).

**29.a.** USCIS Office or U.S. Port-of-Entry

**29.b.** City or Town

**29.c.** State or Province

**29.d.** Country

**29.e.** Receipt Number (if available)

▶

**30.** Have you **EVER** been in the United States for a period of six months or more? ☒ Yes ☐ No

If you answered "Yes" to **Item Number 30.**, provide the dates you were in the United States (from and to) and your immigration status at the time of entry into the United States in the space provided in **Part 8. Additional Information**.

**31.** Have you **EVER** filed an application or petition for immigration benefits with the U.S. Government, or has one ever been filed on your behalf? ☒ Yes ☐ No

If you answered "Yes" to **Item Number 31.**, provide the information requested in **Item Numbers 32.a. - 32.c.**

If you (or somebody else on your behalf) have filed multiple applications or petitions for immigration benefits with the U.S. Government, use the space provided in **Part 8. Additional Information** to provide the answers to **Item Numbers 32.a. - 32.c.** for each of your additional applications or petitions.

**32.a.** Type of Application or Petition Filed

Immigrant Visa

**32.b.** Location Where You (or the Other Person) Filed the Application or Petition (for example, USCIS office or Port-of-Entry);

Jamaican Embassy

**32.c.** Outcome of the Application or Petition (for example, approved, denied, or is pending).

Approved

## Part 2. Information About You (continued)

**33.** Have you **EVER** been denied or refused an immigration benefit by the U.S. Government, or had a benefit revoked or terminated (including but not limited to visas)?

☒ Yes  ☐ No

If you answered "Yes" to **Item Number 33.**, provide an explanation the information in the space provided in **Part 8. Additional Information**.

**34.** Have you **EVER**, in or outside the United States, been arrested, cited, charged, indicted, fined, convicted, or imprisoned for breaking or violating any law or ordinance, excluding minor traffic violations?

☒ Yes  ☐ No

If you answered "Yes" to **Item Number 34.**, describe the incidents in detail and include all offenses where impaired driving may have been an issue in the space provided in **Part 8. Additional Information**.

## Part 3. Biographic Information

**1.** Ethnicity (Select **only one** box)

☐ Hispanic or Latino
☒ Not Hispanic or Latino

**2.** Race (Select **all applicable** boxes)

☐ American Indian or Alaska Native
☐ Asian
☒ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☐ White

**3.** Height    Feet 5   Inches 11

**4.** Weight    Pounds 1 8 4

**5.** Eye Color (Select **only one** box)

☒ Black    ☐ Blue    ☐ Brown
☐ Gray    ☐ Green    ☐ Hazel
☐ Maroon    ☐ Pink    ☐ Unknown/Other

**6.** Hair Color (Select **only one** box)

☐ Bald (No hair)    ☒ Black    ☐ Blond
☐ Brown    ☐ Gray    ☐ Red
☐ Sandy    ☐ White    ☐ Unknown/Other

## Part 4. Other Information About You

### Employment History

Provide your employment history for the last five years, whether inside or outside the United States. Provide the most recent employment first. If you need extra space to complete this section, use the space provided in **Part 8. Additional Information**.

Employer 1 (current or most recent)

**1.** Name of Employer or Company

Downstate Correctional Facility

Address of Employer or Company

**2.a.** Street Number and Name   121 Red Schoolhouse RD.

**2.b.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**2.c.** City or Town   Fishkill

**2.d.** State NY   **2.e.** ZIP Code 12524

**2.f.** Province

**2.g.** Postal Code

**2.h.** Country   United States

**3.** Your Occupation   Law Library Clerk

Dates of Employment

**4.a.** From (mm/dd/yyyy)   12/15/2015

**4.b.** To (mm/dd/yyyy)   02/17/2021

**Part 4. Other Information About You** (continued)

Employer 2

**5.** Name of Employer or Company

Address of Employer or Company

**6.a.** Street Number and Name

**6.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**6.c.** City or Town

**6.d.** State [ ▾ ] **6.e.** ZIP Code

**6.f.** Province

**6.g.** Postal Code

**6.h.** Country

**7.** Your Occupation

Dates of Employment

**8.a.** From (mm/dd/yyyy)

**8.b.** To (mm/dd/yyyy)

*Information About Your Parents*

Information About Your Mother

Mother's Legal Name

**9.a.** Family Name (Last Name)   Garriques

**9.b.** Given Name (First Name)   Monica

**9.c.** Middle Name

Mother's Name at Birth (if different than above)

**10.a.** Family Name (Last Name)

**10.b.** Given Name (First Name)

**10.c.** Middle Name

**11.** Date of Birth (mm/dd/yyyy)   04/08/1949

**12.** City or Town of Birth   Spanish Town

**13.** Country of Birth   St. Cathrine

**14.** Current City or Town of Residence (if living)   Arverne, NY

**15.** Current Country of Residence (if living)   United States

Information About Your Father

Father's Legal Name

**16.a.** Family Name (Last Name)   King

**16.b.** Given Name (First Name)   Franklyn

**16.c.** Middle Name

Father's Name at Birth (if different than above)

**17.a.** Family Name (Last Name)

**17.b.** Given Name (First Name)

**17.c.** Middle Name

**18.** Date of Birth (mm/dd/yyyy)   U/K

**19.** City or Town of Birth   Spanish Town

**20.** Country of Birth   Jamaica

**21.** Current City or Town of Residence (if living)   Deceased

**22.** Current Country of Residence (if living)   Deceased

*Information About Your Marital History*

**23.** What is your current marital status?
☒ Single, Never Married  ☐ Married  ☐ Divorced
☐ Widowed  ☐ Legally Separated
☐ Marriage Annulled  ☐ Other

**24.** How many times have you been married (including annulled marriages and marriages to the same person)?   ▸

## Part 4. Other Information About You (continued)

### Information About Your Current Marriage (including if you are legally separated)

If you are currently married, provide the following information about your current spouse.

Current Spouse's Legal Name

**25.a.** Family Name (Last Name)

**25.b.** Given Name (First Name)

**25.c.** Middle Name

**26.** A-Number (if any)

▶ A-

**27.** Current Spouse's Date of Birth (mm/dd/yyyy)

**28.** Date of Marriage to Current Spouse (mm/dd/yyyy)

Current Spouse's Place of Birth

**29.a.** City or Town

**29.b.** State or Province

**29.c.** Country

Place of Marriage to Current Spouse

**30.a.** City or Town

**30.b.** State or Province

**30.c.** Country

### Information About Prior Marriages (if any)

If you have been married before, whether in the United States or in any other country, provide the information requested in **Item Numbers 31.a. - 36.c.** about your prior marriage. If you have had more than one previous marriage, use the space provided in **Part 8. Additional Information** to provide the answers to **Item Numbers 31.a. - 36.c.** for each additional marriage.

Prior Spouse's Legal Name (provide family name before marriage)

**31.a.** Family Name (Last Name)

**31.b.** Given Name (First Name)

**31.c.** Middle Name

**32.** Prior Spouse's Date of Birth (mm/dd/yyyy)

**33.** Date of Marriage to Prior Spouse (mm/dd/yyyy)

Place of Marriage to Prior Spouse

**34.a.** City or Town

**34.b.** State or Province

**34.c.** Country

**35.** Date Marriage with Prior Spouse Legally Ended (mm/dd/yyyy)

Place Where Marriage with Prior Spouse Legally Ended

**36.a.** City or Town

**36.b.** State or Province

**36.c.** Country

## Part 5. Applicant's Statement, Contact Information, Declaration, Certification, and Signature

**NOTE:** Read the **Penalties** section of the Form I-192 Instructions before completing this section.

### Applicant's Statement

**NOTE:** Select the box for either **Item Number 1.a.** or **1.b.** If applicable, select the box for **Item Number 2.**

**1.a.** ☒ I can read and understand English, and I have read and understand every question and instruction on this application and my answer to every question.

**1.b.** ☐ The interpreter named in **Part 6.** read to me every question and instruction on this application and my answer to every question in

[_____],

a language in which I am fluent, and I understood everything.

**2.** ☐ At my request, the preparer named in **Part 7.**,

[_____],

prepared this application for me based only upon information I provided or authorized.

### Applicant's Contact Information

**3.** Applicant's Daytime Telephone Number

[_____]

**4.** Applicant's Mobile Telephone Number (if any)

[_____]

**5.** Applicant's Email Address (if any)

[_____]

### Applicant's Declaration and Certification

Copies of any documents I have submitted are exact photocopies of unaltered, original documents, and I understand that the U.S. Department of Homeland Security (DHS) may require that I submit original documents to DHS at a later date. Furthermore, I authorize the release of any information from any and all of my records that DHS may need to determine my eligibility for the immigration benefit that I seek.

I furthermore authorize release of information contained in this application, in supporting documents, and in my DHS records, to other entities and persons where necessary for the administration and enforcement of U.S. immigration law.

I understand that DHS may require me to appear for an appointment to take my biometrics (fingerprints, photograph, and/or signature) and, at that time, if I am required to provide biometrics, I will be required to sign an oath reaffirming that:

    **1)** I reviewed and understood all of the information contained in, and submitted with, my application; and

    **2)** All of this information was complete, true, and correct at the time of filing.

I certify, under penalty of perjury, that all of the information in my application and any document submitted with it were provided or authorized by me, that I reviewed and understand all of the information contained in, and submitted with, my application and that all of this information is complete, true, and correct.

### Applicant's Signature

**6.a.** Applicant's Signature

[_signature_]

**6.b.** Date of Signature (mm/dd/yyyy)  [05/09/2023]

**NOTE TO ALL APPLICANTS:** If you do not completely fill out this application or fail to submit required documents listed in the Instructions, USCIS may deny your application.

## Part 6. Interpreter's Contact Information, Certification, and Signature

Provide the following information about the interpreter.

### Interpreter's Full Name

**1.a.** Interpreter's Family Name (Last Name)

[_____]

**1.b.** Interpreter's Given Name (First Name)

[_____]

**2.** Interpreter's Business or Organization Name (if any)

[_____]

## Part 6. Interpreter's Contact Information, Certification, and Signature (continued)

### *Interpreter's Mailing Address*

**3.a.** Street Number and Name

**3.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**3.c.** City or Town

**3.d.** State ☐  **3.e.** ZIP Code

**3.f.** Province

**3.g.** Postal Code

**3.h.** Country

### *Interpreter's Contact Information*

**4.** Interpreter's Daytime Telephone Number

**5.** Interpreter's Mobile Telephone Number (if any)

**6.** Interpreter's Email Address (if any)

### *Interpreter's Certification*

I certify, under penalty of perjury, that:

I am fluent in English and

which is the same language specified in **Part 5., Item Number 1.b.**, and I have read to this applicant in the identified language every question and instruction on this application and his or her answer to every question. The applicant informed me that he or she understands every instruction, question, and answer on the application, including the **Applicant's Declaration and Certification**, and has verified the accuracy of every answer.

### *Interpreter's Signature*

**7.a.** Interpreter's Signature

**7.b.** Date of Signature (mm/dd/yyyy)

## Part 7. Contact Information, Declaration, and Signature of the Person Preparing this Application, if Other Than the Applicant

Provide the following information about the preparer.

### *Preparer's Full Name*

**1.a.** Preparer's Family Name (Last Name)

**1.b.** Preparer's Given Name (First Name)

**2.** Preparer's Business or Organization Name (if any)

### *Preparer's Mailing Address*

**3.a.** Street Number and Name

**3.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**3.c.** City or Town

**3.d.** State ☐  **3.e.** ZIP Code

**3.f.** Province

**3.g.** Postal Code

**3.h.** Country

### *Preparer's Contact Information*

**4.** Preparer's Daytime Telephone Number

**5.** Preparer's Mobile Telephone Number (if any)

**6.** Preparer's Email Address (if any)

## Part 7. Contact Information, Declaration, and Signature of the Person Preparing this Application, if Other Than the Applicant (continued)

### Preparer's Statement

7.a. ☐ I am not an attorney or accredited representative but have prepared this application on behalf of the applicant and with the applicant's consent.

7.b. ☐ I am an attorney or accredited representative and my representation of the applicant in this case

☐ extends ☐ does not extend beyond the preparation of this application.

**NOTE:** If you are an attorney or accredited representative, you may need to submit a completed Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, or Form G-28I, Notice of Entry of Appearance as Attorney In Matters Outside the Geographical Confines of the United States, with this application.

### Preparer's Certification

By my signature, I certify, under penalty of perjury, that I prepared this application at the request of the applicant. The applicant then reviewed this completed application and informed me that he or she understands all of the information contained in, and submitted with, his or her application, including the **Applicant's Declaration and Certification**, and that all of this information is complete, true, and correct. I completed this application based only on information that the applicant provided to me or authorized me to obtain or use.

### Preparer's Signature

8.a. Preparer's Signature

8.b. Date of Signature (mm/dd/yyyy)

## Part 8. Additional Information

If you need extra space to provide any additional information within this application, use the space below. If you need more space than what is provided, you may make copies of this page to complete and file with this application or attach a separate sheet of paper. Type or print your name and A-Number (if any) at the top of each sheet; indicate the **Page Number**, **Part Number**, and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a.** Family Name (Last Name) `Kirk`

**1.b.** Given Name (First Name) `King`

**1.c.** Middle Name `Kevin`

**2.** A-Number (if any) ▶ A- `0 3 9 7 4 6 5 1 7`

**3.a.** Page Number `4`   **3.b.** Part Number `2`   **3.c.** Item Number `26`

**3.d.** I am inadmissible because I was convicted of certain crimes under INA Section 237 (a) (2).

**4.a.** Page Number `4`   **4.b.** Part Number `2`   **4.c.** Item Number `30`

**4.d.** I entered the United States as a LPR on 08/22/1985. I have remained in the United States since then.

**5.a.** Page Number `5`   **5.b.** Part Number `2`   **5.c.** Item Number `33`

**5.d.** I entered the U.S as a LPR on August 22, 1985. On November 15, 2017, an Immigration Judge ordered me removed to Jamaica. Appeal has been submitted to BIA.

**6.a.** Page Number `5`   **6.b.** Part Number `2`   **6.c.** Item Number `34`

**6.d.** Yes, criminal history information is attached.

**7.a.** Page Number     **7.b.** Part Number     **7.c.** Item Number

**7.d.**

U.S. Department of Justice
Executive Office for Immigration Review

OMB# 1125-0003

**Fee Waiver Request**

## NAME AND ALIEN ("A") NUMBER

Answer all items in English.   (Type or Print)

*If more than one respondent is included in your application, motion, or appeal, only the lead respondent need file this form.*

King, Kirk, Kevin
Name (Last, First, Middle)

039-246-577
Alien ("A") Number

## AFFIDAVIT IN SUPPORT OF FEE WAIVER REQUEST.

(This affidavit is to be signed by the respondent, not the respondent's attorney or representative of record.)

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I am the person above and that I am unable to pay the filing fee. I believe that my application/motion/appeal is valid and not frivolous, and I declare that the following information is true and correct to the best of my knowledge.

Kirk King
*(Print name of respondent filing the form)*

Kirk King
*(Signature of respondent filing the form)*

05/09/2023
*(Date signed)*

The Immigration Judge may grant your fee waiver request for an EOIR application or motion filed with the Immigration Court if you show that you are unable to pay the filing fee. The Board of Immigration Appeals (BIA) may grant your fee waiver request for an appeal or motion filed with the BIA if you show that you are unable to pay the filing fee. If this fee waiver request does not establish your inability to pay the required fee, your application, motion, application, or appeal will not be deemed properly filed. 8 C.F.R. §§ 1003.8 and 1003.24(d). You must answer all questions on the form even if the answer is "$0.00".

**1. Estimate your average monthly amount of money received from each of the following sources. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the average monthly rate. Use gross amounts, that is, amounts before any deductions for taxes and other state/federal payroll withholdings.**

| Income Sources | Monthly Average |
|---|---|
| Employment, including self-employment | $ 0.00  0 |
| Income from real property (such as rental income) | $ 0.00  0 |
| Interest from checking and/or saving account(s) | $ 0.00  0 |
| All other income, including but not limited to these and other sources: alimony, child support, interest, dividends, social security, annuities, unemployment, public assistance, etc. | $ 0.00  0 |
| **1.A.: TOTAL AVERAGE MONTHLY INCOME** | $ 0.00  0 |

Form EOIR-26A
Rev. Aug. 2022

**2. Estimate your average monthly expenses. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.**

| Expense Sources | Monthly Average |
|---|---|
| Rent or home-mortgage payment(s) (include lot rented for mobile home) | $ 0.00 |
| Utilities (electricity, heating fuel, water, sewer, telephone, internet, etc.) | $ 0.00 |
| Installment payments or outstanding debts (credit card(s), store credit card(s), vehicle payment, personal loan(s), etc., but not including rent or home-mortgage payments) | $ 0.00 |
| Living expenses (food, clothing, transportation, child care, tuition, etc.) | $ 0.00 |
| All other expenses, including but not limited to these and other sources: alimony, child support, insurance, medical, health, any state or federal taxes, attorney fees, etc. | $ 0.00 |
| **2.B: TOTAL AVERAGE MONTHLY EXPENSES** | $ 0.00 |

**3. Calculate ability to pay filing fee (total income minus total expenses):**

| | |
|---|---|
| **TOTAL AVERAGE MONTHLY INCOME (1.A):** | $ 0.00 |
| **TOTAL AVERAGE MONTHLY EXPENSES (2.B):** | - $ 0.00 |
| **TOTAL:** | $ 0.00 |

**4.** Provide any other information that will help explain why you cannot pay the filing fees for your appeal, motion, or application. Include your name and "A" number on all pages of any additional document(s) or additional pages.

---

**Attorney or Representative** (if any):
(If an attorney or representative is submitting this form, the attorney or representative must complete, sign, and date below.)

I hereby attest that I have reviewed the details provided herein and I am satisfied that this fee waiver request is made in good faith.

| Signature of Attorney or Representative | Print Name | EOIR ID Number | Date |
|---|---|---|---|

**Paperwork Reduction Act Notice:** Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the least possible burden on you to provide us with information. The estimated average time to complete this form is one (1) hour. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

**Privacy Act Notice:** The information on this form is requested to determine if you have established eligibility for the fee waiver you are seeking. The legal right to ask for this information is located at 8 C.F.R. § 1003.8(a)(3). EOIR may provide this information to other Government agencies. Failure to provide this information may result in denial of your request.

Form EOIR-26A

# EXHIBIT - 1

KIRK KING                                                            DETAINED
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York  14020


            UNITED STATES DEPARTMENT OF HOMELAND
            SECURITY: UNITED STATES CITIZENSHIP AND
            IMMIGRATION SERVICES


_____

In the Matter of:

Kirk King                                    Affidavit in Support of Fee Waver Application
                                             File No: A# 039-746-517

Applicant / Pro Se

In removal proceedings

_____


                            AFFIDAVIT

Kirk King, being duly sworn, deposes and says:

1. I am over the age of 18 years old and currently reside in immigration custody at Buffalo Federal
Detention Facility (BFDF); 4250 federal Drive, Batavia , New York 14020. I am competent to write the
foregoing with intent and understanding of purpose and believe  the following statement, testimony,
allegation and contents herein to be true, correct and complete, to the best of my knowledge and
belief.

2. I am the Appellant in the above - entitled proceeding. I make this affidavit in support of a U Visa
Application Fee Waver.

3. Applicant is not and has never been represented by Counsel in his Deportation proceedings.

4. Applicant is filing this U Visa Application  because he is in fear of being returned to his home Country
of Jamaica due to violence committed against him in the United States.

                            1 of 2

A-039-746-517

5. Applicant here states that he is indigent and has been so since his incarceration on July 2, 2012 for a crime that he did not commit.

6. Applicant has contined to fight his wrongful conviction and has been granted Poor Person Status by the New York State Court System. (see Exhibit A Articel 78 Proceedings process without fee to Applicant).

7. Applicant's only income for the past 10 year plus has been what he has earned for working as a prisoner in the New York State Corrections System. (see Exhibit B Affidavit in Support of Appication Pursuant to CPLR 1101(f) (Poor Person Status for an Inmate).

8. Applicant  here states that upon his release from New York State Prison on 2/17/2023 Applicant has been in the custody of Immigration and Customs Enforcement.

I declare under the penalty of perjury that the foregoing is true and correct.


Sworn to before me on this

9 day of May 2023

Notary Public

KAYCEE LEIGH EVANS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01EV6413806
Qualified in Genesee County
Commission Expires February 01, 2025

Respectfully Submitted,

Kirk King

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS:  SPECIAL TERM

FILED

MAR 11 2019

COUNTY CLERK
QUEENS COUNTY

In The Matter
OF
The Application of Kirk King,
Petitioner,

-against-

**NO FEE**

Poor Person Application
Pending Determination

John M. Castellano, F.O.I.L. Appeals Officer,
Respondent.

For a Judgement Under
Article 78
of the Civil Practice
Law and Rules

Order to Show Cause,

Index No. 1463/19

Part 32   At individual Assignment
Part __ of the Supreme Court of me
State of New York, held in and for
The County of Queens at the Supreme
Courthouse, 88-11 Sutphin Blvd
Jamaica, New York on the 30th day
of April , 2019

Upon the petition of Kirk King, verified on the 26 day of Feb ,
2019, the affidavit attached to his petition, and all the proceeding held
in regards to this matter, let the Respondent, John M. Castellano, show
cause at a Special Term of this Court, to he held in the County of Queens,
on the 30th day of May, 2019, or as soon thereafter as petitioner
can be heard, why a judgement should not be made and entered in this matter
Pursuant to Article 78 of the Civil Practice Law and Rules.

(1) Declaring:  On June 28, 2018 petitioner submitted a FOIL request for
X-Rays of the victim in his case which shows a bullet lodged in his leg.
On September  10, 2018 Records Access Officer Anastasia Spanakos notified
petitioner that his request was being processed. On October 18, 2018
petitioner sent Anastasia Spanakos additional information to aid in the
search for request documents. On December 4, 2018 Records Access Officer
Anastasia Spanakos denied petitioners FOIL request by stating "the victim's
X-Rays are not disclosable as it is part of the victim's medical records."
On December 17, 2018 petitioner appealed the FIOL request denial. On January
11, 2019 the appeal was denied by FIOL Appeals Officer John M. Castellano,
in which he concurred with Records Access Officer Anasttasia Spanakos that
Medical records are exempth from disclosure. Furthermore __
District Attorney's off__

(2) Directing:Pursuant to Public Officer's Law §89(2)(c)i "Disclosure s not be construed to constitute an unwarranted invasion of personal priva pursuant to paragraphs of Public Officer's Law §87(2)(a)(b) and §89(2), identifying details are redacted. Furthermore, Espiritu v. Vance, 39 Mis 1214(A)(2013), states that "Claim that documents do not exist in the cas neither provides clarity nor satisfies the deligent search requirment". also Sanders v. Bartton, 278 A.D.2d 10 (2000), it is stated that "Where spacific reference was made to report Respondents were directed to disclo this report". Pursuant to Mckinney's Rules of Evidence, Rule 11(E), state that "The following shall be admissible and subject to redaction; Police Reports, Medical Records, including but not limited to Hospital Records, Daignostic Test Resluts, including but not limited to X-Rays. MRI's, CT sc and EMG's". Furthermore, Section (G) states that "The Judge may where requ issue "SO ORDERED" Subpoenas to secure the attendance of witnesses of prod of documents". Also included (Exhibit B Trial Minutes), it shows where vic testifies abour the X-Rays. Last but not least (Exhibit C Victim's Medical Records), it shows that the X-Rays were actually taken of victim's wounds, also shows that Petitioner was given parts of the Victim's Medical Records they were entered into evidence against Petitioner after the District Attor asked the Court to have Records moved into Evidence after redactions (See Exhibit B). Petitioner has informed FOIL Officers of the Queens County District Attorney's that this information is needed to help prove Petitione: Actual Innocence Claim. Despite this the Queens County District Attorney's reason of not granting Petitioner's FOIL request, in which they have stated "Medical records are not to be disclosed pursuant to Public Officer's Law §89(2)".

Ordered taht pending the hearing of this Special Term Proceedings and Pursua; to Section 7805 of the C.P.L.R. Article 78

by regular mail effectuated by the CALA

Ordered that service of a copy of this order, together with paper on which it is granted, on Respondent John M. Castellano, on or before _at the Queens County D.A.'s Ofc._ 9:30 A.M./P.M. on the ~~30~~ 26th day of April, 2019, Shall be Sufficient.

Date Entered:

Justice of

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS   SPECIAL TERM

In The Matter
of
The Application of Kirk King,
Petitioner.

    -against-

John M. Castellano,
Respondent.

For a judgement under
Article 78
of the Civil Practice
Law and Rules

Affidavit in Support
of
Order to Show Cause
Index No. _14463/19_

STATE OF NEW YORK     )
                      )SS:
COUNTY OF QUEENS     )

I, Kirk King, upon being duly sworn, deposes and says that:

1. I am the Petitioner in the above entitled action.
2. I make this affidavit in support of my petition to Artivle 78 of the Civil Practice Law and Rules that this Court order FOIL Appeals Officer John M. Castellano to Show Cause as to why petitioner's FOIL request Appeal cannot be granted, despite the victim's medical records being admissible as evidence after redactions if neccessary pursuant to Public Officer's Law §89(2)(c)i and Mckenneys Rules of Evidence(Rule 11)(E)(G).
3. On June 28, 2018 petitioner submitted a FOIL request for X-Rays of the victim in his case which shows a bullet lodged in the victim's leg. On September 10, 2018 Records Access Officer Anastasia Spanakos notified petitioner that his request was being processed. On October 18, 2018 petitioner sent Records Access Officer Anastasia Spanakos additional information to aid in the search for requested documents. On December 4, 2018 Records Access Officer Anastasia Spanakos denied petitioner's FOIL request by stating that "The victim's X-Rays are not disclosable as they are part of the victim's medical records". On December 17, 2018 petitioner appealed the FOIL request denial expressing that records were needed to process his actual innoce...

with Records Access Officer Anastasia Spanakos in that Medical Records are exempt from disclosure. Futhermore, the Queens County District Attorney's Office claims that the X-Rays are not within their records (See attached Exhibit A).

4. Pursuant to Public Officer's Law §89(2)(c)i "Disclosure shall not be construed to constitute an unwarranted invasion of personal privacy pursuant to paragraphs of Public Officer's Law §87(2)(a)(b) and §89(2), when identifying details are redacted. Furthermore, Espiritu v.Vance,39 Misc.3d 1214(A), states that "Claim that documents do not exist in the case file" neither provides clarity nor satisfies the deligent search requirment. See also, Sanders v. Bartton, 278 A.D.2d 10 (2000), where it is stated that "Where spacific reference was made to report Respondents were directed to disclose this report". Pursuant to Mckinney's Rules of Evidence: Rule 11(E),states that "The following shall be admissible and subject to redacti Police Reports, Medical Records, including but not limited to Hospital Records, Diagnostic Test results, including but not limited to X-Rays, MRI' CT Scans and EMG's". Furthermore, Mckinney's Rules of Evidence: Rule 11(G) states that "The Judge may where required issue "SO ORDERED" Subpoenas to secure the attendance of witnesses or the production of documents". Also included (Exhibit B Trial Minutes), it shows where victim testifies about X-Rays. Last but not least (Exhibit C Victim's Medical Records), it shows that the X-Rays were actually taken of victim's wounds, it also shows petitioner was given parts of the Victim's Medical Record as they were entered into evidence against petitioner after the District Attorney asked the Court to have Records moved into evidence after redactions (See Exhibit B). Petitioner has informed FOIL Officers of the Queens County District Attorney's that this information is needed to help prove petitioners Actual Innocence Claim. Despite this the Queens County District Attorney's reason for not granting petitioner's FOIL request, in which they have stated "Medical Records are not to be disclosed pursuant to Public Officer's Law §89(2)".

5. Petitioner designates Queens County as the place of Trial, the basis of venue is Queens County Courthouse 125-01 Queens Boulevard, Kew Gardens New York 11415.

6. No previous application for relief herein prayed for has been made.

7. An Order to Show Cause is sought rather that proceeding by Notice of Petition because Petitioner is incarcerated and can not personally deliver a Notice of Petition.

the Respondent's determination of January 11th, 2019 should be void and Why such and further relief as may be just and proper should not be granted.

Sworn to before me this
23 day of JANUARY 2019

J. Carmichael
Notary Public

JUANITA CARMICHAEL
Notary Public, State of New York
No. 01CA6122155
Qualified in Dutchess County
Commission Expires Feb. 07, 20 21

Petitioner

State of New York
Queens County
Supreme Court

------------------------------------------------x

Kirk King

                     Petitioner

    v.

John M. Castelano

                     Respondent

------------------------------------------------x

Affidavit in Support of Application
Pursuant to CPLR 1101 (f)
(Poor Person Status for an inmate)

Index/File # 14623/17 *

DIN # 13-A-4783

NYSID # 13-A-4783 *

State of New York    )
                    ) ss:
County of Queens    )

Kirk King , being duly sworn, says.

1)  I am the Plaintiff/Petitioner in the above-entitled action/proceeding; I am an inmate under sentence for conviction of a crime , incarcerated in (include name and mailing address) a Downstate correctional facility, facility , 121 Red Schoolhouse Rd., Fishkill, NY 12524 federal/state/local correctional facility, and submit this affidavit in support of my application for poor persons status in such action/proceeding.

2)  During the past six months:

    &#9746;  I was not incarcerated at any other federal/state/local correctional facility.

    &#9633;  I was incarcerated in the following federal/state/local correctional facilities (include name(s) and mailing address(es)) in addition to the facility in _____ which I am now incarcerated.

3)  I currently receive income from the following sources, exclusive of correctional facility wages:

    NONE

_____
_____

* will be assigned by the Court/County Clerk

4) I own the following property (list all real and personal property, including bank accounts and securities in which you have a beneficial interest, other than miscellaneous personal property of nominal value):

☐ NONE

☒ List Property.

Value: _____
_____
_____

5) I am responsible for payment of the following debts:

Debt: _____  Amount: _____

none  none

_____  _____

6) I have no savings, property, assets or income other than as set forth herein.

7) I am unable to pay the costs, fees and expenses necessary to prosecute the above-captioned action/proceeding.

8) There is no other person who has a beneficial interest in the recovery I am seeking in the above captioned action/proceeding who is able to pay the fees, costs and expenses necessary to its prosecution.

9) The nature of the above-captioned action/proceeding and the facts therein are described in my pleadings and in other papers filed with the court.

10) I have made no prior request for this relief in the above-captioned action/proceeding.

Sworn to before me this 25 day of _____, 20__

_____ (signature)

_____
Notary Public

JUANITA CARMICHAEL
Notary Public, State of New York
No. 01CA5126149
Commission Expires Feb. 26, ____

# EXHIBIT - A

KIRK KING A-039-746-517

Buffalo Federal Detention Facility

4250 Federal Drive

Batavia, New York  14020


**Personal Statement**


My name is Kirk King. I was born on October 4th, 1973. I was born in the country of Jamaica. I came to the United States of America on August 22nd, 1985 at the age of 10 years old. I was brought here by my mother Monica King. My mother brought myself and my siblings to America because she was fleeing domestic abuse by my father. She hoped to find a better life for herself and her children in America.

I was the victim of attempted murder. This happened on July 2nd, 2012. This happened in Farrockaway Queens, New York. I was the victim of extortion due to my sexual orientation of being bi-sexual. I did not pay the extortion money. I was at a store and so were the individuals who were attempting to extort me.  One was Marvin Mitchell, Andre Black, and another individual name "Blacka" (I do not know his real name) all three of them are cousin. They asked me for money and threatened me. When I did not give them any money they tired to take my new phone and I resisted. I had a starter pistol with me and I fired it into the air when I realized that they were going to shoot me. I tried to run away after I fired the starter pistol in the air.

Due to me resisting I shot by Marvin Mitchell and "Blacka". I was struck a total of five (5) times by bullets. There were many witnesses but they did not want to get involved due to these individuals being members of a gang. Many people fear them due to there violent conduct. The crime was captured on video, but it only showed me being shot by Marvin Mitchell. The individual known as "Blacka" is out of the video coverage so he was not charged. I was shot once in the Stomach, twice in the right Arm, and twice in the left leg.

I was interviewed by the Queens County District Attorney's Office and was able to identify Marvin Mitchell as one of the persons who shot me. He was arrested for shooting me and was prosecuted. He pled guilty and sentenced to a term in prison. I was not able to give a name for "Blacka" and he was not seen on the video shooting at me. I was sent threats not to mention him or my family

1.

039-7460-517

would have problems. I was fearful for my mother and my two year old son so I only told my lawyer about his involvement in the crime. I told my lawyer because I was being prosecuted for shooting Andre Black. Andre Black was shot by his own cousin "Blacka" when he was attempting to kill me.

My lawyer refused to investigate this because I did not know 'Blacka's" name and because he was not on the video shooting at me. To keep "Blacka" out of the case both Marvin Mitchell and Andre Black testified that I was the one who shot Andre Black. I possessed a starter Pistol which is a cap gun and could not fire real bullets so there is no way I could have shot Andre Black. My case is currently under review by the Queens County District Attorney's Office Conviction Integrity Unit (CIU). It is being reviewed by ADA Bryce Benjit, due to the fact that at the time of my trial ballistic evidence was withheld from the defense that will show that I did not shoot Andre Black.

This crime hurt me severely physically and mentally. I am currently covered in scar tissue that hurt when my skin is dry. At times it feels as if they are about to crack. I was only in the hospital for one day because luckily the bullet went clean through my me. I did not suffered any internal damage from the bullet that struck me in my stomach. Being shot five (5) times has taken a toll on my body. I am in constant pain and almost lost the use on my right hand. It took electro shock therapy to regain the ability to close my right hand. The hand is still weak and I am not able to life a lot of weight because my hand will lock up and whatever I am holding will fall.

Due to this incident I was sent to prison for over eleven (11) years for a crime that I did not commit. I was accused of shooting Andre Black and I went to trial because I did not commit the crime. The only witnesses at my trial was Andre Black and Marvin Mitchell. They both lied and said I shot Andre Black to protect "Blacka". So I was shot five(5) times by these gangsters and sent to prison for eleven (11) years for a crime I did not commit all because of my sexual orientation. Mentally it has been a nightmare. I had to become Muslim in prison to seek protection from other gang members. I was constantly harassed and threatened while I was on Rikers Island to keep "Blacka" out of the case. I was told that my family would be harmed if I did not. I was told that I would be killed if I ever returned to Jamaica. All these threats and uncertainty weighs heavily on the mind when your body has also been wounded.

My crime should be forgiven because I did not commit it. I did not shoot Andre Black and this will be proven eventually. My attorney that is representing me in my criminal case is Justin C. Bonus,

2.

039-746-517

ESQ, Queens, New York. He is currently in contact with ADA Bryce Benjit of the Queens County District Attorney's Office. My case will be reviewed by ADA Benjit. It will show that x-rays of the bullet lodged in Andre Black was not turned over to the defense at my trial. The x-rays will show an intact bullet. The caliber of this bullet can be identified using the x-rays by a ballistic expert. My nephew was pressured into turning over his gun and told the police that it was mine. They claimed that I used this gun to shoot Andre Black. The ballistic expert will be able to refute this claim as put forth at my trial.

I never possessed a real gun and could not have shot Andre Black. The expert will be able to identify the caliber of the bullet that struck Andre Black. This will show that it did not come for the same caliber gun recovered from my nephew. I will prove that there was a third party involved in the shooting and that Andre Black and I was shot by the same gun. This gun was being fired by "Blacka".

I am very sorry that this incident occurred. I should have gone to the police as soon as these gang members started to harass me. I should have told the police that they were threatening me and telling me that I had to pay to live because they viewed me as a homosexual. I tired to ignore what they did and how they treated me because I thought they would stop once they saw that I would not pay them. I tried to avoid the issue because I did not want to embarrass my mother and the mother of my son. I now realize that the best thing would have been to go to the police as soon as they began to threaten me.

I continue to fight my case to prove my actual and factual innocence. I have completed Aggression Replacement Training (ART) while I was incarcerated. I worked with the Osborne Association as a HIV Prison Outreach Advocate. I ensured that prisoners had access to HIV testing and counseling. I used my degrees in Social Work to connect with individuals in distress and was able to help them navigate and connect with beneficial programs in the prison system a Program Assistant. I earned a Legal Research Certification, which I used to help other prisoners navigate and best utilize the Law Library and also to learn the law.

I would like to go back to work as a Social Worker. I loved being able to help other people. I loved working in the area of substance abuse being a recovering addict myself. I know that I will always be a target because of sexual orientation but I will always go to the police if ever I am accosted due this fact again. I realize that if I had reported these individuals at the beginning of this situation I would not have been shot five (5) times and I would not have lost eleven (11) years of my life without my

3.

039-746-517

mother and my son. I would love to stay in the United States to be with my mother and my son.

My mother is 74 years old and she starting to have serious medical problems. I worry about what will happen to her if I am deported. She is losing her memory and has had several incidents of falling down. I worry because she lives alone and could get hurt without anyone knowing. My son is 14 years old and has not been with me since he was 2 years old. I tired to raise him as best a I could from prison. I did home work and bedtime stories over the phone. He knows me very well and I know him very well but I have missed so many first. I pray to God that I do not miss many more. I would love to be able to support him through college and beyond. I am fearful that in these hard economic times my mother and my son will lose me as source of benefit that can help ensure that they have stable lives.

Respectfully Submitted,

Kirk King 039-746-517

4.

# EXHIBIT - B



**QUEENS COUNTY DISTRICT ATTORNEY**
125-01 QUEENS BOULEVARD
KEW GARDENS, NEW YORK 11415-1568

**MELINDA KATZ**
DISTRICT ATTORNEY

718.286.6000
WWW.QUEENSDA.ORG

March 29, 2023

Violence Against Women Act (VAWA) Unit
Vermont Service Center
U.S. Citizenship and Immigration Services
38 River Road
Essex Junction, VT 05479-0001

Ladies and Gentlemen:

In response to Part 4, Question 2, Kirk Kevin King, a.k.a., Kirk King, was helpful to the investigation and prosecution of the crimes committed against him by Marvin M. Mitchell in that he:

(a)    Reported the crime to the New York City Police Department.
(b)    Discussed the criminal case with employees of the Queens County District Attorney's Office; and
(c)    Agreed to testify at trial, as required.

In response to Part 4, Question 3, at the time of this writing, Kirk Kevin King has not been requested to provide any further assistance in the investigation and prosecution of the crimes committed against him by Marvin M. Mitchell, as the criminal case is now closed.

Sincerely,

RICHARD LA ROSA
Senior Assistant District Attorney
Appeals and Special Litigation Division
Immigration Specialist
Queens County District Attorney's Office
Phone: (718) 286-5933

# EXHIBIT - C



APP(451997)442383

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR, COUNTY OF QUEENS

Q12638224

| THE PEOPLE OF THE STATE OF NEW YORK | STATE OF NEW YORK |
|---|---|
| V. | COUNTY OF QUEENS |
| MARVIN M MITCHELL (26Y)<br>DEFENDANT | |

DETECTIVE JAMES LAVIN OF QNS DET AREA 100, TAX REG#: 925819, BEING
DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT JULY 2 2012 BETWEEN
2:40AM AND 2:50AM, IN FRONT OF 66-16 BEACH CHANNEL DRIVE, COUNTY OF
QUEENS, STATE OF NEW YORK

THE DEFENDANT COMMITTED THE OFFENSES OF:
PL 110/125.25-1 ATTEMPTED MURDER IN THE SECOND DEGREE
PL 265.03 (1) (B) (EFF 12/15/2006) CRIMINAL POSSESSION OF A WEAPON IN
                                    THE SECOND DEGREE - AN ARMED FELONY
                                    OFFENSE; DNA SAMPLE REQUIRED UPON
CONVICTION
PL 265.03 (3) (12/15/2006) CRIMINAL POSSESSION OF A WEAPON IN THE
                           SECOND DEGREE - AN ARMED FELONY OFFENSE;
                           DNA SAMPLE REQUIRED UPON CONVICTION
PL 120.05-1 ASSAULT IN THE SECOND DEGREE
PL 120.25 RECKLESS ENDANGERMENT IN THE FIRST DEGREE

IN THAT THE DEFENDANT DID: WITH INTENT TO COMMIT THE CRIME OF MURDER
IN THE SECOND DEGREE AND TO CAUSE THE DEATH OF ANOTHER PERSON, ENGAGE
IN CONDUCT WHICH ATTEMPTED TO CAUSE THE DEATH OF SUCH PERSON OR A THIRD
PERSON;WITH INTENT TO USE THE SAME UNLAWFULLY AGAINST ANOTHER, POSSESS
A LOADED FIREARM;POSSESS ANY LOADED FIREARM. SUCH POSSESSION SHALL
NOT, EXCEPT AS PROVIDED IN SUBDIVISION ONE OR SEVEN OF SECTION 265.02
OF THIS ARTICLE CONSTITUTE A VIOLATION OF THIS SUBDIVISION IF SUCH
POSSESSION TAKES PLACE IN SUCH PERSON'S HOME OR PLACE OF BUSINESS;WITH
INTENT TO CAUSE SERIOUS PHYSICAL INJURY TO ANOTHER PERSON, CAUSE SUCH
INJURY TO SUCH PERSON OR TO A THIRD PERSON;UNDER CIRCUMSTANCES EVINCING
A DEPRAVED INDIFFERENCE TO HUMAN LIFE, RECKLESSLY ENGAGE IN CONDUCT
WHICH CREATED A GRAVE RISK OF DEATH TO ANOTHER PERSON

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S
BELIEF ARE AS FOLLOWS:

DEPONENT IS INFORMED BY THE COMPLAINANT, KIRK KING, THAT AT THE ABOVE
MENTIONED, TIME, DATE, AND LOCATION OF OCCURRENCE HE SUFFERED MULTIPLE
GUN SHOT WOUNDS.

07/03/2012  4:02PM (GMT-04:00)



AFFI451997A142383

MITCHELL, MARVIN M Q12638224

DEPONENT FURTHER STATES HE OBSERVED VIDEO SURVEILLANCE OF THE ABOVE
LOCATION, DEPICTING THE ABOVE DATE AND TIME, WHICH SHOWS THE COMPLAINANT
FIRING A FIREARM AND WALKING OFF CAMERA.  DEPONENT FURTHER STATES SAID
SURVEILLANCE FOOTAGE DEPICTS THE DEFENDANT, MARVIN MITCHELL, ENTER THE
VIEW OF THE CAMERA TURN IN THE DIRECTION THE COMPLAINANT HAD WALKED
OFF CAMERA.  DEPONENT FURTHER STATES SAID VIDEO DEPICTS THE DEFENDANT
REMOVING A LONG BARRELED REVOLVER FROM HIS WAISTBAND AND FIRING MULTIPLE
SHOTS.

DEPONENT IS FURTHER INFORMED BY DR. SCHUBL, THAT THE COMPLAINANT
SUFFERED TWO (2) GUN SHOT WOUNDS TO HIS ARM, AND ONE (1) GUN SHOT
WOUND TO HIS CALF.

DEPONENT FURTHER STATES THE DEFENDANT ADMITTED HE SHOT AT THE
COMPLAINANT BECAUSE THE COMPLAINANT HAD JUST SHOT HIS COUSIN AND HE
WANTED TO PROTECT HIS COUSIN.

DEPONENT FURTHER STATES THE DEFENDANT ADMITTED HE BROUGHT THE ABOVE
MENTIONED REVOLVER TO 517 BEACH 65 STREET, IN QUEENS COUNTY.  DEPONENT
FURTHER STATES HE RECOVERED A .357 LONG BARRELED REVOLVER FROM SAID
LOCATION.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
TO SECTION 210.45 OF THE PENAL LAW

7/3/12

DATE          SIGNATURE

SWORN TO BEFORE ME ON THE
DAY OF

_____

DATE          SIGNATURE

07/03/2012   4:02PM (GMT-04:00)

S U P E R I O R   C O U R T   I N F O R M A T I O N

S U P R E M E   C O U R T   O F   T H E   S T A T E   O F   N E W   Y O R K
C O U N T Y   O F   Q U E E N S

```
--------------------------------------------
                                            |
THE PEOPLE OF THE STATE OF NEW YORK         |
                                            |
        AGAINST                             |
                                            |
                                            |
                                            |
MARVIN M MITCHELL - AFO,VFO                 |  SUPERIOR COURT
      DEFENDANT                             |  INFORMATION NO. 2834/2012
        2012QN035541                        |
          NYSID# 02100506J                  |
                                            |
                                            |
                                            |
--------------------------------------------|
```

PL 110/265.03-3 ATTEMPTED CRIMINAL POSSESSION OF A WEAPON IN
        THE SECOND DEGREE (1)

RICHARD A. BROWN
DISTRICT ATTORNEY

FIRST COUNT

THE DISTRICT ATTORNEY OF THE COUNTY OF QUEENS BY THIS INFORMATIO

ACCUSES THE DEFENDANT OF ATTEMPTED CRIMINAL POSSESSION OF A WEAPON IN

THE SECOND DEGREE COMMITTED AS FOLLOWS:

THE DEFENDANT, ON OR ABOUT JULY 02, 2012 IN THE COUNTY OF QUEENS

KNOWINGLY ATTEMPTED TO POSSESS A LOADED PISTOL,  AND SUCH ATTEMPTED

POSSESSION WAS NOT IN HIS HOME OR PLACE OF BUSINESS.

THE SUBJECT MATTER OF THIS COUNT BEING AN ARMED FELONY AS THAT

TERM IS DEFINED IN SECTION 1.20 OF THE CRIMINAL PROCEDURE LAW.

RICHARD A. BROWN
DISTRICT ATTORNEY

# EXHIBIT - D

DISTRICT ATTORNEY, QUEENS COUNTY
125-01 Queens Boulevard
KEW GARDENS, NEW YORK 11415-1568
(718) 286-6000

**RICHARD A. BROWN**
**DISTRICT ATTORNEY**

MR. KIRK KING
428 BEACH 65 STREET
ARVERNE, NY 11692

September 30, 2013

Indictment #: 2834/2012

People v.  MARVIN M MITCHELL

DEAR MR. KING:

The above mentioned defendant(s) was (were) recently sentenced to a term of imprisonment in a state facility, upon a conviction of a violent felony offense or a homicide offense. New York State Law permits you, as the Victim or Family Member(*), to be notified if and when the defendant(s) is (are) released from custody.

Should you wish to receive notification of the inmate's release, please complete and sign the attached form(s) and mail it back to me, at the address listed below. You must fill out one form for each defendant. We will then forward it to the appropriate correctional agency, which will then notify you if the defendant(s) is (are) released from custody, put in work release or escape(s) from custody.

Thank you for your cooperation in this regard.

Very truly yours,

*Natasha Morales, MA*

NATASHA MORALES, MA
DIRECTOR, CRIME VICTIMS ADVOCATE PROGRAM
QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
125-01 QUEENS BOULEVARD, KEW GARDENS, NY 11415-1568
(718) 286-6818

(*) "Victim" means the victim as described in the accusatory instrument, where the defendant has been convicted of a violent felony offense as defined in Section 70.02 of the Penal Law or a homicide offense as defined in Article 125 of the Penal Law, or, if such victim is unable or unwilling to express himself or herself before the court, or a person so mentally or physically disabled as to make it impracticable to appear in court in person, or the victim is deceased, a member of the family of such victim, or the legal guardian or representative of the legal guardian of the victim where such guardian or representative has personal knowledge of and a relationship with the victim, unless the court finds that it would be inappropriate for such person to make a statement on behalf of the victim.

ABRAHAM,ANISHA



DISTRICT ATTORNEY
QUEENS COUNTY
125-01 Queens Boulevard
KEW GARDENS, NEW YORK 11415-1568
(718) 286-6000

RICHARD A. BROWN
DISTRICT ATTORNEY

November 21, 2013

Mr. Kirk King
428 Beach 65 Street
Arverne, NY 11692

Re: People v. Marvin M Mitchell
Indictment Number: 2834/2012
NYSID Number: 02100506J

Dear Mr. King:

As District Attorney of Queens County, I want to express my appreciation for the assistance provided by you in connection with the prosecution of the above case. In a desire to keep you informed, I thought you would want to know that this case has been concluded as follows:

| | |
|---|---|
| Judge: | **HONORABLE SUZANNE MELENDEZ** |
| ADA | **ANISHA ABRAHAM** |
| Charge: | **ATTEMPTED CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE** |
| Disposition: | **PLED GUILTY TO ATTEMPTED CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE** |
| Sentence: | **SENTENCED TO A TERM OF 3 YEAR(S) 6 MONTH(S) JAIL.** |

You have the legal right as a crime victim to file a written, audiotaped, or videotaped statement, otherwise known as a crime victim's impact statement, with the Division of Parole that will be taken into consideration when a decision is to be made granting or denying parole release to the defendant. Such statements should contain the defendant's name and NYSID number as set forth above and must be forwarded to:

New York State Division of Parole
Victim Impact Statement Office
97 Central Avenue
Albany, New York 12206

Pursuant to Criminal Procedure Law section 380.50 (6), you may have the right to be notified, upon request, should the defendant file a petition to change his/her name. If you wish to be notified, please review the instructions on the attached form.

The successful operation of our criminal justice system depends on people like you who are willing to spend time and devote the energy in order to help make our county a better place in which to live and work.

With every good wish, I am

Yours very truly,

Richard A. Brown
District Attorney

1,950,785   100649

**Victim or Family Member Request for Notice of Defendant Name Change**

(*) "Victim" means the victim as described in the accusatory instrument, where the defendant has been convicted of a violent felony offense as defined in Section 70.02 of the Penal Law or other charges defined in Section 380.50 of the Penal Law, or, if such victim is unable or unwilling to express himself or herself before the court, or a person so mentally or physically disabled as to make it impracticable to appear in court in person, or the victim is deceased, a member of the family of such victim, or the legal guardian or representative of the legal guardian of the victim where such guardian or representative has personal knowledge of and a relationship with the victim, unless the court finds that it would be inappropriate for such person to make a statement on behalf

## REQUEST FOR DEFENDANT NAME CHANGE NOTIFICATION

NAME OF DEFENDANT:  Marvin M Mitchell                    INDICTMENT#:    2834/2012

I request to be notified if the above-named defendant files a petition for a name change.

NAME OF REQUESTOR: _____

ADDRESS OF REQUESTOR:_____

TELEPHONE #_____

NAME OF VICTIM:_____

RELATIONSHIP OF VICTIM (circle one):     SELF          PARENT          CHILD          SIBLING

THIS FORM SHOULD BE RETURNED TO THE DISTRICT ATTORNEY'S OFFICE AT:

NATASHA MORALES, MS  DIRECTOR, CRIME VICTIMS ADVOCATE PROGRAM
QUEENS COUNTY DISTRICT ATTORNEY'S OFFICE
125-01 QUEENS BOULEVARD, KEW GARDENS, NY  11415-1568
(718) 286-6818

EXHIBIT - E

**EAMONN TRAINOR**
Senior Attorney

**Office of Victim Services**
Alfred E. Smith State Office Building
80 South Swan Street – 2nd Floor
Albany, New York 12210
518-457-8066
518-457-8658 (Fax)
www.ovs.ny.gov

October 12, 2017

Kirk King
428 Beach 65th Street
Arverne, New York 11692

Dear Kirk King:

I have been informed that you may be a crime victim or representative of a crime victim as defined in Executive Law § 632-a, commonly known as the "Son of Sam" law. This law provides crime victims or their representatives with the opportunity to bring a lawsuit for money damages against the person(s) convicted of the crime.

I am writing to advise you that the New York State Office of Victim Services ("OVS") has received notice from New York City Comptroller of a payment made or about to be made to Marvin Mitchell in the amount of $20,000.00. Under the Son of Sam Law, this notice revives your right as a crime victim or representative of a crime victim, to bring a civil action against Marvin Mitchell.

The intent of the OVS is to assist the victim or representative, to obtain a Preliminary Injunction to freeze the funds of the convicted person. After obtaining a Preliminary Injunction and freezing the funds of the convicted person, the Office of Victim Services cannot proceed any further, and you must either bring a lawsuit or settle your claim through your own attorney. The OVS cannot bring a lawsuit on behalf of, or provide legal advice to the victim or representative. Accordingly, you should immediately consult with an **attorney** to learn your rights under the Executive Law because any such lawsuit must be brought within three years of the date of this letter.

If you intend to commence a lawsuit through an attorney, please fill out the enclosed affidavit form, verify the accuracy of the information provided, have your signature notarized and return it **immediately** to the OVS by overnight mail. While we will need the complete, original of the enclosed form in order to proceed, **we would also request that you fax the completed form to me at (518) 457-8658 as soon as possible**. If you have already commenced a lawsuit before returning the form to the OVS, please note this fact on the form where indicated and send us a copy of the summons and complaint immediately. Please note that the form also requests the name, address and telephone number of any attorney of record if you have retained



NEW
YORK
STATE | **Office of
Victim Services**

**EAMONN TRAINOR**
Senior Attorney

**Office of Victim Services**
Alfred E. Smith State Office Building
80 South Swan Street – 2nd Floor
Albany, New York 12210
518-457-8066
518-457-8658 (Fax)
www.ovs.ny.gov

one. Otherwise you do not need to complete this part.

It is important that you act as quickly as possible because of the immediate risk that the convicted person will attempt to dispose of the identified funds as quickly as possible.

It is to be emphasized that the OVS's ability to seek temporary court orders to freeze the convicted person's funds hinges upon your cooperation. The ultimate success of the OVS's efforts to obtain appropriate restraints upon the "funds of a convicted person" depends upon whether the convicted person still has these funds, how quickly the OVS can seek such relief (which requires notice from you of your intent to sue Marvin Mitchell), the OVS's success in court, and, in every case, the prompt initiation by the crime victim(s) or their representatives of suit against the convicted person.

**Please contact me at 518-457-4924 if you intend to return the enclosed form.** If I am not available then please leave a voicemail message with a telephone number at which you can be reached. This is most **important**. Thank you very much for your cooperation.

Very truly yours,

**EAMONN TRAINOR**
Senior Attorney

Enclosure



# EXHIBIT - F

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

**Discharge Summary, Progress Notes (continued)**

**Discharge Summary by Sebastian Schubl, MD at 7/2/2012 2:06 PM (continued)**          Version 1 of

-discussion of the hospital stay
-instructions to all relevant caregivers for continuing care
-preparation of discharge records, including time spent dictating a discharge summary;
prescriptions; and referral forms for any follow-up services
-patient was offered a Pneumovax vaccination during this hospitalization by the nursing staff to the best of my
knowledge

Greater than 30 minutes of cumulative time was spent in the above mentioned activities as this patient's
hospital course includes observation with a comprehensive history, comprehensive exam and medical
decision-making of high complexity.

Above discharge summary reviewed and agree with assessment and plan as per resident/physician assistant
with discharge planning and disposition as per above note.
Appropriate follow-up to be obtained with all services involved in patient care.

Electronically signed by Sebastian Schubl, MD on 7/2/2012 2:39 PM

**Discharge Summary by Jonathan Abelson, MD at 7/2/2012 2:06 PM**          Version 1 of

Author: Jonathan Abelson, MD          Service: Surgery          Author Type: Resident
Filed: 7/2/2012 2:09 PM          Date of Service: 7/2/2012 2:06 PM          Status: Signed
Editor: Jonathan Abelson, MD (Resident)
Related Notes: Cosigned by Sebastian Schubl, MD (Physician) filed at 7/2/2012 2:39 PM

**Admit date:** 7/2/2012
**Discharge date and time:** 7/2/12
**Admitting Physician:** Sebastian Schubl, MD
**Discharge Physician:** Dr. Schubl
**Admission Diagnoses:** GSW
**Discharge Diagnoses:** Same
**Admission Condition:** fair
**Discharged Condition:** good
**Indication for Admission:** GSW
**Presentation:** 38 y/o M with hx of epilepsy who presents with GSW to the R arm,
and grazing of the abdomin, r hand and L calf. He had +ETOH, -LOC, -Head strike.
He has no other complaints.

**Procedure Done:** None
**Hospital Course:**
**Evolution/Complication:** improving
**Condition Upon Discharge:** Stable, doing well
**Consults:** none
**Significant Diagnostic Studies:**

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

**Discharge Summary - Encounter Notes (continued)**

Discharge Summary by Jonathan Abeleson, MD at 7/2/2012 2:06 PM (continued)

Version 1 of 1

**Discharge Exam:**
**Filed Vitals:**

|  | 07/02/12 0354 | 07/02/12 0358 | 07/02/12 0800 |
|---|---|---|---|
| BP: | 135/7 | 135/77 | 150/77 |
| Pulse: | 98 | 98 | 84 |
| Temp: | 98 °F (36.7 °C) | 98 °F (36.7 °C) | 98.4 °F (36.9 °C) |
| TempSrc: |  |  | Oral |
| Resp: | 22 | 20 | 20 |
| Height: | 5' 10" (1.778 m) |  |  |
| Weight: | 145 lb (65.772 kg) |  |  |
| SpO2: |  |  | 98% |

Constitutional: He is oriented to person, place, and time. He appears well-developed and well-nourished.
HENT:
Head: Normocephalic and atraumatic.
Eyes: Conjunctivae and EOM are normal.
Neck: Normal range of motion. Neck supple.
Cardiovascular: Normal rate and regular rhythm.
Pulses:
Radial pulses are 2+ on the right side, and 2+ on the left side.
Femoral pulses are 2+ on the right side, and 2+ on the left side.
Dorsalis pedis pulses are 2+ on the right side, and 2+ on the left side.
Posterior tibial pulses are 2+ on the right side, and 2+ on the left side.
ABIs: 120/80 in all extremities
Abdominal: Soft. Bowel sounds are normal.
**2 cm laceration on Mid lower abdomen**
Genitourinary: Rectum normal. Guaiac negative stool.
Musculoskeletal: Normal range of motion.
Neurological: He is oriented to person, place, and time.
Skin: Skin is warm and dry.
**Multiple deep abrasions to the R dorsum of the hand. R arm has exit and entry GSW below the R bicep. L calf has laceration on upper calf**

**Disposition:** Final discharge disposition not confirmed
**Patient Instructions:**

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

Discharge Summary - Encounter Notes (continued)

Discharge Summary by Jonathan Abelson, MD at 7/2/2012 2:06 PM (continued)

Version 1 of 1

There are no discharge medications for this patient.
**Activity:** activity as tolerated and no driving for today
**Diet:** regular diet
**Wound Care:** keep wound clean and dry
**Follow-up with Dr. Schubl in 1 week.**

**Signed:**

Jonathan Abelson, MD
**Beeper #: 12904**
7/2/2012


Electronically signed by Sebastian Schubl, MD on 7/2/2012 2:39 PM

H&P - Encounter Notes

H&P by Sebastian Schubl, MD at 7/2/2012 1:56 PM

Version 1 of 1

| | | |
|---|---|---|
| Author: Sebastian Schubl, MD | Service: --- | Author Type: Physician |
| Filed: 7/2/2012 2:54 PM | Date of Service: 7/2/2012 1:56 PM | Status: Signed |
| Editor: Sebastian Schubl, MD (Physician) | | |
| Related Notes: Related Note by Jonathan Abelson, MD (Resident) filed at 7/2/2012 1:56 PM | | |

### Surgical Attending H&P Note

Kirk King suffers from the following-
There is no problem list on file for this patient.


History, examination, laboratory results, and imaging studies were reviewed.
In particular the patients CT scans and X-rays were personally reviewed by myself order to determine if any significant injury warranting surgical intervention or SICU care is warranted.

**Past Medical History**

| Diagnosis | Date |
|---|---|
| * Seizures | |

History reviewed. No pertinent past surgical history.
A complete Review of Systems was discussed including all systems as below-
General ROS: non-contributory except what is noted in above note/HPI
Psychological ROS: non-contributory except what is noted in above note/HPI
Ophthalmic ROS: non-contributory except what is noted in abovenote/HPI
ENT ROS: non-contributory except what is noted in abovenote/HPI
Allergy and Immunology ROS: non-contributory except what is noted in above note/HPI
Hematological ROS: non-contributory except what is noted in above note/HPI
Endocrine ROS: non-contributory except what is noted in above note/HPI
Breast ROS: non-contributory except what is noted in above note/HPI

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

H&P by Sebastian Schubl, MD at 7/2/2012 1:56 PM (continued)

Version 1 of 1

Respiratory ROS: non-contributory except what is noted in above note/HPI
Cardiovascular ROS: non-contributory except what is noted in above note/HPI
Gastrointestinal ROS: non-contributory except what is noted in above note/HPI
Genito-Urinary ROS: non-contributory except what is noted in abovenote/HPI
Musculoskeletal ROS: non-contributory except what is noted in above note/HPI
Neurological ROS: non-contributory except what is noted in above nnote/HPI
Dermatological ROS: non-contributory except what is noted in above note/HPI

Physical exam as in above resident's note.

Assessment and Plan as in above resident's note.

### Procedure Note- Abdominal and Chest Ultrasound, Complete, for Trauma
In order to facilitate identification of potential chest and/or abdominal trauma the patient underwent an ultrasound procedure that was performed and interpreted by the trauma team in real time. An extended focused assessment by sonogram for trauma (eFAST) exam was performed by the residents under my direct supervision and the patient's abdomen and chest were evaluated for any free fluid. Four views of the abdomen were obtained, including the left and right upper quadrant, the subxiphoid and a pelvic view in the standard fashion. Additionally, 2 views of the anterior chest were obtained to allow for examination of both lungs through bilateral anterior thoracic sonography. Interpretation of this study by myself and the resident assisted in the triage the patient.

### Attending Provider Plan
In this case, Kirk King is a 38 y.o. with injuries related to a traumatic event as delineated by the resident admission note above. Injuries are severe enough in nature to warrant admission to the hospital and possible surgical intervention at a later date by the trauma surgery or other services. All questions answered. Patient understands and agrees to admission, observation, and treatment. Close observation by myself and further monitoring and possibly imaging will be used to make the determination if the patient warrants a surgical intervention by myself or by another subspeciality service such as Plastic, Orthopedic, Vascular or Neurological Surgery. The patient will be admitted to my service, with myself as the primary care provider for at least the first 24 hours.

Electronically signed by Sebastian Schubl, MD on 7/2/2012 2:54 PM

H&P by Jonathan Abelson, MD at 7/2/2012 1:56 PM

Version 1 of 1

Author: Jonathan Abelson, MD
Filed: 7/2/2012 1:56 PM
Editor: Jonathan Abelson, MD (Resident)
Related Notes: Cosigned by Sebastian Schubl, MD (Physician) filed at 7/2/2012 2:54 PM

Service: Surgery
Date of Service: 7/2/2012 1:56 PM

Author Type: Resident
Status: Signed

### Chief Complaint
Patient presents with
- Gun Shot Wound
  *right arm, stomach, left leg*

**HPI Comments:** 38 y/o M with hx of epilepsy who presents with GSW to the R arm, and grazing of the abdomin, r hand and L calf. He had +ETOH, -LOC, -Head strike. He has no other complaints.

### Past Medical History
Diagnosis                                          Date
- Seizures

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

H&P - Encounter Notes (continued)

H&P by Jonathan Abelson, MD at 7/2/2012 1:56 PM (continued)

Version 1 of 1

History reviewed. No pertinent past surgical history.
History reviewed. No pertinent family history.
**History**
Substance Use Topics
- Smoking status:      Not on file
- Smokeless tobacco:   Not on file
- Alcohol Use:
Review of Systems
Constitutional: Negative.
HENT: Negative.
Eyes: Negative.
Respiratory: Negative.
Cardiovascular: Negative.
Gastrointestinal: Negative.
Genitourinary: Negative.
Musculoskeletal: Positive for myalgias, arthralgias and gait problem. Negative for back pain and joint swelling.
Neurological: Negative.
Hematological: Negative.

BP 135/77 | Pulse 98 | Temp 98 °F (36.7 °C) | Resp 20 | Ht 5' 10" (1.778 m) | Wt 145 lb (65.772 kg) | BMI 20.81 kg/m2
**Physical Exam**
Constitutional: He is oriented to person, place, and time. He appears well-developed and well-nourished.
**Intoxicated but speaking in clear full sentences**
HENT:
Head: Normocephalic and atraumatic.
Eyes: Conjunctivae and EOM are normal.
Neck: Normal range of motion. Neck supple.
Cardiovascular: Normal rate and regular rhythm.
Pulses:
Radial pulses are 2+ on the right side, and 2+ on the left side.
Femoral pulses are 2+ on the right side, and 2+ on the left side.
Dorsalis pedis pulses are 2+ on the right side, and 2+ on the left side.
Posterior tibial pulses are 2+ on the right side, and 2+ on the left side.
ABIs: 120/80 in all extremities
Abdominal: Soft. Bowel sounds are normal.
**2 cm laceration on Mid lower abdomen**
Genitourinary: Rectum normal. Guaiac negative stool.
Musculoskeletal: Normal range of motion.
Neurological: He is oriented to person, place, and time.
Skin: Skin is warm and dry.
**Multiple deep abrasions to the R dorsum of the hand. R arm has exit and entry GSW below the R bicep. L calf has laceration on upper calf.**

Procedures
**MDM**
Number of Diagnoses or Management Options
Amount and/or Complexity of Data Reviewed
Clinical lab tests: ordered

Printed on 5/20/21 2:49 PM

**JAMAICA HOSPITAL MED CTR**
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Patient Demographics

| Address | Phone |
|---|---|
| 428 B 65TH STREET ARVERNE NY 11692 | 718-755-2989 (Home) |

### Ethnic Background/Race/Religion/Language

| | | Language |
|---|---|---|
| Black or African American | None | English |

## Admission Information

| | | | | |
|---|---|---|---|---|
| Arrival Date/Time: | 07/02/2012 0343 | Admit Date/Time: | 07/02/2012 0353 | IP Adm: Date/Time: |
| Admission Type: | Emergency | Point of Origin: | Self Referral | Admit Category: |
| Means of Arrival: | Non Jh Ems Ambulance | Primary Service: | Emergency Medicine | Secondary Service: N/A |
| Transfer Source: | Jh Emergency Room | Service Area: | JAMAICA HOSPITAL MEDICAL CTR | Unit: JHMC EMERGENCY ROOM |
| Admit Provider: | Nagaraj D Rao, MD | Attending Provider: | Trevor Jean Jacques, MD | Referring Provider: Sebastian Schubl, MD |

## Discharge Information

| | | | | |
|---|---|---|---|---|
| 07/02/2012 1508 | Home/Self Care | Home | None | JHMC EMERGENCY ROOM |

## Events

**ED Arrival at 7/2/2012 0343**
Unit: JHMC EMERGENCY ROOM
User: Cynthia Guzzardo

**Admission at 7/2/2012 0353**
Unit: JHMC EMERGENCY ROOM — Room: Trauma2-3 — Bed: TR2-3
User: Jerome Badoy, RN — Patient class: Emergency — Service: Emergency Medicine

**ED Roomed at 7/2/2012 0353**
Unit: JHMC EMERGENCY ROOM — Room: Trauma2-3 — Bed: TR2-3
User: Jerome Badoy, RN — Patient class: Emergency — Service: Emergency Medicine

**Patient Update at 7/2/2012 1400**
Unit: JHMC EMERGENCY ROOM — Room: Trauma2-3 — Bed: TR2-3
User: Roslyn Lachana — Patient class: Emergency — Service: Emergency Medicine

**Pt Class Change at 7/2/2012 1400**
Unit: JHMC EMERGENCY ROOM — Room: Trauma2-3 — Bed: TR2-3
User: Roslyn Lachana — Patient class: Emergency — Service: Emergency Medicine

**Discharge at 7/2/2012 1508**
Unit: JHMC EMERGENCY ROOM — Room: Trauma2-3 — Bed: TR2-3
User: Lana Verbitskaya — Patient class: Emergency — Service: Emergency Medicine

**Discharge at 7/2/2012 1508**
Unit: JHMC EMERGENCY ROOM — Room: Trauma2-3 — Bed: TR2-3
User: Sandra Oconnor, RN — Patient class: Inpatient — Service: Emergency Medicine

## Allergies as of 7/2/2012

Review status set to Review Complete by Sharly Varghese, RN on 7/2/2012

## Immunizations

| Name | |
|---|---|
| Tdap | 07/02/12 |

## Medical as of 7/2/2012

### Past Medical History

| | | | Source |
|---|---|---|---|
| Seizures [780.39 (ICD-9-CM)] | — | — | Provider |

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

Medical as of 7/2/2012 (continued)

## ED Records

### ED Arrival Information

| | | | | | | Admission Type |
|---|---|---|---|---|---|---|
| 7/2/2012 03:43 | Emergent | Non JH EMS Ambulance | Police | | Emergency Medicine | Emergency |

TRAUMA TEAM  GSW TO LEFT LOWER LEG AND RIGHT ARM

### Chief Complaint

| Gun Shot Wound | right arm, stomach, left leg |
|---|---|

### ED Disposition

| Discharge | Pt. Discharged home in stable condition. |
|---|---|

### Follow-up Information

None

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

**ED Provider Notes by Nagaraj D Rao, MD at 7/2/2012 6:08 PM**

Version 1 of 1

Author: Nagaraj D Rao, MD
Filed: 7/2/2012 6:09 PM
Editor: Nagaraj D Rao, MD (Physician)

Service: —
Date of Service: 7/2/2012 6:08 PM

Author Type: Physician
Status: Signed

**History**

**Chief Complaint**
Patient presents with
- **Gun Shot Wound**
  *right arm, stomach, left leg*

**HPI**

**Past Medical History**
Diagnosis                                                            Date
- Seizures

History reviewed. No pertinent past surgical history.

History reviewed. No pertinent family history.

**History**
Substance Use Topics
- Smoking status:                        Not on file
- Smokeless tobacco:                     Not on file
- Alcohol Use:

Review of Systems

**Physical Exam**

BP 138/70 | Pulse 78 | Temp(Src) 98.6 °F (37 °C) (Oral) | Resp 18 | Ht 5' 10" (1.778 m) | Wt 145 lb (65.772 kg) |
BMI 20.81 kg/m2 | SpO2 98%

Physical Exam

**ED Course**
Procedures

**MDM**
Number of Diagnoses or Management Options
GSW (gunshot wound):
Risk of Complications, Morbidity, and/or Mortality
Presenting problems: high

**Assessment**

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## ED Notes (continued)

ED Provider Notes by Nagaraj D Rao, MD at 7/2/2012 6:08 PM (continued)

Version 1 of 1

Nagaraj D Rao, MD
07/02/12 1809

Electronically Signed by Nagaraj D Rao, MD on 7/2/2012 6:09 PM

### ED Notes by Odette Brady, RN at 7/2/2012 8:00 AM

Version 1 of 1

| Author: Odette Brady, RN | Service: --- | Author Type: Registered Nurse |
| Filed: 7/2/2012 3:04 PM | Date of Service: 7/2/2012 8:00 AM | Status: Signed |
| Editor: Odette Brady, RN (Registered Nurse) | | |

PT. Awake and responsive, s/p trauma with puncture wound to left lower leg and right arm. PT. Maintained safe with iv. Fluids and pain management

Electronically Signed by Odette Brady, RN on 7/2/2012 3:04 PM

### ED Notes by Odette Brady, RN at 7/2/2012 2:31 PM

Version 1 of 1

| Author: Odette Brady, RN | Service: --- | Author Type: Registered Nurse |
| Filed: 7/2/2012 2:31 PM | Date of Service: 7/2/2012 2:31 PM | Status: Signed |
| Editor: Odette Brady, RN (Registered Nurse) | | |

PT. Reevaluated and discharged home in good condition.

Electronically Signed by Odette Brady, RN on 7/2/2012 2:31 PM

### ED Provider Notes by Trevor Jean Jacques, MD at 7/2/2012 6:09 AM

Version 1 of 1

| Author: Trevor Jean Jacques, MD | Service: --- | Author Type: Physician |
| Filed: 7/2/2012 6:10 AM | Date of Service: 7/2/2012 6:09 AM | Status: Signed |
| Editor: Trevor Jean Jacques, MD (Physician) | | |

## History

**Chief Complaint**
Patient presents with

- **Gun Shot Wound**
  *right arm, stomach, left leg*

**HPI Comments:** Pt is a trauma team acitvation. H & P as per the trauma team...

**Past Medical History**

| Diagnosis | Date |
| --- | --- |
| Seizures | |

History reviewed. No pertinent past surgical history.

History reviewed. No pertinent family history.

**History**
Substance Use Topics

- Smoking status:                              Not on file

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

**Encounter Notes (continued)**

H&P by Jonathan Abelson, MD at 7/2/2012 1:56 PM (continued)

Version 1 of 1

Tests in the radiology section of CPT®: ordered
Tests in the medicine section of CPT®: ordered

38 y/o Male s/p GSW to the R arm. He is stable in the trauma bay

-F/U R arm x-rays
-F/U L leg x-rays
-F/U pelvis x-ray
-UA
-Pain control
-IVFs

Electronically signed by Sebastian Schubl, MD on 7/2/2012 2:54 PM

**Discharge Instructions**
None

King, Kirk (MRN 1996311)

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Nursing - All Orders and Results

### Vital signs [178752361]

Electronically signed by: **Grant Garcia, MD on 07/02/12 0358**
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD
Frequency: Q4H 07/02/12 0400 - 28, days

Ordering provider: Grant Garcia, MD

Status: Completed

#### Vital signs [178752348]

Electronically signed by: **Grant Garcia, MD on 07/02/12 0358**
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD

Ordering provider: Grant Garcia, MD

Status: Completed

## Blood Bank - All Orders and Results

### Type and Screen [178752281]

Electronically signed by: **Grant Garcia, MD on 07/02/12 0358**
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD
Frequency: Once 07/02/12 0357 - 1 occurrence

Ordering provider: Grant Garcia, MD

Status: Completed

#### Types and Screen [178752241]

Electronically signed by: **Grant Garcia, MD on 07/02/12 0358**
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD

Ordering provider: Grant Garcia, MD

Status: Completed

#### Type and Screen [178752241]

Order status: Completed

Resulted: 07/02/12 0452, Result status: Final result
Resulting lab: SCC LAB

**Specimen Collection**

| Type | | | 07/02/12 0400 |
|---|---|---|---|

**Components**

| Component | Value | | | Lab |
|---|---|---|---|---|
| ABO Group | O | | | JHLAB |
| RH Type | POS | | | JHLAB |
| Antibody Screen | NEG | | | JHLAB |

## Transfer - All Orders and Results

### ED Admit to Inpatient [178752841]

Electronically signed by: **Jonathan Abelson, MD on 07/02/12 1400**
Ordering user: Jonathan Abelson, MD 07/02/12 1400
Authorized by: Nagaraj D Rao, MD
Frequency: Once 07/02/12 1401 - 1 occurrence

Ordering provider: Jonathan Abelson, MD

Status: Completed

**Questionnaire**

| Question | Answer |
|---|---|
| Bed Type | Floor |
| Admitting Physician | SCHUBL, SEBASTIAN |
| Diagnosis | Trauma |

### ED Admit to Inpatient [178752851]

Electronically signed by: **Jonathan Abelson, MD on 07/02/12 1400**
Ordering user: Jonathan Abelson, MD 07/02/12 1400
Authorized by: Nagaraj D Rao, MD

Ordering provider: Jonathan Abelson, MD

Status: Completed

**Questionnaire**

| Question | Answer |
|---|---|
| Bed Type | Floor |
| Admitting Physician | SCHUBL, SEBASTIAN |
| Diagnosis | Trauma |

## Discharge - All Orders and Results

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Transfer - All Orders and Results (continued)

### Discharge patient [17875266]

Electronically signed by: Jonathan Abelson, MD on 07/02/12 1406
Ordering user: Jonathan Abelson, MD 07/02/12 1406
Authorized by: Nagaraj D Rao, MD
Frequency: Once 07/02/12 1406 - 1 occurrence

Ordering provider: Jonathan Abelson, MD
Status: Discontinued

Discontinued by: Automatic Discharge Provider 07/02/12 1816 [Patient Discharge]

**Updates**
Discharge date and time: 7/2/2012

Discharge disposition: Home/Self Care

### Discharge patient [17875267]

Electronically signed by: Jonathan Abelson, MD on 07/02/12 1406
Ordering user: Jonathan Abelson, MD 07/02/12 1406
Authorized by: Nagaraj D Rao, MD
Discontinued by: Automatic Discharge Provider 07/02/12 1816 [Patient Discharge]

Ordering provider: Jonathan Abelson, MD
Status: Discontinued

**Updates**
Discharge date and time: 7/2/2012

Discharge disposition: Home/Self Care

### Discharge patient [17875260]

Electronically signed by: Jonathan Abelson, MD on 07/02/12 1324
Ordering user: Jonathan Abelson, MD 07/02/12 1324
Authorized by: Nagaraj D Rao, MD
Frequency: Once 07/02/12 1325 - 1 occurrence

Ordering provider: Jonathan Abelson, MD
Status: Discontinued

Discontinued by: Jonathan Abelson, MD 07/02/12 1402 [Entered in Error]

**Updates**
Discharge date and time: 7/2/2012

Discharge disposition: Home/Self Care

### Discharge patient [17875261]

Electronically signed by: Jonathan Abelson, MD on 07/02/12 1324
Ordering user: Jonathan Abelson, MD 07/02/12 1324
Authorized by: Nagaraj D Rao, MD
Discontinued by: Jonathan Abelson, MD 07/02/12 1402 [Entered in Error]

Ordering provider: Jonathan Abelson, MD
Status: Discontinued

**Updates**
Discharge date and time: 7/2/2012

Discharge disposition: Home/Self Care

### Discharge patient [17875258]

Electronically signed by: Jonathan Abelson, MD on 07/02/12 1227
Ordering user: Jonathan Abelson, MD 07/02/12 1227
Authorized by: Nagaraj D Rao, MD
Frequency: Once 07/02/12 1228 - 1 occurrence

Ordering provider: Jonathan Abelson, MD
Status: Discontinued

Discontinued by: Jonathan Abelson, MD 07/02/12 1402 [Entered in Error]

**Updates**
Discharge date and time: 7/2/2012

Discharge disposition: Home/Self Care

### Discharge patient [17875259]

Electronically signed by: Jonathan Abelson, MD on 07/02/12 1227
Ordering user: Jonathan Abelson, MD 07/02/12 1227
Authorized by: Nagaraj D Rao, MD
Discontinued by: Jonathan Abelson, MD 07/02/12 1402 [Entered in Error]

Ordering provider: Jonathan Abelson, MD
Status: Discontinued

**Updates**
Discharge date and time: 7/2/2012

Discharge disposition: Home/Self Care

## Imaging - All Orders and Results

### X-ray KUB [17875250]

Electronically signed by: Grant Garcia, MD on 07/02/12 0403
Ordering user: Grant Garcia, MD 07/02/12 0403
Authorized by: Sebastian Schubl, MD
Frequency: Once 07/02/12 0404 - 1 occurrence

Ordering provider: Grant Garcia, MD
Status: Completed

**Questionnaire**

Printed on 5/20/21  2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

**Imaging - All Orders and Results (continued)**

**X-ray KUB [17875260] (continued)**
Reason for Exam:                                         GSW

**X-ray KUB [17875251]**
Electronically signed by: Grant Garcia, MD on 07/02/12 0403          Status: Completed
This order may be acted on in another encounter.
Ordering user: Grant Garcia, MD 07/02/12 0403
Authorized by: Sebastian Schubl, MD                     Ordering provider: Grant Garcia, MD
Questionnaire

Reason for Exam:                                         GSW

**X-ray KUB [17875251]**                    Resulted: 07/02/12 0633, Result status: Final result
Order status: Completed                      Resulted by: Mark S Herskovits, DO
Performed: 07/02/12 0454 - 07/02/12 0520     Accession number: 3686108
Resulting lab: RADIOLOGY
Narrative:
Clinical history: 38 year old male, GSW.

Single view of the abdomen demonstrates a nonobstructive bowel
gas pattern with no radiopaque foreign body, fracture, or
pneumoperitoneum.

Impression

Negative single radiograph.

**X-ray humerus right AP lateral [17875230]**
Electronically signed by: Grant Garcia, MD on 07/02/12 0358          Status: Completed
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD                     Ordering provider: Grant Garcia, MD
Frequency: Once 07/02/12 0357 - 1 occurrence
Questionnaire

Reason for Exam:                                         GSW

**X-ray humerus right AP lateral [17875243]**
Electronically signed by: Grant Garcia, MD on 07/02/12 0358          Status: Completed
This order may be acted on in another encounter.
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD                     Ordering provider: Grant Garcia, MD
Questionnaire

Reason for Exam:                                         GSW

**X-ray humerus right AP lateral [17875243]**          Resulted: 07/02/12 0830, Result status: Final result
Order status: Completed                      Resulted by: Mark S Herskovits, DO
Performed: 07/02/12 0454 - 07/02/12 0519     Accession number: 3686104
Resulting lab: RADIOLOGY
Narrative:
Clinical history: 38 year-old male, GSW.

Single view of the humerus demonstrates no fracture or other
acute finding.

Impression

Negative study.

**X-ray elbow right AP lateral and obliques [17875231]**
Electronically signed by: Grant Garcia, MD on 07/02/12 0358          Status: Completed
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD                     Ordering provider: Grant Garcia, MD
Frequency: Once 07/02/12 0357 - 1 occurrence

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Imaging - All Orders and Results (continued)

### X-ray elbow right AP lateral and obliques [17875231] (continued)

Questionnaire

Reason for Exam:                                          GSW

### X-ray elbow right AP lateral and obliques [17875244]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358          Status: Completed
This order may be acted on in another encounter.
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD

Ordering provider: Grant Garcia, MD

Questionnaire

Reason for Exam:                                          GSW

#### X-ray elbow right AP lateral and obliques [17875244]

Resulted: 07/02/12 0634, Result status: Final result

Order status: Completed
Performed: 07/02/12 0454 - 07/02/12 0519
Resulting lab: RADIOLOGY
Narrative:
Clinical history: 38 year-old male, GSW.

Resulted by: Mark S Herskovits, DO
Accession number: 3656105

Portable, AP view of the right elbow demonstrates no fracture,
dislocation, or radiopaque foreign body.

Impression

Negative single radiograph.

### X-ray tibia fibula left AP and lateral [17875232]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358          Status: Completed
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD
Frequency: Once 07/02/12 0358 - 1 occurrence

Ordering provider: Grant Garcia, MD

Questionnaire

Reason for Exam:                                          GSW

### X-ray tibia fibula left AP and lateral [17875245]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358          Status: Completed
This order may be acted on in another encounter.
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD

Ordering provider: Grant Garcia, MD

Questionnaire

Reason for Exam:                                          GSW

#### X-ray tibia fibula left AP and lateral [17875246]

Resulted: 07/02/12 0634, Result status: Final result

Order status: Completed
Performed: 07/02/12 0454 - 07/02/12 0520
Resulting lab: RADIOLOGY
Narrative:
Clinical history: 38 year-old male, GSW.

Resulted by: Mark S Herskovits, DO
Accession number: 3656106

Portable, AP view of the left leg demonstrates no fracture or
radiopaque foreign body.

Impression

Negative single radiograph.

### X-ray pelvis anteroposterior [17875233]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358          Status: Discontinued
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD

Ordering provider: Grant Garcia, MD

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Imaging - All Orders and Results (continued)

### X-ray pelvis anteroposterior [17875233] (continued)

Frequency: Once 07/02/12 0358 - 1 occurrence

Discontinued by: Arkadiy Fayzlyev 07/02/12 1234 [Duplicate]

Questionnaire

Reason for Exam:                                                  GSW

### X-ray pelvis anteroposterior [17875246]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD
Discontinued by: Arkadiy Fayzlyev 07/02/12 1234 [Duplicate]

Ordering provider: Grant Garcia, MD

Status: Discontinued

Questionnaire

Reason for Exam:                                                  GSW

### X-ray knee left AP and lateral [17875238]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD
Frequency: Once 07/02/12 0359 - 1 occurrence

Ordering provider: Grant Garcia, MD

Status: Completed

Questionnaire

Reason for Exam:                                                  GSW

### X-ray knee left AP and lateral [17875249]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358
This order may be acted on in another encounter.
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD

Ordering provider: Grant Garcia, MD

Status: Completed

Questionnaire

Reason for Exam:                                                  GSW

### X-ray knee left AP and lateral [17875249]

Order status: Completed
Performed: 07/02/12 0454 - 07/02/12 0519
Resulting lab: RADIOLOGY
Narrative:
Clinical history: 38 year old male, GSW.

Portable, frontal view of the left knee demonstrates no fracture,
dislocation, or radiopaque foreign body.

Impression

Negative single radiograph.

Resulted: 07/02/12 0531, Result status: Final result
Resulted by: Mark S Herskovits, DO
Accession number: 3656107

## Lab - All Orders and Results

### Urinalysis, automated with microsc [17875254]

Electronically signed by: Grant Garcia, MD on 07/02/12 0505
Ordering user: Grant Garcia, MD 07/02/12 0505
Authorized by: Sebastian Schubl, MD
Frequency: STAT 07/02/12 0506 - 1 occurrence

Ordering provider: Grant Garcia, MD

Status: Discontinued

Discontinued by: Jonathan Abelson, MD 07/02/12 1405 [Completed]

### Urinalysis, automated with microsc [17875255]

Electronically signed by: Grant Garcia, MD on 07/02/12 0505
Ordering user: Grant Garcia, MD 07/02/12 0505
Authorized by: Sebastian Schubl, MD
Discontinued by: Jonathan Abelson, MD 07/02/12 1405 [Completed]

Ordering provider: Grant Garcia, MD

Status: Discontinued

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## CBC WITH PLATELET AND DIFFERENTIAL [17875226]

Electronically signed by: Grant Garcia, MD on 07/02/12 0356
Ordering user: Grant Garcia, MD 07/02/12 0356
Authorized by: Sebastian Schubl, MD
Frequency: STAT 07/02/12 0357 - 1 occurrence

Ordering provider: Grant Garcia, MD

Status: Completed

### CBC WITH PLATELET AND DIFFERENTIAL [17875239]

Electronically signed by: Grant Garcia, MD on 07/02/12 0356
Ordering user: Grant Garcia, MD 07/02/12 0356
Authorized by: Sebastian Schubl, MD

Ordering provider: Grant Garcia, MD

Status: Completed

#### CBC WITH PLATELET AND DIFFERENTIAL [17875239] (Abnormal)

Order status: Completed

Resulted: 07/02/12 0422, Result status: Final result
Resulting lab: SCC LAB

##### Specimen Collection

| | | |
|---|---|---|
| Blood | Arm, Left | 07/02/12 0400 |

##### Components

| | | | | |
|---|---|---|---|---|
| WBC | 14.3 | 4.8 - 10.8 K/UL | H | JHLAB |
| RBC | 4.37 | 4.50 - 5.90 M/uL | L | JHLAB |
| HGB | 14.2 | 14.0 - 18.0 g/dL | | JHLAB |
| Hematocrit | 41.8 | 42.0 - 52.0 % | L | JHLAB |
| Mean Corpuscular Volume | 95.6 | 80.0 - 94.0 fl. | H | JHLAB |
| Mean Corpuscular Hemoglobin | 32.4 | 27.0 - 31.0 pg | H | JHLAB |
| Mean Corpuscular Hemoglobin Conc. | 33.9 | 32 - 36 g/dL | | JHLAB |
| Red Cell Distribution Width | 14.5 | 11.5 - 14.5 % | | JHLAB |
| Mean Platelet Volume | 8.7 | 7.2 - 10.4 fL | | JHLAB |
| Platelets | 162 | 130 - 400 K/uL | | JHLAB |
| Neutrophils Auto | 34.4 | 44.0 - 80.0 % | L | JHLAB |
| Lymphocytes Auto. | 54.9 | 13.0 - 43.0 % | H | JHLAB |
| Monocytes Auto | 8.6 | 2.0 - 15.0 % | | JHLAB |
| Eosinophils Auto. | 1.8 | 0.0 - 3.0 % | | JHLAB |
| Basophils Auto. | 0.3 | 0.0 - 3.0 % | | JHLAB |
| Neutrophils Absolute | 4.9 | 2 - 8 K/uL | | JHLAB |
| Lymphocytes Absolute | 7.9 | 0 - 4 K/uL | H | JHLAB |
| Monocytes Absolute | 1.2 | 0 - 1 K/uL | | JHLAB |
| Eosinophils Absolute | 0.3 | 0 - 0 K/uL | | JHLAB |
| Basophils Absolute | 0.0 | 0 - 0 K/uL | | JHLAB |
| NRBC Instrument | 0.00 | None %/100 WBC | | JHLAB |
| Nucleated RBC | 0 | None /100 WBC | | JHLAB |
| Nucleated RBC absolute count | 0.00 | None K/uL | | JHLAB |

## BASIC METABOLIC PANEL [17875227]

Electronically signed by: Grant Garcia, MD on 07/02/12 0356
Ordering user: Grant Garcia, MD 07/02/12 0356
Authorized by: Sebastian Schubl, MD
Frequency: STAT 07/02/12 0357 - 1 occurrence

Ordering provider: Grant Garcia, MD

Status: Completed

### BASIC METABOLIC PANEL [17875240]

Electronically signed by: Grant Garcia, MD on 07/02/12 0356
Ordering user: Grant Garcia, MD 07/02/12 0356
Authorized by: Sebastian Schubl, MD

Ordering provider: Grant Garcia, MD

Status: Completed

#### BASIC METABOLIC PANEL [17875240] (Abnormal)

Order status: Completed

Resulted: 07/02/12 0437, Result status: Final result
Resulting lab: SCC LAB

##### Specimen Collection

| | | |
|---|---|---|
| Blood | | 07/02/12 0400 |

##### Components

| | | | | |
|---|---|---|---|---|
| Glucose | 104 | 74 - 106 mg/dL | | JHLAB |
| Blood Urea Nitrogen | 10 | 9 - 20 mg/dL | | JHLAB |
| Creatinine | 1.0 | 0.7 - 1.3 mg/dL | | JHLAB |
| Calcium | 9.3 | 8.4 - 10.2 mg/dL | | JHLAB |
| Sodium | 151 | 137 - 145 mEq/L | H | JHLAB |
| Potassium | 3.9 | 3.5 - 5.1 mEq/L | | JHLAB |

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

Lab: All Orders and Results (continued)

## BASIC METABOLIC PANEL [17875227] (continued)

| | | | | |
|---|---|---|---|---|
| Chloride | 109 | 98 - 107 mEq/L | H | JHLAB |
| CO2 | 24 | 22 - 30 mEq/L | --- | JHLAB |
| Anion Gap | 18.00 | mEq/L | --- | JHLAB |
| Anion gap with K | 21.60 | mmoL/L | --- | JHLAB |

## PT-PTT [17875229]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD       Ordering provider: Grant Garcia, MD
Frequency: STAT 07/02/12 0357 - 1 occurrence
Status: Completed

### PT-PTT [17875242]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358
Ordering user: Edi, Lab in Hiseven 07/02/12 0358
Authorized by: Sebastian Schubl, MD       Ordering provider: Grant Garcia, MD
Status: Completed

#### PT-PTT [17875242]

Order status: Completed       Resulting lab: SCC LAB       Resulted: 07/02/12 0430, Result status: Final result

##### Specimen Collection

| | |
|---|---|
| | 07/02/12 0400 |

##### Components

| | | | | |
|---|---|---|---|---|
| Prothrombin Time | 11.0 | 10.2 - 13.2 Secs. | --- | JHLAB |
| INR | 1.0 | 0.9 - 1.2 | --- | JHLAB |
| Comment: | | | | |

================= The INR value may be used for the management of patients on

| | | | |
|---|---|---|---|
| Oral Anticoagulant Therapy: | Moderate Intensive Therapy | 2.0 - 3.0 | High Intensity Therapy | 2.5 - 3.5 |

| | | | |
|---|---|---|---|
| PTT | 32.2 | 28.6 - 39.2 Secs. | --- | JHLAB |

## Estimated Glomerular Filtration Ra [17875252]

Electronically signed by: Edi, Lab in Hiseven on 07/02/12 0357
Ordering user: Edi, Lab in Hiseven 07/02/12 0357
Authorized by: Sebastian Schubl, MD       Ordering provider: Grant Garcia, MD
Frequency: Once 07/02/12 0357 - 1 occurrence
Status: Completed

### Estimated Glomerular Filtration Ra [17875253]

Order placed as a reflex to CBC WITH PLATELET AND DIFFERENTIAL [17875239] ordered on 07/02/12 at 0358
Ordering user: Edi, Lab in Hiseven 07/02/12 0357
Authorized by: Sebastian Schubl, MD       Ordering provider: Sebastian Schubl, MD
Status: Completed

#### Estimated Glomerular Filtration Ra [17875255]

Order status: Completed       Resulting lab: SCC LAB       Resulted: 07/02/12 0426, Result status: Final result

##### Specimen Collection

| | |
|---|---|
| | 07/02/12 0400 |

##### Components

| | | | | |
|---|---|---|---|---|
| GFR MDRD Non Af Amer | >60 | --- | --- | JHLAB |
| GFR MDRD Af Amer | >60 | --- | --- | JHLAB |
| Comment: | | | | |

Population mean GFR = 107 ml/min/1.73 sq. m. ages 30-39 years. Staging of Chronic Kidney Disease:    GFR: 30-89 = Stage 3 (Moderate CKD)
GFR: 15-29 = Stage 4 (Severe CKD)    GFR: <15 = Stage 5 (Kidney Failure) Calculation is based on the 4 parameter MDRD equation which includes
IDMS traceable creatinine, age, gender, and race. High eGFR does not exclude Chronic Kidney Disease. Values should be evaluated in clinical
context.

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Labs: All Orders and Results (continued)

## Diet: All Orders and Results

### Diet NPO time specified [17875235]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD
Frequency: Effective Now 07/02/12 0358 - 28 days
Discontinued by: Jonathan Abelson, MD 07/02/12 1405 [Completed]

Ordering provider: Grant Garcia, MD

Diet: NPO

Status: Discontinued

### Diet NPO time specified [17875247]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD
Diet: NPO

Ordering provider: Grant Garcia, MD

Discontinued by: Jonathan Abelson, MD 07/02/12 1405 [Completed]

Status: Discontinued

## Medications: All Orders and Results

### oxycodone-acetaminophen (PERCOCET) 2.5-325 MG per tablet [17875262]

Electronically signed by: Jonathan Abelson, MD on 07/02/12 1400
Ordering user: Jonathan Abelson, MD 07/02/12 1400
Authorized by: Nagaraj D Rao, MD
PRN reasons: Pain
Cosigning events
Awaiting signature from MEDISYS HIM ADMINISTRATOR for Ordering
Frequency: Q4H PRN 07/02/12 - Until Discontinued

Ordering provider: Jonathan Abelson, MD

Status: Active (Cosignature Pending)

### docusate sodium (COLACE) 100 MG capsule [17875263]

Electronically signed by: Jonathan Abelson, MD on 07/02/12 1400
Ordering user: Jonathan Abelson, MD 07/02/12 1400
Authorized by: Nagaraj D Rao, MD
PRN reasons: Constipation
Cosigning events
Awaiting signature from MEDISYS HIM ADMINISTRATOR for Ordering
Frequency: Daily PRN 07/02/12 - Until Discontinued

Ordering provider: Jonathan Abelson, MD

Status: Active (Cosignature Pending)

### TDaP (BOOSTRIX) injection 0.5 mL [17875255]

Electronically signed by: Jerome Badoy, RN on 07/02/12 0621
Ordering user: Jerome Badoy, RN 07/02/12 0621
Authorized by: Trevor Jean Jacques, MD
Frequency: Once 07/02/12 0645 - 1 occurrence

Ordering provider: Jerome Badoy, RN

Package: 58160-842-11

Status: Completed

### ceFAZolin (ANCEF) injection 1 g [17875257]

Electronically signed by: Jerome Badoy, RN on 07/02/12 0621
Ordering user: Jerome Badoy, RN 07/02/12 0621
Authorized by: Trevor Jean Jacques, MD
Frequency: Once 07/02/12 0645 - 1 occurrence

Ordering provider: Jerome Badoy, RN

Package: 63323-237-10

Status: Completed

### morphine sulfate 2 mg/ml injection (IM/IV/SC) 2 mg [17875264]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD
PRN reasons: Pain
Frequency: Q4H PRN 07/02/12 0357 - 7 days
Package: 0409-1762-30

Ordering provider: Grant Garcia, MD

Discontinued by: Jonathan Abelson, MD 07/02/12 1405

Status: Discontinued

### lactated ringers IV infusion 1000 mL [17875237]

Electronically signed by: Grant Garcia, MD on 07/02/12 0358
Ordering user: Grant Garcia, MD 07/02/12 0358
Authorized by: Sebastian Schubl, MD
Frequency: Continuous 07/02/12 0418 - 3 days
Package: 0338-0117-04

Ordering provider: Grant Garcia, MD

Discontinued by: Jonathan Abelson, MD 07/02/12 1405

Status: Discontinued

### ceFAZolin (ANCEF) 1 G injection [17875225]

Electronically signed by: Edi, Ads Dispense on 07/02/12 0344
Ordering user: Edi, Ads Dispense 07/02/12 0344
Frequency: 07/02/12 0344 - 1 occurrence
Medication comments: BADOY, JEROME: cabinet override
Package: 63323-237-10

Discontinued by: Automatic Discharge Provider 07/02/12 1816 [Patient Discharge]

Status: Discontinued

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

**Medications - All Orders and Result** (continued)

**ceFAZolin (ANCEF) 1 G Injection [17878326] (continued)**

**Testing Performed By**

| | | | Address | Valid Date Range |
|---|---|---|---|---|
| 12 - SCC Lab | SCC LAB | Model Lab Director | Unknown | 08/17/10 1129 - 08/16/19 1247 |
| 17 - JHLAB | SCC LAB - JAMAICA | Laurie Horowitz | 8900 Van Wyck Expressway JAMAICA NY 11418 | 08/01/12 1212 - 04/11/14 1030 |
| 22 - RADIOLOGY | RADIOLOGY | Unknown | Unknown | 02/23/11 2220 - Present |

**JAMAICA HOSPITAL MED CTR**
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Medications

### All Meds and Administrations

**morphine sulfate 2 mg/mL injection (IM/IV/SC) 2 mg [17875234]**

Ordering Provider: Grant Garcia, MD
Ordered On: 07/02/12 0356
Dose (Remaining/Total): 2 mg (—/—)
Frequency: EVERY 4 HOURS PRN

Status: Discontinued (Past End Date/Time)
Starts/Ends: 07/02/12 0357 - 07/02/12 1406
Route: Intramuscular
Rate/Duration: — / —

(No admins scheduled or recorded for this medication)

**lactated ringers IV infusion 1000 mL [17875237]**

Ordering Provider: Grant Garcia, MD
Ordered On: 07/02/12 0358
Dose (Remaining/Total): — (—/—)
Frequency: CONTINUOUS

Status: Discontinued (Past End Date/Time)
Starts/Ends: 07/02/12 0415 - 07/02/12 1406
Route: Intravenous
Rate/Duration: 100 mL/hr / —

| Line | | | Performed | |
|---|---|---|---|---|
| Peripheral IV 07/02/12 Left Antecubital | | 07/02/12 0415 by Jerome Badoy, RN | | |

| Timestamp | Action | Dose/Rate | Route | Other Information |
|---|---|---|---|---|
| 07/02/12 1406 | Stopped | 0<br>0 mL/hr | Intravenous | Performed by: Odette Brady, RN |
| 07/02/12 0415 | New Bag | —<br>100 mL/hr | Intravenous | Performed by: Jerome Badoy, RN |

**TDaP (BOOSTRIX) injection 0.5 mL [17875256]**

Ordering Provider: Jerome Badoy, RN
Ordered On: 07/02/12 0621
Dose (Remaining/Total): 0.5 mL (0/1)
Frequency: ONCE

Status: Completed (Past End Date/Time)
Starts/Ends: 07/02/12 0645 - 07/02/12 0621
Route: Intramuscular
Rate/Duration: — / —

| Timestamp | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| 07/02/12 0621 | Given | 0.5 mL | Intramuscular<br>Left Deltoid | Performed by: Jerome Badoy, RN |

**ceFAZolin (ANCEF) injection 1 g [17875257]**

Ordering Provider: Jerome Badoy, RN
Ordered On: 07/02/12 0621
Dose (Remaining/Total): 1 g (0/1)
Frequency: ONCE

Status: Completed (Past End Date/Time)
Starts/Ends: 07/02/12 0645 - 07/02/12 0622
Route: Intramuscular
Rate/Duration: — / —

| Timestamp | Action | Dose | Route | Other Information |
|---|---|---|---|---|
| 07/02/12 0623 | Due | — | — | — |
| 07/02/12 0622 | Given | 1 g | Intramuscular | Performed by: Jerome Badoy, RN |

## Patient Education

### Education

No education to display

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Flowsheets (all records)

### Custom Formula Data - Mon July 02, 2012

**OTHER**

| | | | |
|---|---|---|---|
| BSA (Calculated - sq m) | | | 1.8 sq meters -JB |
| BMI (Calculated) | | | 20.8 -JB |
| IBW/kg (Calculated) Male | | | 73 kg -JB |
| Low Range Vt 6cc/kg MALE | | | 438 mL -JB |
| Adult Moderate Range Vt 8cc/kg MA | | | 584 mL -JB |
| Adult High Range Vt 10cc/kg MALE | | | 730 mL -JB |
| IBW/kg (Calculated) FEMALE | | | 68.5 kg -JB |
| Low Range Vt 6cc/kg FEMALE | | | 411 mL -JB |
| Adult Moderate Range vt 8cc/kg FEMALE | | | 548 mL -JB |
| Percent Weight Change Since Birth | | | 0 -JB |
| IBW/kg (Calculated) | | | 73 -JB |
| Low Range Vt 6cc/kg | | | 438 mL -JB |
| Adult Moderate Range Vt 8cc/kg | | | 584 mL -JB |
| Adult High Range Vt 10cc/kg | | | 730 mL -JB |

**Relevant Labs and Vitals**

| | | | |
|---|---|---|---|
| Temp (in Celsius) | 37 -OB | 36.9 -PR | |

### Sexual Assault - Mon July 02, 2012

**Victim of Crime**

| | |
|---|---|
| Crime Victim | Confirms as Victim of Crime -JB |

**Time/ Date of Occurence**

| | |
|---|---|
| Time Incident Occured | 0315 -JB |
| Date of Incident | 07/02/12 -JB |

### Triage Plan - Mon July 02, 2012

**Triage Plan**

| | |
|---|---|
| ESI | 2 -JB |
| Destination | Trauma -JB |
| Triage Complete | Triage Complete -JB |

### Vital Signs - Mon July 02, 2012

**Vital Signs**

| | |
|---|---|
| Temp | 98 °F (36.7 °C) -JB |
| Pulse | 98 -JB |
| Heart Rate Source | Monitor -JB |
| Resp | 22 -JB |
| BP | (!) 139/7 -JB |
| BP Location | Left arm -JB |
| BP Method | Manual -JB |
| Patient Position | Lying -JB |
| Pain Assessment | 0-10 (VVAS) -JB |
| Currently In Pain | Yes -JB |

**OTHER**

| | |
|---|---|
| Pain Score | SEVEN -JB |

**Height and Weight**

| | |
|---|---|
| Height | 5' 10" (1.778 m) -JB |
| Height Method | Stated -JB |
| Weight | 146 lb (66.8 kg) -JB |

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Flowsheet (all recorded) (continued)

### Vital Signs - Mon July 02, 2012 (continued)

| | |
|---|---|
| Weight Method | Stated -JB |
| Pain | |
| Pain Location | Arm -JB |
| Pain Orientation | Right -JB |

### Mechanism Of Injury - Mon July 02, 2012

| | |
|---|---|
| Penetrating | |
| Penetrating | Yes -JB |
| Injury Type | Gunshot Wound -JB |

### Pain Assessment - Mon July 02, 2012

| | |
|---|---|
| Pain Assessment | |
| Pain Score | SEVEN -JB |
| Pain Location | Arm -JB |
| Pain Orientation | Right -JB |

### Primary Assessment - Mon July 02, 2012

| | |
|---|---|
| Airway | |
| Obstructed? | Patent -JB |
| Breathing | |
| Breathing Effort | Spontaneous -JB |
| Breath Sounds Right | Clear -JB |
| Breath Sounds Left | Clear -JB |
| Circulation | |
| Skin | WDL -JB |
| Disability | |
| Responsiveness | Alert -JB |

### Secondary Assessment - Mon July 02, 2012

| | |
|---|---|
| Glasgow Coma Scale | |
| Eye Opening | 4 -JB |
| Best Verbal Response | 5 -JB |
| Best Motor Response | 6 -JB |
| Glasgow Coma Scale Score | 15 -JB |
| Head to Toe | |
| Skin/Musculoskeletal | See Annotated Image -JB |

### TRAUMA ACTIVATION - Mon July 02, 2012

| | |
|---|---|
| Trauma Activation | |
| Trauma Pre-Hospital Notification | Yes -JB |
| Level of Notification | Level 2 -JB |

### Anthropometrics - Mon July 02, 2012

| | |
|---|---|
| Anthropometrics | |
| Weight Change | 100 -JB |

### Arrival Documentation - Mon July 02, 2012

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Arrival Documentation - Mon July 02, 2012 (continued)

### Triage Call

| Triage Call | Call 1x -JB |
| OTHER | |
| Triage Start | Start -JB |

## Abuse Indicators - Mon July 02, 2012

### Screening

| Screening (WDL) | WDL -JB |

## Departure Condition - Mon July 02, 2012

### Departure Condition

| Departure Condition | Good -OB |
| Mobility at Departure | Ambulatory -OB |
| Departure Acuity | 4 -OB |
| Patient Teaching | Discharge instructions reviewed -OB |
| Departure Mode | By self -OB |

### Vital Signs

| Temp | 98.6 °F (37 °C) -OB |
| Temp src | Oral -OB |
| Pulse | 78 -OB |
| Heart Rate Source | Monitor -OB |
| Resp | 18 -OB |
| BP | 138/70 -OB |
| BP Location | Left arm -OB |
| BP Method | Automatic -OB |
| Patient Position | Sitting -OB |
| Currently in Pain | Yes -OB |

### Pain Assessment

| Pain Score | Two -OB |

### Oxygen Therapy

| SpO2 | 99 % -OB |
| O2 Device | None (Room air) -OB |

## Trauma Outcome - Mon July 02, 2012

### Trauma Outcome

| Trauma Survival | Yes -JB |

## Patient Belongings - Mon July 02, 2012

### Patient Belongings at Bedside

| Belongings at Bedside | Jewelry -DM |
| Necklace 1 | --- 1 black beaded necklace; held in security -DM |
| Bracelet 1 | --- 1 beaded balck bracelet(plastic) held in security -DM |
| Clothing | --- 1 pr. blue jeans; 1 pr. brown shoes; 1 pr. grey underwear; 1 beige shirt; 1 brown belt.(ALL CLOTHING CUT OFF) OFFICER ANIANO, BADGE # 106 HAS POSSESSION OF THESE CUT OFF BELONGINGS -DM |

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## Patient Belongings - Mon July 02, 2012 (continued)

### Patient Belongings Sent to Safe

| Belongings Sent to Safe | Other valuables 1 black necklace; 1 black beaded bracelet; 1master card : 9 metro cards 1 Aetna card; 1 Empire card; $26.00 cash -DM |
|---|---|
| Valuables Envelope # | --- 610027 -DM |

## Code Vitals - Mon July 02, 2012

### Vitals

| Temp | 98 °F (36.7 °C) -JB |
|---|---|
| Pulse | 98 -JB |
| Resp | 20 -JB |
| BP | 135/77 -JB |

### Vital Signs

| Heart Rate Source | Monitor -JB |
|---|---|
| Patient Position | Lying -JB |

## Vital Signs - Mon July 02, 2012

### Vital Signs

| Temp | 98.4 °F (36.9 °C) -PR |
|---|---|
| Temp src | Oral -PR |
| Pulse | 84 -PR |
| Resp | 20 -PR |
| BP | 150/77 -PR |
| BP Location | Right arm -PR |
| BP Method | Automatic -PR |
| Patient Position | Lying -PR |

### OTHER

| Pain Score | Zero -PR |
|---|---|

### Oxygen Therapy

| SpO2 | 98 % -PR |
|---|---|
| O2 Device | None (Room air) -PR |

### Patient Observation

| Observations | Resting , Denies any acute distress. -PR |
|---|---|

## Lines/Drains/Airways - Mon July 02, 2012

#### Peripheral IV 07/02/12 Left Antecubital

| IV Properties | Placement Date: 07/02/12 -JB Placement Time: 0400 -JB Size (Gauge): 18 G -JB Orientation: Left -JB Location: Antecubital -JB Site Prep: Alcohol -JB Removal/Final Assessment Date: 07/02/12 -OB Removal/Final Assessment Time: 1431 -OB |
|---|---|

#### Peripheral IV 07/02/12 Right Antecubital

| IV Properties | Placement Date: 07/02/12 -JB Placement Time: 0400 -JB Size (Gauge): 18 G -JB Orientation: Right -JB Location: Antecubital -JB Site Prep: Alcohol -JB Removal/Final Assessment Date: 07/02/12 -OB Removal/Final Assessment Time: 1431 -OB |
|---|---|

## User Key

(r) = Recorded By, (t) = Taken By, (c) = Cosigned By

| DM | Donna Mc Garrell | 10/12/11 - |
|---|---|---|
| JB | Jerome Badov, RN | 08/01/11 - 04/01/14 |
| OB | Odette Brady, RN | 08/01/11 - 04/01/14 |
| PR | Ping Ren, RN | 07/29/11 - 04/01/14 |

## Flowsheet Notes

No notes of this type exist for this encounter.

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

Physician Notes (continued)

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832
Encounter Level Documents

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012; D/C: 7/2/2012

Scan on 7/2/2012: NON BILLABLE CLOSEOUT (below)



JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

Scan on 7/2/2012 (below)



JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

## ED Notes (continued)

ED Provider Notes by Trevor Jean Jacques, MD at 7/2/2012 6:09 AM (continued)

Version 1 of 1

- Smokeless tobacco:          Not on file
- Alcohol Use:

Review of Systems
Unable to perform ROS

## Physical Exam

BP 135/77 | Pulse 98 | Temp 98 °F (36.7 °C) | Resp 20 | Ht 5' 10" (1.778 m) | Wt 145 lb (65.772 kg) | BMI 20.81 kg/m2

Physical Exam
Vitals reviewed.

## ED Course

Procedures

MDM

## Assessment

## Plan

Trevor Jean Jacques, MD
07/02/12 0610

Electronically Signed by Trevor Jean Jacques, MD on 7/2/2012 6:10 AM

## Discharge Summary - Encounter Notes

Discharge Summary by Sebastian Schubl, MD at 7/2/2012 2:06 PM

Version 1 of 1

| Author: Sebastian Schubl, MD | Service: --- | Author Type: Physician |
| Filed: 7/2/2012 2:39 PM | Date of Service: 7/2/2012 2:06 PM | Status: Signed |
| Editor: Sebastian Schubl, MD (Physician) | | |
| Related Notes: Related Note by Jonathan Abelson, MD (Resident) filed at 7/2/2012 2:09 PM | | |

### Surgical Attending Note

There is no problem list on file for this patient.

Kirk King seen and examined, chart reviewed. Kirk King is deemed ready for discharge with services arranged as per the Discharge Summary notes above.

Following services provided in discharge planning by the medical team:
-final examination

Printed on 5/20/21 2:49 PM

JAMAICA HOSPITAL MED.CTR
8900 Van Wyck Expwy
Jamaica NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012



JAMAICA HOSPITAL MED CTR
8900 Van Wyck Expwy
Jamaica, NY 11418-2832

King, Kirk
MRN: 1996311, DOB: 10/4/1973, Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

Order-Level Documents:
There are no order-level documents.

Encounter-Level E-Signatures:
No documentation.

**END OF REPORT**

# EXHIBIT - G

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE OF IMMIGRATION REVIEW
IMMIGRATION COURT

---

In the Matter of:

Kirk King

Respondent / Pro Se

In removal proceedings

Affidavit In Support of U Visa Application
File No: A# 039-746-517

---

AFFIDAVIT

Kirk King, being duly sworn, deposes and says:

1. I am over the age of 18 years old and currently reside in immigration custody at Buffalo Federal Detention Facility (BFDF); 4250 federal Drive, Batavia , New York 14020. I am competent to write the foregoing with intent and understanding of purpose and believe the following statement, testimony, allegation and contents herein to be true, correct and complete, to the best of my knowledge and belief.

2. I am the petitioner in the above - entitled proceeding. I make this affidavit in support of all my Immigration motions.

3. Petitioner was shot once in the upper right arm which left him with scar tissue.

4. Petitioner was shot once in the right hand which left me with significant scar tissue and nerve damage. I unable to close my hand completely and I have trouble lifting things that are heavy.

5. Petitioner was shot in the stomach which left him with scar tissue.

6. Petitioner was shot twice in the left calf. This left Petitioner with significant scar tissue.

1.

A# 039-746-517

7. Petitioner suffers significant pain as a results of these wounds. Petitioner's pain is ongoing.

I declare under the penalty of perjury that the foregoing is true and correct.

Sworn to before me on this

17 day of April 2023

Notary Public

Respectfully Submitted,

Kirk King .

KAYCEE LEIGH EVANS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01EV6413806
Qualified in Genesee County
Commission Expires February 01, 2025

# EXHIBIT - H

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE OF IMMIGRATION REVIEW
IMMIGRATION COURT

In the Matter of:

Kirk King

Respondent / Pro Se

In removal proceedings

Affidavit Of Petitioner's Sexual Orientation
File No: A# 039-746-517

AFFIDAVIT

Kirk King, being duly sworn, deposes and says:

1. I am over the age of 18 years old and currently reside in immigration custody at Buffalo Federal Detention Facility (BFDF); 4250 federal Drive, Batavia , New York 14020. I am competent to write the foregoing with intent and understanding of purpose and believe the following statement, testimony, allegation and contents herein to be true, correct and complete, to the best of my knowledge and belief.

2. I am the petitioner in the above - entitled proceeding. I make this affidavit in support of all my Immigration motions.

3. Petitioner is not and has never been represented by Counsel in his Deportation proceedings.

4. Petitioner fears of being returned to his home Country of Jamaica. Petitioner fears that the will be killed and tortured due to his sexual orientation, his refusal to pay extortion money, and because a member of the Gaza Empire Jamaican gang was prosecuted for shooting Petitioner.

5. Petitioner is a bi-sexual male and was subject to extortion and was shot when he did not pay the money that was demanded from him due to his sexual orientation.

6. Petition was shot five (5) times and blame for a crime that he did not commit due to refusing to pay extortion money to Jamaican gang members who found out that petitioner was a bi-sexual.

1.

A# 039-746-517

7. Petitioner is applying for Asylum under the Convention Against Torture (CAT). Petitioner needs his case to be reopened for his Asylum claim to be reviewed.

8. Petitioner faces certain death at the hands of a international criminal organization if he is returned to his home country of Jamaica because he refused to pay extortion money to the "Gaza Empire" who found out petitioner was bi-sexual.

9. Petitioner has already been shot five (5) times by members of this international criminal organization the "Gaza Empire" and has been blamed and convicted for a crime that was committed by members of this international criminal organization.

10. Petitioner was told that he will be killed if he is returned to Jamaica. Petitioner fears this because no one will help him once his sexual orientation is revealed by the members of this gang in Jamaica.

I declare under the penalty of perjury that the foregoing is true and correct.

Sworn to before me on this

17 day of April 2023

Notary Public

KAYCEE LEIGH EVANS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01EV6413806
Qualified in Genesee County
Commission Expires February 01, 2025

Respectfully Submitted,

Kirk King

2.

# EXHIBIT - I





# Adelphi University

## Garden City, New York

### School of Social Work

Know all persons by these presents, That

**Kirk K. King**

having completed the course of study and satisfied the requirements of this University for the degree of

### Master of Social Work

is hereby admitted to that degree with all the Rights, Privileges, Honors and Marks of Distinction thereto pertaining here or elsewhere.

In Witness Whereof, the seal of the University and the signatures of its officers have been hereto affixed this thirty-first day of January, two thousand and six.

President of the University

Chairman of the Board of Trustees



Adelphi University

Garden City, New York

School of Social Work

Know all persons by these presents, That

Kirk K. King

having completed the course of study and satisfied the requirements of this University

for the degree of

Bachelor of Social Work

is hereby admitted to that degree with all the Rights, Privileges, Honors and Marks of Distinction thereto pertaining here or elsewhere.

In Witness Whereof, the seal of the University and the signatures of its officers have been hereto affixed this thirty-first day of May, two thousand and four.

President of the University

Dean

Chairman of the Board of Trustees

ADELPHI UNIVERSITY · VITA SINE LITTERIS MORS EST · 1896 · The Truth Shall Make Us Free

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# CERTIFICATE OF MERIT

022-009-15

**THIS IS TO CERTIFY THAT**

Kirk King 13A4783

Has Successfully Completed a 40 hour course in Basic Legal Research and Law Library Management

At Clinton Annex Correctional Facility

Issued This 23rd Day of December 2015

DOCCS Supervisor ... and Law Library Coordinator

Superintendent

TAB-3

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK

COUNTY OF DUCHESS )

I, KIRK KING being duly sworn deposes and says that on the below indicated date of notarization, I served a true copy of: ARTICLE 78 RECORD ON APPEAL AND APPEAL BRIEF

on the following parties:

SUPREME COURT STATE OF NEW YORK
APPELLATE DIVISION SECOND DEPT.
45 MONROE PLACE
BROOKLYN, NEW YORK 11201

JOHN M. CASTELLANO
QUEENS COUNTY FOILS APPEALS OFFICER
125 01 QUEENS BLVD.
KEW GARDENS, NEW YORK 11415

by placing said documents in a properly addressed envelope with postage prepaid and placing said envelope in the prison mailbox located in the DOWNSTATE Correctional Facility.

Dated MARCH 27TH 20 20

Respectfully Submitted,

_Kirk King_

Sworn to before me on this
27th day of March 2022

_J. Carmichael_
NOTARY PUBLIC



JUANITA CARMICHAEL
Notary Public, State of New York
No. 01CA6122155
Qualified in Dutchess County
Commission Expires Feb. 07, 2024

APPELLATE DIVISION OF THE STATE OF NEW YORK
SECOND JUDICIAL DEPARTMENT

Appellant,

-against-

M. Castellano,

Respondent,

APPELLANT'S BRIEF    pro se.

Kirk King
Appellant pro se
Downstate C.F.
Box F
Red Schoolhouse Road
Fishkill, New York 12524

Application Pursuant to CPLR §700[?]

Order Pursuant to Rule 12[?]

Preliminary Statement ................................. 1

Questions Presented ................................... 2

Statement of Facts .................................... 3

Argument Point 1 ...................................... 8

Argument Point 2 ...................................... 9

Conclusion ............................................ 10

Certificate of Compliance ............................. 13
                                                        14

TABLE OF CONTENTS

i

TABLE OF [...]

Matter of Rattley v. New York City Police Dept., 96 NY.2d 873          page [...]

People v. Stover, 174 AD.3d 1150 (2019)                                page 9

Bu[...]y v. County of Putnam, 173 AD.3d 729 (1991)                     page 9.

[...]one v. Suffolk County Police Dept., 99 AD.3d 785 (2012)           page 9.

[...]li v. New York City Police Dept., 89 NY.2d 367 (1996)             page 9 and 12.

[...]rty v. Nassau County Sheriff Dept., 69 AD.3d 662 (2010)           page 9 and 12.

Espitito v. Vance, 39 Misc.3d 1214(A) (2013)                           page 9.

                                                                       page 11.

## EXHIBITS

Exhibit A:      Trial Transcripts pages 311 to 313.

Exhibit B:      Pages of Medical Record turned over at Trial.

Exhibit C:      The Respondent's Opposition Petition.

POINT 1

POINTS

THE RESPONDENT ACTED IN VIOLATION OF LAWFUL PROCEDURE, WAS AFFECTED BY ERROR OF LAW, OR WAS ARBITRARY AND CAPRICIOUS OR ABUSED DISCRETION WHEN THE DENIED APPELLANT ACCESS TO RECORDS THAT WERE IN THEIR CONTROL, WHEN THEY ENTERED THESE RECORDS AS EVIDENCE AGAINST APPELLANT AT HIS TRIAL UNDER CPLR 94518 AS A TRUE AND CERTIFIED COPY OF THE VICTIM'S MEDICAL RECORD

POINT 2

APPELLANT'S PROOF THAT THE X-RAYS WERE TAKEN AND PART OF THE CERTIFIED COPY OF ANDRE BLACK'S MEDICAL RECORD ENTERED INTO EVIDENCE AGAINST APPELLANT WARRANT AN IN-CAMERA INSPECTION OF THESE RECORDS AND  A HEARING BECAUSE THESE X-RAYS WERE USED AS PRIMA FACIA EVIDENCE AGAINSTS APPELLANT AT HIS TIRAL AND CAN PROVE APPELLANT'S ACTUAL/FACTUAL INNOCENCE.

Appellant

-against-

Certification
Pursuant to CPLR 2105

Appellate Division
Docket No: 2019-10516

M. Castellano P.O.I.B. Appeals Officer,

Respondent,

I Kirk King, the appellant, hereby certify pursuant to CPLR 2105 that the papers in annexed Article 78 have been personally compared be me with the originals on file in office of:

the clerk of the Supreme Court, Queens County and that I found them to be true and complete copies of those originals.

to before me on this
day of march 2020

_Carmichael_

ty Public

_Kirk King_

Kirk King
13-A-4783

Downstate correctional Facility

Box F
Red Schoolhouse Road
Fishkill, New York 12524

JUANITA CARMICHAEL
Notary Public, State of New York
No. 01CA6122155
Qualified in Dutchess County
Commission Expires Feb. 07, 20__

APPELLATE DIVISION:SECOND JUDICIAL DEPARTMENT

Kirk King,

Appellant

against

Appellate Division

Docket No.: 2019 10526

John M. Castellano FOIL Appeals Officer,

Respondent.

## STATEMENT PURSUANT TO RULE 5532

1. The Index Number in the Court below is 1463/19.

2. The full names of the original parties were Kirk King against John M. Castellano

3. There has been no changes to the parties on this appeal.

4. The action was in the District Attorney's Office, Queens County.

5. This action was commenced by the filing of a Freedom Of Information Law request according to Article 6 of the Public Officer's Law.

   This appeal is from a judgement of denial of Appellant's Article 78 seeking documents that will prove his actual/ factual innocence.

6. This is an appeal from a judgement of denial rendered on May 3rd, 2019.

7. Appellant will be appealing on the record

## PRELIMINARY STATEMENT

On October 15th, 2013, after a jury trial appellant was convicted of attempted murder in the second degree, attempted a assault in the first degree, assault in the second degree and two counts of criminal possession of a weapon in the second degree. At appellant's trial a 45. caliber hand gun and the victim's medical records were entered as evidence as proof of appellant's guilt. Appellant was sentenced to 13 years incarceration.

2

QUESTIONS PRESENTED

QUESTION 1

WHETHER THE RESPONDENT ACTED IN VIOLATION OF LAWFUL PROCEDURE, WAS AFFECTED BY ERROR OF LAW, OR WAS ARBITRARY AND CAPRICIOUS OR ABUSED DISCREATION WHEN THEY DENIED APPELLANT ACCESS TO RECORDS THEY WERE IN THEIR CONTROL, WHEN THEY ENTERED THESE RECORDS AS EVIDENCE AGAINST APPELLANT AT HIS TRIAL UNDER CPLR §4518 AS A TRUE AND CERTIFIED COPY OF THE VICTIMS MEDICAL RECORD.

QUESTION 2

WHETHER APPELLANT'S PROOF THAT THE X-RAYS WERE TAKEN AND PART OF THE CERTIFIED COPY OF ANDRE BLACK'S MEDICAL RECORD ENTERED INTO EVIDENCE AGAINST APPELLANT WARRANT AN IN CAMERA INSPECTION OF THESE RECORDS AND A HEARING BECAUSE THESE X-RAYS WERE USED AS PRIMA FICIA EVIDENCE AGAINST APPELLANT AT HIS TRIAL AND CAN PROVE APPELLANT'S ACTUAL/FACTUAL INNOCENCE.

3

STATEMENT OF FACTS

On June 28th, 2018, Appellant submitted a FOIL request for information of the spent shell casings/paperis taken from the .45 caliber hand gun he was accused of using to shoot the victim. Appellant also requested x-rays of the victim taken at the hospital the night of the incident. These x-rays according to the victim's testimony and the copy of the medical records turned over to appellant, show a intact bullet lodged in the victim's hip.

On September 10th, 2018, Records Access Officer Anastasia Spanakos notified appellant that his request for these documents were being processed.

On October 18th, 2018, appellant sent Records Access Officer Spanakos copies of the trial minutes where the x-rays were testified to and where the medical records were moved into evidence against appellant. Appellant also sent copies of parts of the medical records that show that the x-rays were taken and were part of the record of the victim's treatment at the hospital the night of the incident.

On December 4th, 2018, Records Access Officer Spanakos sent appellant a denial to his FOIL request stating that the x-rays can not be disclosed and could not be found in the case file.

On December 17th, 2018, appellant appealed the denial of his FOIL request to FOIL Appeals Officer John M. Castellano.

On January 11th, 2019, appellant's FOIL appeal was denied by FOIL Appeals Officer John M. Castellano, in which he concurred with Records Access Officer Spanakos that medical records are exempt from disclosure under FOIL and that the x-rays could not be found within the case file.

On January 23rd, 2019, appellant commenced his Article 78 proceedings under Public Officers Law 89(2)(c)i, which states that "Disclosure shall not be construed as an unwarranted invasion of personal privacy pursuant to paragraphs of Public Officers Law 87(2)(b) and 89(2), when identifying details are redacted.

On may 1st, 2019, Respondents were served with Appellant's verified Petition seeking order compelling the Queens County District Attorney's Office to show cause as to

4

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . referred for in camera inspection by the court
hearing.

On May 28th, 2019, appellant was served with the respondents answer. This was submitted by Assistant District Attorney Eugene J. Dirks, who concurred with FOIL Appeals Officer John. M. Castellano that the x-rays were not disclosable and that they could not be located in the case file and that even if they were located they could not be disclosed to appellant.

At a hearing held on May 30th, 2019, Judge Rudolph E. Greco Jr., ruled in favor of the Queens County District Attorney and denied appellant's Article 78. He concurred that the x-rays were not disclosable and that they could not be located in the case file. He also stated that the partial disclosure of some of the medical records to appellant was sufficient.

POINT 2

THE PEOPLE ACTED IN VIOLATION OF LAWFUL PROCEDURE, WAS AFFECTED BY ERROR OF LAW OR WAS ARBITRARY AND CAPRICIOUS OR ABUSED DISCRETION WHEN THEY DENIED APPELLANT ACCESS TO RECORDS THAT WERE IN THEIR CONTROL WHEN THEY ENTERED THESE RECORDS AS EVIDENCE AGAINST APPELLANT AT HIS TRIAL UNDER CPLR 4518, AS A TRUE CERTIFIED COPY OF THE VICTIM'S MEDICAL RECORD.

Appellant has articulated a demonstrable factual basis to support the contention that the requested documents exist and were in the control of the Queens County District Attorney's Office. Appellant provided respondent with trial transcripts where the victim gives testimony to the x-rays being taken as part of his treatment at Jamaica Hospital on the night of the incident, July 2nd, 2012. The x-rays are undeniably part of the medical record. These x-rays were taken as part of the treatment and diagnosis for a gun shot wound. The x-rays show a bullet lodged in the victim. The victim testified that the x-rays were taken to see where the bullet was located and if it could be removed. See Exhibit A Trial Transcript pages 311-312.

The respondent claims that medical records are exempt from disclosure according to Public Officers Law §87(2)(a)(b) and §89(2), due to unwarranted invasion of privacy. The respondent also certified that the x-rays are not within their records citing Matter of Rattley v. New York City Police Dept., 96 NY.2d 873. However, Public Officers Law §89(2)(c)i states that "Disclosure shall not be construed to constitute an unwarranted invasion of personal privacy pursuant to paragraphs of Public Officers Law §87(2)(a)(b) and §89(2), when identifying details are redacted". These medical records that respondent now claims are private were entered as evidence against appellant by Assistant District Attorney Higgins at trial after they were redacted and after the

6

Appellant provided respondent with the minutes of the trial in Albany where the victim testifies to the following while on direct examination by ADA Higgins.

Q:     What was done at Jamaica Hospital?

A:     I was attended to, they told me the bullet couldn't come out my leg and that was it, they sent me home with a prescription

Q:     Describe what was done to you at the Hospital?

A:     In the hospital they cut my clothes off, dressed the wound, gave me x-rays about four x-rays to see where the bullet was, then they told me I might have to do surgery. Then I didn't do surgery, they told me where the bullet was it makes no sense to do surgery. I just have to wait until it travels to a place where it would come out on it's own.

See Exhibit A Trial Transcript pages 311-312.

Appellant also provided respondent with the parts of the medical record that were given to appellant at his trial. These pages show that the x-rays were taken and then reviewed by J. Abelson MD on July 2nd, 2012 at Jamaica Hospital. Doctor Abelson states that "Patient was treated for gun shot wound, there was not exit wound and the patient CT Scans and x-rays were personally reviewed by myself, order to determine if any significant injury warranting surgical intervention or SICU care is warranted"

See Exhibit B Pages of Medical Records turned over at Trial.

These pages show where the x-rays were taken of the victim's right hip, x-ray number [17875134] "Impression: Bullet adjacent to right proximal femur, no fracture", X-Ray number [17875133] taken of the pelvis anteroposterior "Impression: Bullet projects over the right proximal femur with no fracture, dislocation or other acute finding'"

See Exhibit B pages of Medical Records turned over at Trial.

Appellant has clearly demonstrated a factual basis that these x-rays were taken based

7

... the testimony of Andre Black and the rest of the medical record that was turned over to the defense. The record supports appellant's contention that the x-rays are part of the victim's medical record.

The respondent accuses appellant of making "bald assertions" and that appellant has misconstrued the documents he has presented to support his claim. See Exhibit ... Respondent's Opposition Petition. The record shows that after testimony was given to ... x-rays being taken as part of the victim's treatment at Jamaica Hospital a certified copy of the victim's medical record was entered into evidence against appellant. Appellant again points to the trial transcripts where Assistant District Attorney Higgins stops his direct questioning of the victim to address the court.

Mr. Higgins: Judge, I'm sorry, I didn't get this premarked. I would like to offer into evidence the Certified Medical Records of Andre Black from Jamaica Hospital from July 2, 2012.

The Court: This will be people's Exhibit 9?

Mr. Higgins: Yes, Sir.

The Court: It may be marked, are you moving them in?

Mr. Higgins: Yes, Pursuant to CPLR §4518, Your Honor.

The Court: Counsel, have you seen them?

Mr. Lobosco: Yes, no objections.

The Court: Without objection the medical records can be moved in evidence.

(People's Exhibit 9, Medical Records, marked and moved into evidence.)

Mr. Higgins: For the record, there are some redactions and personal information on those medical records.

The Court: Noted.

See Exhibit A Trial Transcript page 313.

Here appellant demonstrates that the people entered a certified copy of the

8

... ... ... ... records at trial. This certified copy included the x-rays that were taken as part of treating Andre Black. CPLR §4518 states that "Medical records should be true and accurate representation of the record".

The court held that "X-rays that were part of the certified copy of the victim's medical record were admissible under the business records exception to the hearsay rule in a prosecution for assault". See People v. Staver, 174 AD.3d 1130 (2019). Also See Maxcy v. County of Putnam, 178 AD.2d 729 (1991). The respondent is clearly in violation of lawful procedure, was affected by error of law, or was arbitrary and capricious or abused discretion, when they denied appellant access to these x-rays. Appellant has asked the respondent to provide redacted copies of these x-rays, which were clearly in the control of the respondent and entered into evidence as part of the Andre Black's medical record at appellant's trial.

Petitioner correctly contends "Even where an entity properly certifies that it was unable to locate requested documents after performing a diligent search, the person requesting the documents may nevertheless be entitled to a hearing on the issue where he or she can "Articulate a demonstrable factual basis to support the contention that requested documents existed and were in the entity's control." See Oddone v. Suffolk County Police Dept., 96 AD.3d 785 (2012). Also See Gould v. New York City Police Dept., 89 NY.2d 267 (1996). Also See Curry v. Nassau County Sheriff Dept., 99 AD.3d 662 (2010). Appellant has clearly shown using the record that the x-rays were taken and was part of the victim's medical record, a certified copy of which was in the control of the respondent at appellant's trial.

COURT

APPELLANT'S PROOF THAT THE X-RAYS WERE TAKEN AND PART OF THE CERTIFIED COPY OF ANDRE BLACK'S MEDICAL RECORD ENTERED INTO EVIDENCE AGAINST APPELLANT. WARRANTS AN IN-CAMERA INSPECTION OF THESE RECORDS AND A HEARING BECAUSE THESE X RAYS WERE HELD AS PRIMA FACIA EVIDENCE AGAINST APPELLANT, ALSO BECAUSE THESE X-RAYS CAN PROVE APPELLANT'S ACTUAL/FACTUAL INNOCENCE.

The respondent in his answering brief submitted by Assistant District Attorney Eugene J. Dirks, dated May 23rd, 2019, states that "X-rays is undeniably part of the medical record-it would have been taken during the victim's treatment at the hospital. See Exhibit C The Respondent's Opposition Petition page 7. How then can the respondent now claim that they do not have the x-rays as they were part of the certified copy of the medical record entered into evidence against appellant. The medical records was entered under CPLR §4518 which states that "Records should be a true copy of the original record". Therefore, the x-rays were part of the original medical record and was included in the certified copy entered into evidence against appellant at trial.

Public Officers Law §89(2)(c)i state that "Medical records are allowed for disclosure when personal identifying details have been redacted". At appellant's trial, Assistant District Attorney Higgins had this exchange with the court as he entered the certified copy of Andre Black's medical record into evidence:

The Court Officer : People's Exhibit 9 marked in evidence, your Honor.

The Court : Thank you.

(People's Exhibit 9, Medical Records, marked and received into evidence.)

Mr. Higgins : For the record, there are some redactions on personal information on those medical records.

10

See Exhibit A Trial Transcript page 318

This certified copy of the medical record including the x-rays have been redacted and entered as prima facie evidence against appellant. These medical records including the x-rays were used to prove the accusations of which appellant stood trial. Appellant should have been given the opportunity to inspect these x-rays at his trial. Appellant was only given parts of the certified copy of the medical record, which spoke to the treatment that the victim testified to receiving at Jamaica Hospital on July 2nd, 2012. Appellant's case was severely impacted by the introduction of the this testimony and the medical records about his treatment at the hospital. Appellant was severely impacted by the witholding of the x-rays, which were part of the certified copy of the victim's medical record.

County Law §677(3)(b) provides that "Upon proper application of any person how is or may be affected in a civil or criminal action by the contents of the record of any investigation, or upon application of any person having substantial interest therein, an order may be made by a court of record, or by the Justice of the Supreme Court that the record be made available for inspection, or that a transcript thereof be furnished or both". The court ruled that "Appellant had a right to view autopsy report because he may be affected by it's contents in his criminal proceedings". See Espirita v. Vance, 39 Misc.3d 1214(A) (2013).

This ruling highlights the belief by the court that the accused or convicted has to view the documents in an accusatory record, that may affect said appellant. Appellant has substantial interest in these x-rays that were part of the certified copy of the victim's medical record. These x-rays can prove appellant's actual/factual innocence of shooting Andre Black.

11

The court has held that "even where an entity purports to identify the specific
to locate requested documents after performing a diligent search, the person requesting
the documents may nevertheless be entitled to a hearing on the issue where he or she
can articulate a demonstrable factual basis to support the contention the requested
documents existed and were within the entity's control". See Oxdone v. Suffolk County
Police Dept. 96 AD.3d 758 (2012). Also See Gould v. New York City Police Dept. 89 N.Y.
67 (1996).

The record clearly supports appellant's contention that the x-rays were part of the
victim's medical record from Jamaica Hospital on the night of July 2nd, 2012. The record
also shows that the respondent had a certified copy of the medical record. This
certified "true" copy contained copies of the x-rays taken of the victim during his
treatment.  According to CPLR 54518 the respondent entered a true copy of André Black
medical record into evidence against appellant after redactions. This copy of the
contained x-rays showing an intact bullet lodged in the victim which is the only
bullet attributed as coming from the gun petitioner is charged with using and
possessing.

Conclusion

For the reasons stated above, the X rays should be subpoenaed and produced for in camera inspection by this court. A hearing should be ordered and held to determine if redacted copies of these X rays should be made available to appellant for inspection. Respondent should be ordered to comply with lawful procedure.

and all further relief this court deems as proper.

Respectfully Submitted,

Kirk King

Kirk King

Appellant pro se

Dated: May 23rd, 2020

Certificate of Compliance

Pursuant to 22 NYCRR 1250.8 §(f), the foregoing was prepared on Downstate Correctional Facility Law Library Type Writer.

Margin: 10 spaces

Point Size: 12

Line Spacing: Double

This brief was prepared to appellant's best abilities.

Respectfully Submitted,

Kirk King

Appellant pro se

# EXHIBIT



Block People Direct

```
 1        A       No, my cousin, my other family members that I was
 2   with ran back and start attending to my wound, then he called
 3   the ambulance.
 4        Q       Where did the person that shot you go?
 5        A       He ran the other way towards Beach 66 Street.
 6        Q       Is the bodega near Beach 67?
 7        A       Yes.
 8        Q       Okay.
 9                Where did Marvin Mitchell go after he fired his
10   weapon?
11        A       My cousin jumped on the bike and rode off.
12        Q       Did there come a time that the police arrived?
13        A       Yes, the police arrived maybe five to ten minutes
14   after.
15        Q       And what happened then?
16        A       They asked me did I get shot anywhere else, I told
17   them no.  They checked to see if I got shot anywhere else before
18   they put me in the ambulance, and then they brought me to
19   Jamaica Hospital.
20        Q       What happened at Jamaica Hospital?
21        A       I was attended to, they told me that the bullet
22   couldn't come out my leg, and that was it, they sent me home
23   with a prescription.
24        Q       Describe what was done to you at the hospital?
25        A       In the hospital they cut my clothes off, they dressed
```

Black People Direct

1  the wound, gave me X rays, about four X-rays to see where the
2  bullet was, then they told me I might have to do surgery. When
3  I didn't do surgery, they told me where the bullet was it made
4  no sense to do surgery, I just have to wait until it travels to
5  a place where it would come out on its own.

6      Q    Describe how you were feeling while you were at the
7  hospital?

8      A    I was in pain. They had the man that shot me right
9  next to me.

10     Q    When you left the hospital, was it the same day
11     A    Yes, I left the hospital around five in the
12  afternoon.

13     Q    When you left the hospital, did you need anything to
14  help you walk or no?

15     A    Yes, I had to have two crutches

16     Q    How long did you have to use the crutches for?

17     A    Two months.

18     Q    Were you on any pain medication?

19     A    Yes, they gave me Oxycodone.

20     Q    How long were you on that medication for?

21     A    For about two weeks because it started to make my
22  stomach feel bad.

23    · Q    How long did the pain from the gunshot wound last?

24     A    It still hurts up to this day when it rains. When I
25  walk, it still hurts

Black People Direct                                    713

1          MR. HIGGINS:  Judge, I'm sorry.  I didn't get this

2     premarked.  I would like to offer into evidence the

3     certified medical records of Andre Black from Jamaica

4     Hospital from July 2, 2015.

5          THE COURT:  This will be People's Exhibit 9?

6          MR. HIGGINS:  Yes, sir.

7          THE COURT:  It may be marked.  Are you moving them

8     in?

9          MR. HIGGINS:  Yes, pursuant to CPLR 45 18, your

10    Honor.

11         THE COURT:  Counsel, have you seen them?

12         MR. LOBOSCO:  Yes, no objection.

13         THE COURT:  Without objection the medical records

14    can be moved in evidence.

15         THE COURT OFFICER:  People's Exhibit 9 marked in

16    evidence, your Honor.

17         THE COURT:  Thank you.

18         (People's Exhibit 9, medical records, marked and

19    received into evidence.)

20         MR. HIGGINS:  For the record, there are some

21    redactions and personal information on those medical

22    records.

23         THE COURT:  Noted.

24         MR. HIGGINS:  Thank you.

25    Q    Mr. Black, earlier today in my office did you view

EXHIBIT



... HOSPITAL, M.D., et al.
6905 Van Wyck Expwy
JAMAICA, NY 11418-2806

BLACK, ANDRE
MRN: 1896306
DOB:
Age:   Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

Musculoskeletal:
GSW to the right hip, not actively bleeding. No exit wound seen. Normal ROM
throughout. 5/5 strength throughout. Swollen right hip.
Neurological: He is alert and oriented to person, place, and time.
Skin: Skin is warm and dry.

Disposition: Final discharge disposition not confirmed
Patient Instructions:
Use crutches as necessary

Activity: activity as tolerated and no driving for today
· Diet: regular diet
Wound Care: keep wound clean and dry
Follow-up with Dr. Schubl in 1 week.
Signed:
Jonathan Abelson, MD
718-206-6000 or 6777
Beeper #: 12904
7/2/2012
9:36 AM

Electronically signed by Sebastian Schubl, MD on 7/2/2012 11:00 PM

07/02/12 1443 D/C Summaries signed by Jonathan Abelson, MD

H&P - Encounter Notes

H&P signed by Sebastian Schubl, MD at 07/02/12 1419

| Author | Sebastian Schubl, MD | Service | (none) | Author Type | Physician |
| Filed | 07/02/12 1419 | Note Time | 07/02/12 0343 | | |
| Related Notes | Related Note by Grant Garcia, MD filed at 07/02/12 0344 | | | | |

Surgical Attending H&P Note

Andre Black suffers from the following:
Patient Active Problem List
Diagnoses
· GSW (gunshot wound)
Entered on 8/17/2012 3:49 PM

BLACK, ANDRE
MRN: 1999309
DOB: (b)(6) Sex: M
Adm: 7/2/2012, D/C: 7/2/2012

History, examination, laboratory results, and imaging studies were reviewed.
In particular the patient's CT scans and X-rays were personally reviewed by myself in order to determine if any significant injury warranting surgical intervention or SICU care is warranted.

No past medical history on file.

No past surgical history on file.
A complete Review of Systems was discussed including all systems as below:
General ROS: non-contributory except what is noted in above note/HPI
Psychological ROS: non-contributory except what is noted in above note/HPI
Ophthalmic ROS: non-contributory except what is noted in above note/HPI
ENT ROS: non-contributory except what is noted in above note/HPI
Allergy and Immunology ROS: non-contributory except what is noted in above note/HPI
Hematological ROS: non-contributory except what is noted in above note/HPI
Endocrine ROS: non-contributory except what is noted in above note/HPI
Breast ROS: non-contributory except what is noted in above note/HPI
Respiratory ROS: non-contributory except what is noted in above note/HPI
Cardiovascular ROS: non-contributory except what is noted in above note/HPI
Gastrointestinal ROS: non-contributory except what is noted in above note/HPI
Genito-Urinary ROS: non-contributory except what is noted in above note/HPI
Musculoskeletal ROS: non-contributory except what is noted in above note/HPI
Neurological ROS: non-contributory except what is noted in above note/HPI
Dermatological ROS: non-contributory except what is noted in above note/HPI

Physical exam as in above resident's note.

Assessment and Plan as in above resident's note.

**Procedure Note- Abdominal and Chest Ultrasound, Complete, for Trauma**
In order to facilitate identification of potential chest and/or abdominal trauma the patient underwent an ultrasound procedure that was performed and interpreted by the trauma team in real time. An extended focused assessment by sonogram for trauma (eFAST) exam was performed by the residents under my direct supervision and the patient's abdomen and chest were evaluated for any free fluid. Four views of the abdomen were obtained, including the left and right upper quadrant, the subxiphoid and a pelvic view in the standard fashion. Additionally, 2 views of the anterior chest were obtained to allow for examination of both lungs through bilateral anterior thoracic sonography. Interpretation of this study by myself and the resident assisted in the triage the patient.

**Attending Provider Plan**
In this case, Andre Black is a 20 y.o. with injuries related to a traumatic event as delineated by the resident admission note above. Injuries are severe enough in nature to warrant admission to the hospital and possible surgical intervention at a later date by the trauma surgery or other services. All questions answered. Patient understands and agrees to admission, observation, and treatment. Close observation by myself and further monitoring and possibly imaging will be used to make the determination if the patient warrants a surgical intervention by myself or by another subspeciality service such as Plastic, Orthopedic, Vascular or Neurological Surgery. The patient will be admitted to my service, with myself as the primary care provider for at least the first 24 hours.

JAMAICA HOSPITAL MED CTR
8900 Van Wyck Exprwy
Jamaica, NY 11418-2832

BLACK, ANDRE
MRN: 1990390#
DOB: ██████, Sex: M
Adm: 7/2/2012, D/C: 7/2/201

## All Results (Continued)

X-ray hip right AP and lateral [1789139] (continued)

Impression:

Bullet adjacent to the right proximal femur; no fracture.

X-ray pelvis antero-posterior [1789139]

| | |
|---|---|
| Ordering Provider | Grant Garcie, MD - 07/02/12 0357 |
| Date used | 07/02/12 0456 - 07/02/12 0510 |
| Narrative | Clinical history: 20-year-old male, GSW |

Resulted: 07/02/12 0625, Result Status: Final result
Resulted by: Mark S Herskovits, DO
Specimen: 07/02/12 0506

Single view of the pubic demonstrates a bullet projected over
the right proximal femur with no fracture, dislocation or other
acute finding.

Impression:

Bullet projected over the right proximal femur, recommend
follow-up as clinically indicated [1789139]

## Urinalysis, automated with micros. [1789139]

| Components | Value | Specimen | 07/02/12 0506 |
|---|---|---|---|
| Ordering Provider | Grant Garcie, MD 07/02/12 0358 | | |
| Color, UA | Colorless | Fld Home | Collected |
| APPEARANCE | Clear | Straw-Yellow | SCCLA BJ |
| Specific Gravity, UA | 1.009 | Clear- Hazy | SCCLA BJ |
| pH, UA | 6.5 | 1.010- 1.030 L | SCCLA BJ |
| Protein, UA | NEG | 0.0- 8.0 | SCCLA BJ |
| Glucose, UA | NEG | Neg-Trace mg/dL | SCCLA BJ |
| Ketone | NEG | Neg-Trace mg/dL | SCCLA BJ |
| Bilirubin, UA | NEG | Negative mg/dL | SCCLA BJ |
| Blood, UA | NEG | Negative | SCCLA BJ |
| Nitrite, UA | NEG | Negative | SCCLA BJ |
| Urobilinogen, UA | <2.0 | Negative | SCCLA BJ |
| Leukocytes, UA | NEG | <2 E.U./dL | SCCLA BJ |
| WBC, UA | <1 | Negative | SCCLA BJ |
| RBC, UA | 2 | 0- 8 /HPF | SCCLA BJ |
| Epithelial Cells | <1 | 0- 5 /HPF | SCCLA BJ |
| | | 0- 40 /LPF | SCCLA BJ |

## Testing Performed By

| Lab Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 12 - SCC Lab | SCC LAB | Unknown | Unknown | 08/17/10 1129 - Present |
| 17 - SCCLAB | SCC LAB - JAMAICA | Model Lab Director Laurie Horowitz | 8900 Van Wyck Expressway JAMAICA NY 11418 | 08/01/12 1212 - Present |
| 22 - RADIOLOGY | RADIOLOGY | Unknown | Unknown | 02/23/11 2320 - Present |

## HCG/EKG Results

No matching results found

## Cardiac Results

No matching results found

Printed on 8/17/2012 3:49 PM

TAB-4

US DEPARTMENT OF JUSTICE
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
Downstate Correctional Facility
121 Red Schoolhouse Road
Fishkill NY 12524

IN THE MATTER OF:        FILE:    A#039-746-517
**KING, Kirk Keven**      Din No.:   13A4783
RESPONDENT

                        IN REMOVAL PROCEEDINGS
                        DOCKET: DOWNSTATE - NYSDOC

ON BEHALF OF RESPONDENT:
   PRO SE

ON BEHALF OF SERVICE:
   LITIGATION UNIT, DHS, NEWBURGH, NY

### ORDER

On Aug 11, 2017 the above entitled matter was heard at the Downstate Correctional Facility, Fishkill, New York, at the Master Calendar session. At that time, the respondent was personally present. The Immigration Judge found that removability in his case was established by clear, convincing, and unequivocal evidence. The respondent was then found to be eligible to file for **Deferral of Removal - Convention Against Torture.** He was given the application document and instructed by the Immigration Judge that the document must be filed with the Court no later than November 09, 2017. He was also told that failure to file the document could result in an order of removal without further notice or proceedings.

As of today's date the respondent has not filed the application document. Therefore, it is deemed that the respondent in this case has abandoned his opportunity to file for relief as requested.

Wherefore, the issue of removability having been resolved against the respondent, and since he has abandoned possible protection by failing to file in a timely manner, the following order is entered: IT IS HEREBY ORDERED THAT RESPONDENT BE REMOVED FROM THE UNITED STATES TO SOUTH AFRICA or in the alternative to JAMAICA ON THE CHARGE(S) SET FORTH IN THE NOTICE TO APPEAR.

Roger F Sagerman
Immigration Judge
Dated: Nov 15, 2017

APPEAL DUE DATE: Dec 15, 2017

**CERTIFICATE OF SERVICE**
THIS DOCUMENT WAS SERVED BY:  MAIL (M)   PERSONNEL SERVICE (P)
TO:  [M] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ]  ALIEN's ATT/REP  [M] DHS
DATE:  11/15/17          BY: COURT STAFF  CLL
Attachments: [ ] EOIR-33  [ ] EOIR-28   [ ] Legal Services List   [X] Other
                                       EOIR-26 Appeal Packet

ALIEN COPY



*Office of Enforcement and Removal Operations*

**U.S. Department of Homeland Security**
250 Delaware Avenue, Floor 7
Buffalo, New York 14202

# U.S. Immigration
# and Customs
# Enforcement

KING, Kirk
A039 746 517
C/O Buffalo Federal Detention Facility
4250 Federal Drive.
Batavia, NY 14020

### Notice Pursuant to 8 CFR 241.4(g)(4)

This letter is to inform you that, pursuant to 8 CFR 241.4(g)(4), U.S. Immigration and Customs Enforcement (ICE) will not conduct a custody review at this time. ICE has secured a travel document to affect your removal and expects this to occur in May 2023. You will remain in custody pending your removal.

You are advised that any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 USC Section 1253(a).

_____          05/08/2023
Signature of Field Office Director, ERO/Designated Representative          Date

Print Name, Title and Location: Jeffrey J. Searls, Deputy Field Office Director, Buffalo, NY



**Appellate Division**
**Supreme Court of the State of New York**
**Second Judicial Department**
**45 Monroe Place**
**Brooklyn, N.Y. 11201**
(718) 875-1300

HECTOR D. LASALLE
PRESIDING JUSTICE

MARIA T. FASULO
CLERK OF THE COURT

DARRELL M. JOSEPH
KENNETH BAND
DEPUTY CLERKS

MELISSA KRAKOWSKI
WENDY STYNES
LAUREN G. DOME
BRIAN E. KENNEDY
ASSOCIATE DEPUTY CLERKS

March 10, 2023

Kirk King 0394746517
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY, 14020

Re: *Matter of King v Castellano*
App. Div. Docket No.: 2019-10516

Dear Sir:

    In response to your letter dated February 28, 2023, received March 2, 2023, we have updated your mailing address in our records. Please be advised that the above-entitled appeal has not yet been calendared or decided. We are unable to give you a definite time when your appeal will be heard. Notification that a cause has been placed on the calendar shall be published on the Court's website and may also be published in the New York Law Journal.

    Please refer to the docket number set forth above in all future correspondence.

        Yours truly,

        CLERK'S OFFICE

/jc

039-746-517

CERTIFICATE OF SERVICE

On May 17, 2023, I, Kirk King, certify that I personally served a copy of **U Visa Application and Supplemental B with supporting Documentation** and any attached pages by mail service to the following addresses:

Vermont Service Center

U.S. CITIZENSHIP AND IMMIGRATION SVC

38 River Road

Essex Junction VT 05479

Please find enclosed:

1. U visa application with Fee Waver information

2. Fingerprint cards.

DATED: May 17, 2023

Buffalo New York

Respectfully submitted,

Kirk King

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services

<div align="right">Notice of Action

Page 1 of 1</div>

| Case # / Reference #<br>EAC2320150648 | Form Type<br>I-918 Overseas Notice [Petition for U Nonimmigrant Status] |
|---|---|
| Alien #<br>A039746517 | Petitioner / Applicant<br>KIRK KEVIN KING |
| Notice Date<br>05/11/23 | Beneficiary |

KIRK KEVIN KING
4250 FEDERAL DR
BATAVIA, NY 14020

IMPORTANT: THIS NOTICE CONTAINS YOUR UNIQUE NUMBER AND MUST BE RESUBMITTED IN THE ORIGINAL WITH THE REQUESTED INFORMATION. WHEN YOU HAVE COMPLIED WITH THE INSTRUCTIONS ON THIS FORM, RESUBMIT THIS NOTICE AND ALL REQUESTED DOCUMENTS AND/OR INFORMATION.

1. YOUR RESPONSE MUST BE RECEIVED IN THIS OFFICE ON OR BEFORE:

11/06/2023

2. REGULATIONS REQUIRE THAT THE REQUESTED EVIDENCE BE SUBMITTED WITHIN 12 WEEKS.
3. ALL DOCUMENTATION REQUESTED SHOULD BE SUBMITTED TOGETHER.

To continue processing this petition for you or your family member, U.S. Citizenship and Immigration Services (USCIS) must first conduct a criminal record check with the Federal Bureau of Investigation. To do this, KIRK KEVIN KING's fingerprints must be taken. The petition was either not received with a completed fingerprint card or the fingerprint card submitted could not be used.

Because you or your family member currently resides outside of the United States, the fingerprints must be taken by the nearest overseas USCIS office, U.S. Consulate, or U.S. military installation.

INSTRUCTIONS for Overseas USCIS Office, U.S. Consulate or U.S. Military Installation:

Enclosed with this notice are two blank fingerprint cards (Form FD-258) with instructions on the back to be used by the person that takes the fingerprints of your family member. The person taking the fingerprints will complete the information on the fingerprint card. Once the fingerprints have been taken, the person who took the fingerprints must seal the completed FD-258 in an envelope and affix his or her signature across the seal of the envelope. The completed FD-258 must be returned to this office with a copy of this notice attached to the sealed envelope.

<div align="center">To ensure proper processing, checks and/or money order must be payable to:
'Department of Homeland Security' or 'U.S. Citizenship and Immigration Services.'
Please enclose a copy of this notice when responding or when filing another application based on this decision.
U.S. CITIZENSHIP AND IMMIGRATION SERVICES
Vermont Service Center
38 River Road
Essex Junction, VT 05479</div>

(05/10/23)Y - 01154052          SAVE THIS NOTICE FOR YOUR RECORDS - eacml01-1735

<div align="center">Vt 1790</div>

## HOW TO COMPLETE FD-258 FINGERPRINT CARD
## FIELD NAME AND EXPLANATION

1. Name (NAM) block: Enter the applicant's last name, first name, and middle name- in that order- in this space. Be sure to write out the middle name. Suffix denoting seniority should follow the name.

2. Also Known As (AKA) block: Enter other names the applicant has used, specially maiden names or any previous married names. For instance, if the applicant's legal name is different from the one shown in the identity document, be sure to place the name from the identity document in the AKA block. Please note; if there is more than one AKA, they will be printed on the back of the card.

3. Originating Agency Identifier (ORI) Number block: This block will be completed by the agency.

4. Applicant's Signature block: The applicant must sign this block in the presence of the person taking the fingerprints. The card may not be signed in advance.

5. Applicant's Address block: Enter the applicant's complete, permanent address.

6. Date of Birth (DOB) block: Enter the applicant's date of birth. If the applicant is under the age of 14 years, no prints are required. Please note: mmddyyyy.

7. Citizenship (CIZ) block: Select the name of the country of which the applicant is a citizen. This may differ from the applicant's country of birth.

8. Sex block: Select "F" for female, or "M" for male. Indicate if the subject is a transvestite (cross dresser) or has had a sex change operation. List any opposite sex names used in the alias box.

9. Race (RAC) block: Select one of the corresponding alphabetic codes:

| CODE | RACE |
|---|---|
| I | American Indian or Alaskan Native- a person having origins in any of the original peoples of the Americas and who maintains cultural identification through tribal affiliations or community recognition. |
| A | Asian or Pacific Islander- a person having origins in any of the original peoples of the Far East, Southeast Asia, the Indian subcontinent or the Pacific Islands. |
| B | Black – a person having origins in any of the black racial groups of Africa. |
| W | White -- a person having origins in any of the original peoples of Europe, North Africa, or the Middle East. |
| U | Unknown -- Applicants should choose the most appropriate code. |

10. Height (HGT) block: Enter the applicant's height in feet and inches. Round off fractions to the nearest inch. For instance, applicant is 5 ft 6 ½, round off to 5 ft 7 in.

11. Weight (WGT) block: Enter the applicant's weight in pounds. Round off fractions to the nearest pound. For instance, applicant is 133 ½ pounds, round off to 134.

12. Eye Color (EYE) block: Select the correct color from the table:

| EYE COLOR | CODE | EYE | CODE | EYE COLOR | CODE | EYE COLOR | CODE |
|---|---|---|---|---|---|---|---|
| Black | BLK | Blue | BLU | Brown | BRO | Gray | GRY |
| Green | GRN | Hazel | HAZ | Maroon | MAR | Pink | PNK |

13. Hair Color (HAIR) block: Select the color from the table:



UNITED STATES
POSTAL SERVICE ®

PRIORITY MAIL ®

FLAT RATE ENVELOPE

MED ■ INSURED

EP14F May 2020
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

To schedule free Package Pickup,
scan the QR code.

FROM:

TO:

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.

TAB-5



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

KING, KIRK KEVEN
13A4783/A039-746-517
ICE DETAINEE A039-746-517
BUFFALO FEDERAL DETENTION FAC
4250 FEDERAL DRIVE
BATAVIA, NY 14020

DHS/ICE Office of Chief Counsel - SIN
15 Governor Drive
Newburgh, NY 12550

Name: KING, KIRK KEVEN                    A 039-746-517

Type of Proceeding: Removal

Date of this notice: 4/25/2023

Type of Appeal: Appeal of IJ MTR

Filed By: **Alien**

## NOTICE -- BRIEFING SCHEDULE

o   Enclosed is a copy of the decision of the Immigration Judge. If you are receiving this notice electronically, the Immigration Judge's decision is viewable online in the electronic record of proceedings.
o   Appealing party is granted until 5/16/2023          to submit a brief to the Board of Immigration Appeals. The brief must be **RECEIVED** at the Board on or before this date.
o   Opposing party is granted until 5/16/2023          to submit a brief to the Board of Immigration Appeals. The brief must be **RECEIVED** at the Board on or before this date.
o   IJ/MTR - Transcripts are not prepared for appeals from an Immigration Judge's decision on a motion to reopen or reconsider. If you wish to listen to the audio recording of the hearing or obtain copies of audio recordings, you should contact the Immigration Court for assistance. You may also address the need for a transcript in your brief to the Board.

**WARNING:** If you indicate on the Notice of Appeal (Form EOIR-26) that you will file a brief or statement, you are expected to file a brief or statement in support of your appeal. If you fail to file a brief or statement within the time set for filing in this briefing schedule, the Board may summarily dismiss your appeal. See 8 C.F.R. § 1003.1(d)(2)(i)(E).

If you are the respondent/applicant and you received this notice, you are not represented by an attorney or accredited representative. An attorney or accredited representative must file a Notice of Entry of Appearance (Form EOIR-27) to represent you. 8 C.F.R. §§ 1003.3(a)(3) and 1003.38(g). Until a Form EOIR-27 is received, you are responsible for submitting a brief, and any submissions by anyone other than you will be rejected.

**NOTICE TO PARTIES -- DHS/ICE prosecutorial discretion:** The Board is aware that DHS has issued memoranda regarding its enforcement priorities and framework to exercise prosecutorial discretion (memoranda are available on U.S. Immigration and Customs Enforcement (ICE) website at

www.ice.gov). See EOIR PM 21-25, Effect of Department of Homeland Security Enforcement
Priorities available at www.justice.gov/eoir. The parties may wish to assess whether this matter
Case 4:25-cv-00633-HFS Document 21-1 Filed 06/31/23 Page 203 of 249

remains an enforcement priority and whether the exercise of prosecutorial discretion is warranted.
However, as there are prohibitions on DHS's authority to exercise its prosecutorial discretion (e.g.,
individuals subject to mandatory detention pursuant to sections 236(c) and 241 of the Immigration and
Nationality Act, 8 U.S.C. 1222(c) and 1231, all inquiries regarding an individual respondent/applicant's
eligibility for prosecutorial discretion must be made directly to DHS/ICE. If the parties jointly agree to
the exercise of prosecutorial discretion, or if ICE otherwise intends to exercise some form of
prosecutorial discretion, a motion should be filed with the Board to this effect and it should clearly
contain the caption "EXERCISE OF PROSECUTORIAL DISCRETION" on the front of the motion.

## FILING INSTRUCTIONS – In General.

**IMPORTANT: Briefs and other submissions should always be paginated. Parties should limit
their briefs to 50 pages unless directed by the Board. Motions to accept briefs that exceed the
page limitation established by the Board are disfavored, and will not be granted absent a
showing of extraordinary and compelling circumstances. If a party files a motion to increase
the page limit, the motion and the brief need to be filed together. See Chapter 3.3(c)(3)
(Number of pages) and 4.6(b) (Brief writing guidelines) of the Board's Practice Manual.**

The Board has included two copies of this notice. Please attach/submit one copy of this notice
to the front of your brief when you mail or deliver it to the Board, and keep one for your
records. Thank you for your cooperation.

A fee is not required for the filing of a brief. Your brief must be RECEIVED at the Clerk's Office at the
Board of Immigration Appeals within the prescribed time limits. It is NOT sufficient simply to mail the
brief and assume your brief will arrive on time. We strongly urge the use of an overnight courier
service to ensure the timely filing of your brief.

If you have any questions about how to file something at the Board, please review the Board's
Practice Manual found on EOIR's website at www.justice.gov/eoir.

Certificate of service on the opposing party at the address above is required for ALL submissions to
the Board of Immigration Appeals -- including correspondence, forms, briefs, motions, and other
documents. If you are the Respondent or Applicant, the "Opposing Party" is the DHS Counsel or the
Director for HHS/ORR at the address shown above. Your certificate of service must clearly identify
the document sent to the opposing party, the opposing party's name and address, and the date it was
sent to them. Any submission filed with the Board without a certificate of service on the opposing
party will be rejected.

## FILING ADDRESS:

Board of Immigration Appeals
Clerk's Office
5107 Leesburg Pike, Suite 2000
Falls Church, VA 22041

Business hours: Monday through Friday, 8:00 a.m. to 4:30 p.m.

Use of an overnight courier service is strongly encouraged to ensure timely filing.

## FILING INSTRUCTIONS – Extension Request.

Extension requests must be RECEIVED at the Board on or before the expiration of the initial briefing
schedule. Requests for extension of briefing time received after expiration of the brief due date, will
not be granted.

Unless you receive a Board Notice granting your extension request, your brief will remain due on the
date stated above.

Extensions of briefing time are not favored. It is the Board's policy to grant one briefing extension per
party in non-detained cases, if timely requested. It is also the Board's policy to grant one extension
per case in detained cases, if timely requested. See Chapter 4.7(c) (Extensions) of the Board's

A second briefing extension request will not be granted, except in extraordinary circumstances not foreseeable at the time the first request was made.

All extension requests must be in writing.  Telephonic, e-mail, or fax request will not be accepted.

**Userteam**:PGM

Kirk King
A-039-746-517
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020


Dear Clerk of the Court:

Please find enclosed:


1. Supplemental Appeal Brief

2. TAB- 5 Change of conditions in home country: Personal Identity and Human Rights.

3. TAB- 6 Change of conditions in home country: Gang Violence.

4. TAB-7 Change of conditions in home country: Official Involvement with Gangs.

5. Certificate of Service

Thank you very much for your time in this matter.


Dated: May ___, 2023.

Respectfully Submitted,

Kirk King

KIRK KING

Buffalo Federal Detention Facility

4250 Federal Drive

Batavia, New York 14020

DETAINED

UNITED STATES DEPARTMENT OF JUSTICE

EXECUTIVE OFFICE OF IMMIGRATION REVIEW

BOARD OF IMMIGRATION APPEALS

In the Matter of:

Kirk King

SUPPLEMENTAL BRIEF

File No: A# 039-746-517

Respondent / Pro Se

In Removal Proceedings

EMERGENCY MOTION TO REOPEN AND STAY OF REMOVAL

SUPPLEMENTAL BRIEF

039-746-517

## Table of Contents

INTRODUCTION.........................................................................................1-2

1.     RESPONDENT'S MOTION SHOULD BE GRANTED BASED ON THE CHANGE IN
CIRCUMSTANCES AND CHANGE OF CONDITIONS IN THIS HOME COUNTRY................

CONCLUSION...............................................................................................

DATED:   May ___, 2023.

           Buffalo New York

           Respectfully submitted,

           Kirk King

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE OF IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS

In the Matter of:

Kirk King

Respondent / Pro Se

SUPPLEMENTAL BRIEF

File No: A# 039-746-517

IN REMOVAL PROCEEDINGS

## INTRODUCTION

Respondent Kirk King, A 039-746-517 appearing pro se, prays that this Honorable Board of Immigration Appeals grants him an Emergency Stay of Removal, so that his Motion to Reopen may be considered before this Board, while he is present in the United States of America. Respondent believes that this matter, once properly presented before this Board will be successful, and this Board of Immigration Appeals has the inherent authority to order Respondent's presence in the United States for the duration of this matter.

On November 15, 2017, the Honorable Immigration Judge Sagerman ordered the Respondent removed to the country of Jamaica after Respondent failed to timely file an application for asylum, (see TAB 4 Judge's Initial Decision and Recommendation attached to main brief). Withholding of Removal and protection under the Convention Against Torture (CAT). Respondent was never informed that if his case was closed he would have 90 days to file a motion to reopen. Respondent was not represented by Counsel and did not fully understand the circumstances of his situation.

Respondent did not have the documents to support his claim for relief. Respondent has since come into possession of documents that will factually corroborate the essential or critical aspects of his claim. Respondent could not provide the (proffered) documents which are medical

3 of 8

039-746-517

records, Police Reports, and Statement by the Queens County District Attorney that the Respondent was the victim of a violent crime. (see TAB 2 U Visa Application at Exhibits D and E attached to main brief ) also (see TAB 1 Asylum Application attached to main brief). Respondent eventually received some of these records using the Freedom of Information Law (FOIL). These documents will prove that the crime of which Respondent was convicted was committed by the same people who shot Respondent five (5) times. Respondent was targeted for extortion and assault due to his sexual orientation of being bi-sexual.

Respondent filed his initial Emergency Motion to Reopen and for a Stay of Removal on March 15, 2023. This Motion was denied by the Honorable Judge Sagerman on March 23, 2023. Respondent filed a timely appeal to the Board of Immigration Appeals on April 4, 2023 for his Motion to Reopen and seeks an Emergency Stay of Removal so that he can fully present his claim for Deferral of Removal under the Convention Against Torture (CAT) and have his UVisa application processed. (see TAB 1 Asylum Application attached to main brief) also (see TAB 2 UVisa Application attached to main brief).

## 1. RESPONDENT'S MOTION SHOULD BE GRANTED BASED ON THE CHANGE IN CIRCUMSTANCES AND CONDITIONS IN HIS HOME COUNTRY.

Respondent reiterates that he has already suffered a crime of violence in the United States at the hands of these Jamaican gang members because of his sexual orientation and fears that once he is deported he will be burned alive as he was told he would be by these gang members for being homosexual and for exposing them to the police by refusing pay extortion money and to take the blame for a crime that he did not commit. Respondent has already been shot five (5) times for his life style by multiple members of this criminal gang for refusing to pay extortion money. (see TAB 1 Asylum Application and TAB 2 U Visa Application attached to main brief). Respondent has already been victimized by these people and was not given a chance to present this evidence at his hearing on June 29, 2017. The letter from the Office of Victims Services was not available to Respondent until October 12, 2017. (see TAB 2 U Visa Application at Exhibit E attached to main brief).

Respondent here presents that "(1) the germaneness of Jamaica's 'anti-buggery' law to an assessment of the government's prospective indifference to harm against members of the LGBT+ community; (2) the 2017 Human Rights Report, which indicates that "societal violence against

4 of 8

039-746-517

lesbian, gay, bisexual, transgender, and intersex (LGBTI) persons" is one of the "most significant human rights issues" in the country, AR 513, that "[h]omophobia was widespread in the country," AR 525, and that an NGO collected reports over nine months of almost two dozen human rights violations concerning LGBTI+ persons, including "six cases in which police failed to respond adequately to [such] reports," AR 525; (3) evidence that "Jamaica is a deeply homophobic society and there are reports of LGBTI persons facing a high levels of both physical and sexual violence from non-state agents (and some state agents) and many live in constant fear. (see TAB 5 Attached to Supplemental Brief).

LGBTI persons are targeted for mob violence, 'corrective rape', extortion, harassment, forced displacement and discrimination, and are taunted, threatened, fired from their jobs, thrown out of their homes, and suffer ill-treatment including being beaten, stoned, raped, or killed," AR 543; and (4) evidence that "[w]here LGBTI persons do face a real risk of harm or ill-treatment by non-state actors, the authorities do not provide effective protection.", (see GORDON, v. ATTORNEY GENERAL, OF THE UNITED STATES OF AMERICA 828 Fed Appx 94828 [2020]).

Respondent's removal would ensure that Respondent will face certain death. Respondent was denied due process under the United States Constitution when he was not allowed to present this evidence to the Immigration Court. (see TAB 5 Attached to Supplemental Brief).

Respondent here again argues that circumstances have changed in his home country since he was given his initial hearing. Gang violence has always been prevalent in Jamaica but it has gotten to a point that these criminal organizations now have a control over parts of the Government and the police. (see TAB 6 attached to Supplemental Brief). To highlight the seriousness of these changes that has occurred since Petitioner's initial hearing one only need to look at what the Court has said about the changing conditions in the country of Jamaica.

"Petitioner claimed he was afraid of persecution at the hands of followers of Christopher Coke, the notorious leader of the Jamaican gang the "Shower Posse", Jamaican police; supporters of the former prime minister of Jamaica, Bruce Golding, and supporters of the Jamaican Labour Party", (see Blake v. United States A.G. 945 F.3d 1181 [2019]).

The Court went on to state that "Gangs ties to the highest levels of the Jamaican Government are long-standing, and its policy of retaliating against those who run afoul of it,

039-746-517

including by cooperating with law enforcement, is nothing new". (see Blake v. United States A.G 945 F.3d 1181 [2019].). A State Department Country Report indicated that Jamaica's two major political parties, the Jamaica Labor Party ("JLP") and the People's National Party ("PNP"), sometimes use gangs to further political aims. The gangs most frequently affiliated with the JLP are the "Shower Posse" and the "One Order"; the gang most frequently associated with the PNP is the "Spanglers." Scarlett testified that he has never been affiliated with any political party or even voted in a Jamaican election". (see Scarlett v. Barr, 957 F.3d 316; [2020]). (see TAB 6 attached to Supplemental Brief).

Respondent has not been to Jamaica in over thirty years due to leaving as a child. Respondent would have no idea how to assimilate into this homophobic culture which is rife with corruption where the gangs and the police work together with government approval. The "Gaza Empire" empire is a off shoot of the "One Don" and "One Order" gangs who ties to the Jamaican police force and the government. Respondent will be given a death sentence if he is returned to Jamaica.

039-746-517

CONCLUSION

Based on the above, the Respondent respectfully begs that this Court grants him a Motion to Reopen and a Stay of Removal, so that his Asylum claim under the Convention Against Torture (CAT) can be processed and/or that his U Visa application can be processed and also that this Court issue a Emergency Stay of Removal while his Motion to Reopen is being reviewed processed.

Respectfully Submitted,

DATED:          May ___, 2023

Buffalo New York

Respectfully submitted,

Kirk King

## Maritime Security

There are no serious concerns regarding maritime security in Jamaica, although drug trafficking organizations are known to traffic around Jamaican waters, especially in go-fast boats between Jamaica and Haiti.

# Personal Identity & Human Rights Concerns

There are a number of human rights concerns regarding women and LGBTI+ people in Jamaica.

## Safety Concerns for Women Travelers

Jamaica has one of the highest instances of female murder victims worldwide. According to the UN Office on Drugs and Crime's (UNODC) 2019 "Global Study on Homicide," 11 out of every 100,000 Jamaican women are murdered annually. This places the country second to only El Salvador (13.8/100,000) for the highest rate worldwide. What is also noteworthy in the UNODC data is that Jamaican women are nearly ten times more likely to be murdered by someone unknown to them than by an intimate partner or family member, which aligns with the high prevalence of gang violence in Jamaica.

Under current Jamaican law, there are no clear criminal penalties for domestic violence and spouses are exempt from rape accusations. Moreover, there is currently no legislation to address sexual harassment, and no remedy exists for victims. One in four women reported being the victim of sexual harassment in their lifetime.

Sexual and assault and rape are major concerns for all women, including tourists and visitors. According to estimates by the JCF Statistics and Information Management Unit, there were 481 rape cases in 2020, approximately a 12% reduction from the same period in 2019. Advocacy groups, however, contend that rape is significantly underreported because victims have little faith in the judicial system and are unwilling to endure lengthy criminal proceedings. Similar discouragements exist for tourists, as victims may need to return to Jamaica during the legal process.

Consider composite scores given to Jamaica by the UN Development Program (UNDP) in its Gender Development Index, measuring the difference between average achievement in three basic dimensions of human development, and Gender Inequality Index, measuring inequality in achievement in reproductive health, empowerment, and the labor market. For more information on gender statistics in Jamaica, see the World Bank's Gender Data Portal.

Review the State Department's webpage for female travelers.

## Safety Concerns for LGBTI+ Travelers

Despite the diverse ethnic and religious background of its population, Jamaica has the reputation for being one of the least-accepting countries for the LGBTI+ community. Several popular Jamaican music entertainers have featured song lyrics that contain homophobic messages and condone violence against the LGBTI+ community.

Jamaican law criminalizes consensual same-sex sexual conduct and physical intimacy between men, with penalties of up to ten years in prison with hard labor. There is no comprehensive antidiscrimination legislation protecting the rights of LGBTI+ persons. The government enforces the law that criminalizes same-sex sexual relations only in cases of sexual assault and child molestation. Officials did not prosecute consensual same-sex sexual conduct between men in 2020.

The NGO J-FLAG (formerly Jamaica Forum for Lesbians, All-Sexuals, and Gays) reported that it received a similar number of cases of discrimination based on sex, sexual orientation, and gender identity against

LGBTI+ individuals during 2020 as it did in previous years. Underreporting is a problem, since many are reluctant to go to police because of fear of discrimination or police inaction. Other NGOs report hostility towards LGBTI+ persons, including increased screening for transgender persons at airports.

LGBTI+ travelers are generally warned to avoid public displays of affection for their own safety. Though it is unlikely government authorities would arrest anyone engaging in this behavior, it would likely attract negative attention from private citizens.

Review OSAC's report, Supporting LGBT+ Employee Security Abroad, and the State Department's webpage on security for LGBTI travelers.

## Safety Concerns for Travelers with Disabilities

The law prohibits discrimination against persons with disabilities, although it does not mandate accessibility standards. Persons with disabilities encounter difficulties accessing education, employment, health services, communications, transportation, and other services due to the lack of accessible facilities.

While some of the country's resorts meet U.S. standards, most transportation, entertainment, and medical facilities cannot accommodate travelers with disabilities.

## Safety Concerns for Travelers Based on Race, Religion, & Ethnicity

Rastafarians report that while prejudice against their religion still exists, there is increasing societal acceptance of and respect for their practices.

Review the latest U.S Department of State Report on International Religious Freedom for country-specific information.

Review OSAC's report, Freedom to Practice, and the State Department's webpage on security for faith-based travelers.

## Anti-U.S./Anti-Western Sentiment

Jamaicans are accustomed to the presence of U.S. travelers and residents, and exhibit little to no anti-U.S. sentiment.

## Concerns involving the Rule of Law, Arbitrary Detention, Official Harassment, Corruption &/or Transparency

De facto impunity for security forces is a problem, since cases against officers are infrequently recommended for criminal trial or see substantial procedural delays. Charges against members of the security forces often take years to process, primarily due to investigatory backlogs, trial delays, and appellate measures. These problems were exacerbated by a Privy Council ruling in May that INDECOM does not have the power to arrest, charge, or prosecute. Additionally, INDECOM reports it is unable to investigate each case thoroughly due to manpower limitations and significant delays caused by police.

The constitution prohibits arbitrary arrest and detention but allows arrest if there is "reasonable suspicion of a person having committed or about to commit a criminal offense." The law provides for the right of any person to challenge in court the lawfulness of his or her arrest or detention, and the government generally observes these requirements.

The declaration of a State of Emergency (SOE) grants the police and military the ability to search, seize, and arrest citizens without a warrant. The prime minister may declare an SOE for 14 days or less and

legal recourse to persons with HIV who experience discrimination. In rural areas or poor urban areas, there was less knowledge of the government services and programming available related to HIV.

## Acts of Violence, Criminalization, and Other Abuses Based on Sexual Orientation and Gender Identity

The law criminalizes consensual sexual conduct between men, with penalties of up to 10 years in prison with hard labor. Attempted sexual conduct between men is criminalized, with penalties up to seven years in prison. Physical intimacy, or the solicitation of such intimacy, between men, in public or private, is punishable by two years in prison under gross indecency laws. There is no comprehensive antidiscrimination legislation protecting the rights of LGBTQI+ persons.

The government generally only enforced the law that criminalizes same-sex sexual relations in cases of sexual assault and child molestation. The government does not provide information as to whether the government prosecuted consensual sexual conduct between men. The legal definitions of rape and buggery (anal sex) create a phenomenon where, under certain circumstances, segments of the population have unequal legal protection from sexual assault. For example, a man who sexually assaults a woman through penile penetration of the vagina is punishable by 15 years to life in prison. This same act committed through anal penetration of a woman, child, or man is punishable by only up to 10 years in prison. Local human rights advocates contended this was unequal protection under the law.

The law does not extend antidiscrimination protections based on sexual orientation, gender identity, gender expression, or sex characteristics. The Inter-American Commission on Human Rights stated the law legitimizes violence towards LGBTQI+ persons.

The NGO J-FLAG (formerly Jamaica Forum for Lesbians, All-Sexuals, and Gays) reported that it received a similar number of cases of discrimination based on sex, sexual orientation, and gender identity against LGBTQI+ individuals during the year, compared with previous years. Many of the cases reported during the year occurred in prior years. Underreporting was a problem, since many of those who



58

made reports were reluctant to go to police due to fear of discrimination or police inaction. A local NGO reported that officials within the government, including police, had improved their response to LGBTQI+ rights violations.

# Section 7. Worker Rights

## a. Freedom of Association and the Right to Collective Bargaining

The law provides for the right of workers to form or join independent unions and to bargain collectively. The law does not provide for the right to strike, although the constitution provides for the freedoms of peaceful assembly and association. The law prohibits antiunion discrimination and provides for the Industrial Disputes Tribunal (IDT) to reinstate a worker for unjustified dismissal. The law makes it a criminal offense to prevent or deter a worker from exercising the right to participate in trade union activities or to dismiss, penalize, or otherwise discriminate against a worker for exercising these rights.

Aspects of the law inhibit the ability of some workers to organize. The government defines the following 10 categories of services as essential: water, electricity, health, hospital, sanitation, transportation, firefighting, corrections, overseas telecommunication, and telephone services. Before workers in these categories may legally strike, they must take their dispute to the Ministry of Labor and Social Security and attempt to settle the dispute through negotiation.

In December an International Labor Organization (ILO) representative confirmed that the ILO continued to raise concerns that the country's definition of essential services was too broad. The ILO reported the issue remained unresolved by the government. The government prohibits unionizing in export-processing zones, which are industrial areas with special tax and trade incentives to attract foreign investment. The ILO expressed concern that penalties may be imposed on workers for their membership and participation in an unregistered trade union. The ILO also expressed concern that the government may carry out inspections and request information about trade union finances at any time.

The law mandates that in the case of doubt or dispute as to whether workers may exercise bargaining rights, the labor and social security minister must conduct a



59

TAB-5

TAB-6



teleSURHD

*News > Jamaica*

# Gang-Related Violence Forces New State of Emergency in Jamaica



Security forces patrol the streets. Havana, Dec. 2022. | Photo: Twitter/ @hrworld

Published 7 December 2022

**PM Holness will coordinate efforts with the FBI to disrupt transnational gangsters who direct and finance criminals operating in his country.**

On Tuesday, Jamaican Prime Minister Andrew Holness reimposed a state of emergency to fight gang-related violence in the country.

*RELATED:*

*US Under Secretary ~ lland Travels to*

The state of exception will apply for two weeks and will govern 6 out of 14 Jamaican jurisdictions, including Montego Bay, a tourist destination of international importance.

Besides being in effect in the capital city Kingston, the security measure covers the parishes of St. James, Westmoreland, Hanover,

1/4/23, 12:42 PM
Case 6:23-cv-00281-FPG Document 11 Filed 05/23/23 Page 220 of 249
Gang-Related Violence Forces New State of Emergency in Jamaica | News | teleSUR English




order. This provision prompted criticism from opposition leaders and human rights defenders who fear that the police abuse or mass detentions could reappear.

**CaribbeanNewsNetwork**
@caribbeannewsuk · **Follow**



#JAMAICA: Prime Minister Andrew Holness says a strong government and good governance have been the catalyst for improvement and recovery in the country's economy post pandemic.

11:05 AM · Nov 30, 2022

Read the full conversation on Twitter

♥ 2   ⚡ **See the latest COVID-19 information on Twitter**

**Read 1 reply**

In a televised address, Holness dismissed those questions, saying his administration seeks to save lives in the face of a "very serious" criminal threat. He also emphasized that the state of exception is not unconstitutional and is only used for extraordinary reasons.

The Jamaican prime minister will travel to the United States to hold meetings with authorities from the Federal Bureau of Investigation (FBI) whose purpose is to coordinate efforts to disrupt transnational gangsters who direct and finance criminals operating in his country.

Jamaica has one of the highest crime rates in the Caribbean. So far this year, authorities have recorded 1,421 icides, most of which have been related to gang activity.

Mobile Apps    eGleaner    Login    Subscribe Now

Fri | Sep 9, 2022

81°F    27°C

Search

# The Gleaner

### Jamaican
Established 1834

Menu »

Home    Lead Stories    News    Sports    Entertainment    Business    Letters

Commentary    Health    Lifestyle

World News    In Focus    Auto    Food    Shipping    Art & Leisure    COVID-19    Classifieds

Commerce    Flair    Jobs    Podcast    Puzzles

Mobile version
Subscribe to this feed
Join us on Facebook
Follow us on Twitter

# 389 gangs identified in Jamaica, 250 active

**Share this Story:**      Tweet    Share    Share    7

Published: Wednesday | May 20, 2020 | 11:02 AM

We use cookies on this site to enhance your user experience

Accept    No, thanks

Premium Subscribers: Cookies are recommended for Premium subscribers

By clicking the Accept button, you agree to us doing so.

No, give me more info





Minister of National Security Dr Horace Chang - File photo

**Romario Scott, Gleaner Writer**

**At the end of 2019, some 389 gangs were identified as operating in Jamaica, Minister of National Security Dr Horace Chang, told Parliament on Tuesday.**

Chang, who was tabling the report of the Joint Select Committee that reviewed the Criminal Justice (Suppression of Criminal Organisations) Act of 2014, commonly called anti-gang legislation, indicated that this represents an increase of eight gangs when compared to the 381 identified in 2018.

"Based on the latest assessment carried out by the National Intelligence Bureau (NIB) of the Jamaica Constabulary Force (JCF), at the end of 2019, there were 389 criminal gangs operating in Jamaica. Of the 389 criminal gangs, 250 or 64 per cent were deemed to be active while the remaining 139 or 36 per cent were classified as dormant.

"Three hundred and twenty-three or 83 per cent of the total criminal gangs in operation were

We use cookies on this site to enhance your user experience

Accept    No, thanks

Premium Subscribers: Cookies are recommended for Premium subscribers

By clicking the Accept button, you agree to us doing so.

No, give me more info



9/9/22, 3:34

Such gangs, the security minister explained, exhibited more centralised leadership and focused primarily on organised crime.

"According to the NIB, there were no 'third generation' gangs in operation in Jamaica. These are gangs with broad reach, often across international borders," Chang said.

Chang informed Parliament that the Corporate Area continues to account for the largest proportion of gangs and he underscored that they enjoyed the strong backing of some communities.

"In many communities across the island, gang members enjoy strong community support which makes it difficult to isolate them. Even so, over the last three years, there has been a significant increase in the number of gang members identified, apprehended, and prosecuted," Chang said.

In giving a breakdown, it was revealed that Police Area 4, which comprises the Kingston Western, Kingston Central, Kingston Eastern, St Andrew Central, and St Andrew South Police Divisions, accounted for 249 or 64 per cent of the total number of known gangs across Jamaica.

At the divisional level, the minister said, "78 of the gangs identified across the island or 20.1 per cent, were resident within the St Andrew South Police Division. This was followed by the Kingston Central, and Kingston Western Police Divisions with 13.1 per cent and 12.3 per cent respectively."

As it relates to Police Area 5, which comprises St Catherine North, St Catherine South, St Andrew North, and St Thomas, it accounts for the second-highest number of gangs in the country, with 57 or 14.7 per cent.

We use cookies on this site to enhance your user experience

Accept    No, thanks

Premium Subscribers: Cookies are recommended for Premium subscribers

By clicking the Accept button, you agree to us doing so.

No, give me more info



Mobile Apps    eGleaner    Login    Subscribe Now

Tue | Jan 31, 2023

Search                                            81°F

# The Gleaner

Established 1834

Menu »

Home    Lead Stories    News    Sports    Entertainment    Business

Commentary    Death    Lifestyle

World News    In Focus    Auto    Saturday    Shipping    Art & Leisure    Classifieds    Commerce    Flair    Jobs

Podcast    Puzzles

Mobile version
Subscribe to this feed
Join us on Facebook
Follow us on Twitter

# POLICE GANG

## Cops nab colleagues who are alleged members of criminal gang

**Share this Story:**    Like 0    Tweet    **Share**    Share    19

Published: Saturday | March 26, 2022 | 12:11 AM | Tanesha Mundle/Staff Reporter

Case 6:23-cv-00281-PFPG Document 211 Filed 05/23/23 Page 225 of 249

POLICE GANG | Lead Stories | Jamaica Gleaner



DCP Bailey

Charging that numerous members of the Jamaica Constabulary Force are involved in the island's underworld today, former Senior Superintendent of Police Reneto Adams said he is not surprised by yesterday's arrest of four members of the force, alleged to be members of the Clarendon-based Ranko Gang.

According to Adams, he had publicly stated about 20 years ago that many police personnel were aligned with gangs but was ridiculed.

Deputy Commissioner of Police in charge of the crime and security portfolio, Fitz Bailey, yesterday made a stunning revelation at a press briefing that eight police officers have been identified as alleged members of the 27- strong gang, which has been linked to several serious crimes across nine parishes.

It was also disclosed that four of the lawmen along with eight civilians were arrested yesterday morning during an operation.

Three other constables are on the run including one who fled the island last year.

## Headlines Delivered to Your Inbox

Sign up for The Gleaner's morning and evening newsletters.

The alleged ringleader Constable Tafari Silvera was arrested in June last year.

## Murder plot

Silvera and his colleague constable, Christopher Robinson and Mark Bennett are all currently before the Home Circuit Court on a charge of conspiracy to murder in relation to an alleged murder attempt that was foiled by the police.

According to Bailey, the plot, which was uncovered last June, surrounds a plan to kill an alleged member of the gang who was accused of being a police informer. Stemming from the investigation, the gang's deputy leader Kervon Salmon was killed during the operation.

Adams, however, when contacted, said he was not the least bit surprised by the arrest or the revelation that Silvera is the alleged gang leader.

"It is not the first and criminals have always been in the force," he said.

"Twenty years ago, maybe not exactly, when I made a public pronouncement that corruption was in the force and members of the force were part of gangs in Jamaica, facilitating criminal elements and all that and supplying them with the information, I was ridiculed and I don't want to state a falsehood but I think I was told by the senior person in authority to withdraw my statement and apologise.

"I didn't because I knew at the time and still do that many, many members of the force, as it also now exists, are a part of the criminal element underworld out there but it is not by accident, it is by design," he shared.

Adams said the gangs deliberately organised themselves to ensure that some of their recruits are members of the security forces so that they can stay abreast of the police's security operations.

The former senior cop described police gangsters as wolves in sheep clothing, who just joined the force to get a job and make some money but have no loyalty or commitment to the organisation or the country.

## Confiscated cell phones

He shared that during his time he had to confiscate the cell phones of members of his team and withhold information from them about the location and time of the operation.

"So they didn't get to call their friends. A matter of fact, I used to have to misinform them. So like I was going to Old Harbour, so they would be calling up all the Mandeville friends and the criminal elements to say 'Mr Adams is coming' when, in truth and in fact, I was only going to Old Harbour and I hope the force is operating that way still," he recalled proudly.

The Ranko Gang, according to Bailey, carried out crimes such as shootings, burglary, robbery with aggravation, illegal possession of firearm, shop-breaking, conspiracy to murder and abductions, operated in Clarendon, Manchester, St Elizabeth, St Catherine, St Mary, Trelawny, Kingston, St Andrew and St James.

The investigation, which commenced last year and covered the prior 2019-2021, started "when a series of robberies were reported which caused us to suspect police involvement," he said.

In the meantime, the deputy commissioner said, "The police have the capacity and the will to investigate our own and this investigation was not reported by citizens it was as a result of our own intelligence-led investigations.

"We would like to declare that we will be unbiased to our approach to any member of the society who runs afoul of the law whether you are pastor, a priest, a politician or police, you will be apprehended and as long as there is sufficient evidence, you will be prosecuted," he further declared.

tanesha.mundle@gleanerjm.com

**Share this Story:**   Like 0    Tweet    Share    Share    19

### «Lawyers raise issue over 'stipend' in One Don Gang trial
### Divorce boom »

Search       81°F



Established 1834

Home    Lead Stories    News    Sports    Entertainment    Business    Letters    Commentary    Health    Lifestyle

World News    Business    Auto    Food    Fashion    Art & Leisure    Classifieds    Commerce    Flair    Jobs

Podcast    Puzzles

Mobile version
Subscribe to this feed
Join us on Facebook
Follow us on Twitter

# The perils of the witness protection programme

**Share this Story:**    Like 2    Tweet    **Share**    Share   **1**

Published: Sunday | April 10, 2022 | 12:15 AM | Corey Robinson - Senior Staff Reporter

In their world, nothing is safe or certain, and it is always wise to have a suitcase packed and ready for relocation. To be otherwise could be deadly.

This is life for some 326 Jamaicans in the island's witness protection programme — they are key players in gang/gun trials now under way.

With roughly 400 murders since the start of the year, some in broad daylight, there are invariably many more witnesses living outside the programme that cannot accommodate all.

According to the police, several have declined to be part of the witness protection programme -- the task of uprooting and forfeiting life as they know it to live in hiding is too much to bear.

That decision has resulted in the deaths of many over the years, the police have revealed; while for the others, it means additional pressure on law enforcement to keep them alive.

## Headlines Delivered to Your Inbox

Sign up for The Gleaner's morning and evening newsletters.

"It happens every day. People can't afford to give up their lives and livelihood, and so they opt to avert the programme," noted Superintendent Aaron Fletcher, head of the St Andrew North Police Division. "Certainly, however, this puts them at greater risk."

PERENNIAL TASK

There have been 21 murders since January in St Andrew North, and witness management, according to Fletcher, is a perennial task for sleuths in that division. They must also combat at least a dozen warring factions shooting, extorting, and robbing persons in the space.

Both covert and overt operations are employed to ensure the safety of witnesses in gun/gang trials and it is even more tedious when entire families of deceased persons or of those fingered as perpetrators of crimes, come under threat from warring gangsters. Due to the sensitivity of the issue, Fletcher declined to cite specific cases.

"If you threaten a Crown witness, it is a criminal offence and offenders are generally brought before the courts," he explained. "But it places an additional burden on the police in our crime-fighting effort to ensure the safety of witnesses. It might require more extensive patrolling. In some situations, witnesses' residences have had to be monitored on a periodic basis."

The Government spent an additional $25 million in the financial year 2019-2020 and an extra $29.5 million in 2020-2021 on the budgeted figures for the witness protection programme, according to responses from the Ministry of National Security to an Access to Information request by **The Sunday Gleaner**. The budgets for 2019-2020 and 2020-2021 were $141.3 and $151.3 million, respectively.

## SEPARATION COSTS

In the years 2019 to 2021, the Government spent $3 million, $5.5 million and $5.2 million, respectively, for separation costs, which include monies used by witnesses in the actual parting of ways with loved ones before entering the programme.

Director of Public Prosecutions (DPP) Paula Llewellyn said that in some instances witnesses have had to be relocated within 24 hours after learning that their safety may have been compromised.

Glorification of gun/gang violence and the pervasiveness of cellular phones in prisons are among the challenges to witness protection in Jamaica, the DPP explained, noting that victim intimidation from persons behind bars is a constant factor. Intimidation and dissuasion from witnesses' own relatives is also a variable.

"There are instances where you have said 'please (witnesses) go on the programme' and they have declined. And the next thing you hear is that either the person has disappeared, they still have to leave the area anyway, or that they have been harmed," Llewellyn said.

"It all depends on the community dynamics and where they are with their family and friends. Some people believe that they are safe within their community," she said, noting a case involving a well-known Kingston don, where a witness opted to remain in the area.

"I didn't understand it at first, but after talking to him, talking to the police and becoming aware of that particular community dynamics, and where he fell and how he was perceived in the community, I realised why he felt safe remaining there," the DPP stated.

corey.robinson@gleanerjm.com

**Share this Story:**      Share    1

## «'We are not addressing core cause'
## Gonsalves hoping for amicable solution to Commonwealth secretary general candidate controversy »



JAMAICA
OBSERVER

ePaper 

NEWS
# Corruption haunts police force





Police on an operation in a Kingston community.

Jamaicans believe more than half of JCF tainted

**V**eteran pollster Bill Johnson's latest survey has found that Jamaicans believe more than half of the country's police are corrupt.

At the same time, just under 50 per cent of those polled say they do not believe the constabulary's version of controversial police actions in communities. Interestingly, those who said they did not know whether or not to believe the police's version of incidents outnumber respondents who said they accept the cops' account of events.

Commissioned by the **Jamaica Observer**, Johnson and his team of researchers canvassed the views of 1,008 Jamaicans islandwide between January 21 and 24, 2019.

The issue of corruption, which has haunted the police force for decades, was included in the poll which also had a focus on the just ended state of emergency and the general performance of the police.

In their discourse with the respondents, the pollsters noted that there has been a lot of talk about police corruption in Jamaica with some people saying that only a very small percentage of police officers are corrupt, while others argue that most cops are corrupt.

The pollsters then asked: "Based on your own experiences, and from what you've heard and read, what percentage of the police officers in Jamaica do you think are corrupt?"

The mean response amounted to 55 per cent.

When the pollsters further asked: "What percentage of the police officers in the area you live in do you think are corrupt?" the mean response totalled 31 per cent.



The public's belief runs counter to the view expressed by former National Security Minister Robert Montague who, in January last year, while announcing the Government's intention to introduce a revamped Early Retirement Scheme for police officers as part of mechanisms to rid the Jamaica Constabulary Force of corrupt members, said that while corruption in the police force remains a significant challenge, the vast majority of the members are law-abiding, patriotic Jamaicans who work diligently in the service of their fellow citizens.

In relation to controversial police actions in communities, 47 per cent of those polled said they do not believe the constabulary's version of events, 22 per cent said they believed the cops, while 31 per cent said they don't know.'

That finding supports numerous media reports of community responses to police actions, particularly fatal shootings which are probed by the Independent Commission of Investigations (INDECOM).

That agency, in its second quarterly report last year, stated that it received 217 categories of complaints from 186 incidents reported for the period.

"The top five categories of complaints include: assault (70), discharge of firearm (46), fatal shooting (33), shooting injury (24), and unlawful wounding (7)," INDECOM said.

**TOMORROW: Would people who witnessed a serious crime be willing to help the police?**

NEWS



Now you can read the Jamaica Observer ePaper anytime, anywhere. The Jamaica Observer ePaper is available to you at home or at work, and is the same edition as the printed copy available at https://bit.ly/epaper-login

## HOUSE RULES

1. We welcome reader comments on the top stories of the day. Some comments may be republished on the website or in the newspaper; email addresses will not be published.

2. Please understand that comments are moderated and it is not always possible to publish all that have been submitted. We will, however, try to publish comments that are representative of all received.

3. We ask that comments are civil and free of libellous or hateful material. Also please stick to the topic under discussion.

4. Please do not write in block capitals since this makes your comment hard to read.

5. Please don't use the comments to advertise. However, our advertising department can be more than accommodating if emailed: advertising@jamaicaobserver.com.

6. If readers wish to report offensive comments, suggest a correction or share a story then please email: community@jamaicaobserver.com.

7. Lastly, read our Terms and Conditions and Privacy Policy



039-746-517

## CERTIFICATE OF SERVICE

On May 7 , 2023, I, Kirk King, certify that I personally served a copy of RESPONDENT'S SUPPLEMENTAL BRIEF FOR BOARD OF IMMIGRATION APPEALS FOR EMERGENCY MOTION TO REOPEN AND FOR A STAY OF REMOVAL and any attached pages by first class mail service to the following addresses:

U.S. Department of Justice

Executive Office for Immigration Review

Office of the Clerk

Board of Immigration Appeals

5107 Leesburg Pike, Suite 2000

Falls Church, Virginia 22041

DHS/ICE Office of Chief Counsel-SIN

15 Governor Drive

Newburgh, New York 12550

Office of Chief Counsel

U.S. Department of Homeland Security

4250 Federal Drive

Batavia, NY 14020

KAYCEE LEIGH EVANS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01EV6413806
Qualified in Genesee County
Commission Expires February 01, 2025

DATED: May 7 , 2023

Buffalo New York

Respectfully submitted,

Kirk King

KIRK KING                                               **DETAINED**

**Buffalo Federal Detention Facility**

4250 Federal Drive

Batavia, New York  14020


UNITED STATES DEPARTMENT OF JUSTICE

EXECUTIVE OFFICE OF IMMIGRATION REVIEW

BOARD OF IMMIGRATION APPEALS

_____

In the Matter of:


Kirk King                                    File No: A# 039-746-517


Respondent / Pro Se

In Removal Proceedings

_____


## EMERGENCY MOTION TO REOPEN AND STAY OF REMOVAL


1 Of 15

# Table of Contents

039-746-517

INTRODUCTION.————————————————————1-2

I.RESPONDENT'S EMERGENCY MOTION TO REOPEN SHOULD BE GRANTED BASED ON HIS

APPLICATION FOR ASYLUM UNDER THE CONVENTION AGAINST

TORTURE————————————————————2

  I- a. Establishing a prima facie case for relief on Motion to Reopen.————3-4

  I- b. Presenting new information that was not presented to the Court.————4-5

II.  B.  Respondent'S MOTION SHOULD BE GRANTED BASED ON THE CHANGE IN

CIRCUMSTANCES OF THIS CRIMINAL CASE WHICH IS UNDER REVIEW BY THE CONVICTION

INTEGRITY UNITY OF QUEENS COUNTY AND CHANGE OF

CONDITIONS IN THIS HOME COUNTRY.————————————5-8

III. Respondent'S MOTION SHOULD BE GRANTED BECAUSE Respondent WAS DENIED DUE

PROCESS WHEN HE WAS NOT INFORMED OF HIS NOTICE TO APPEAR ON JUNE 29, 2017 UNTIL

THE DAY OF HIS APPEARANCE AND WAS NOT INFORMED THAT HE ONLY HAD 90 DAYS TO

SUBMIT A MOTION TO REOPEN AFTER THE COURT'S FINAL DECISSION.————————8-9

CONCLUSION——————————————————10

CERTIFICATE OF SERVICE————————————11

DATED:  May____, 2023.

        Buffalo New York

        Respectfully submitted,

        ————————————

          Kirk King

UNITED STATES DEPARTMENT OF JUSTICE

EXECUTIVE OFFICE OF IMMIGRATION REVIEW

BOARD OF IMMIGRATION APPEALS

In the Matter of:

Kirk King                                    File No: A# 039-746-517

Respondent / Pro Se                          IN REMOVAL PROCEEDINg

## INTRODUCTION

Respondent Kirk King, A 039-746-517 appearing pro se, prays that this Honorable Board of Immigration Appeals grants him an Emergency Stay of Removal, so that his Motion to Reopen may be considered before this Board, while he is present in the United States of America. Respondent believes that this matter, once properly presented before this Board will be successful, and this Board of Immigration Appeals has the inherent authority to order Respondent's presence in the United States for the duration of this matter.

On November 15, 2017, the Honorable Immigration Judge Sagerman ordered the Respondent removed to the country of Jamaica after Respondent failed to timely file an application for asylum, (see TAB 4 Judge's Initial Decission and Recomendation ). Withholding of Removal and protection under the Convention Against Torture (CAT). Respondent was never informed that if his case was closed he would have 90 days to file a motion to reopen. Respondent was not represented by Counsel and did not fully understand the circumstances of his situation.

Respondent did not have the documents to support his claim for relief. Respondent has since come into possession of documents that will factually corroborate the essential or critical aspects of his claim. Respondent could not provide the (proffered) documents which are medical

3 of 15

039-746-517

records, Police Reports, and Statement by the Queens County District Attorney that the Respondent was the victim of a violent crime. (see TAB 2  U Visa Application at Exhibits D and E ) also (seeTAB  1 Asylum Application). Respondent eventually recieved some of these records using the Freedom of Informatio Law (FOIL). These documents will prover that the crime of which Respondent was convicted was committed by the same people who shot Respondent five (5) times. Respondent was targeted for extortion and assault due to his sexual orientation of being bi-sexual.

Respondent filed his initial Emergency Motion to Reopen and for a Stay of Removal on March 15, 2023. This Motion was denied by the Honorable Judge Sagerman on March 23, 2023. Respondent filed a timely appeal to the Board of Immigration Appeals on April 4, 2023 for his Motion to Reopen and seeks an Emergency Stay of Removal so that he can fully present his claim for Deferral of Removal under the Convention Against Torture (CAT) and have his UVisa application processed. (see TAB  1 Asylum Application) also (see TAB 2 UVisa Application).

## I.  RESPONDENT'S EMERGENCY MOTION TO REOPEN SHOULD BE GRANTED BASED ON HIS APPLICATION FOR ASYLUM UNDER THE CONVENTION AGAINST TORTURE

Motions to reopen not filed within 90 days of the Court's Final Decision are not considered timely.  However, the Board of Immigration Appeals retains the authority to reopen a case on a application for Convention Against Torture (CAT) Asylum Applications. This is especially true where the Court had already found that Respondent was eligible for Deferral of Removal under the Convention Against Torture. (see TAB 4 Judge's Initial Decission and Recomendation). Respondent here intends to present new evidence that he was not allowed to persent at his one and only Court appeareance. He also intends to present evidence of  changes in circumstances since his only hearing, and seeks an opportunity to apply for discretionary relief upon a Motion to Reopen and a Stay of Removal.

Respondent, Kirk King hereby requests a Stay of Removal while judicial review of this matter is pending, and the Department of Homeland Security intends to effectuate the Respondent's final removal out of the United States to Jamaica base on a final order issued on

November 15, 2017. The standard for granting a Stay has been stated in Andrieu v. INS, 253 F.3d 477 (9th Cir. 2001) (en banc). Accordingly, the court must find "either (1) a probability of success on the merits and the possibility of irreparable injury, or (2) that serious legal questions are raised and the balance of hardships tips sharply in the Respondent's favor." 253 F.3d at 479.

The Ninth Circuit has pointed out that: These standards represent the outer extremes of a continuum, with the relative hardships to the parties providing the critical element in determining at what point on the continuum a stay pending review is justified. Id. Under this standard, (Respondent) request for a Stay of Removal should be granted. There is no bona fide reason why Respondent should be deported without an opportunity for judicial review based on the new precedent within the case as provided. He respectfully requests that he be granted a stay of deportation so that the Court can resolve the factual and legal issues he intends to present in this appeal of his Motion to Reopen.

### I-a. Establishing a prima facie case for relief on Motion to Reopen.

Evidence supporting a motion to reopen and remand must be new and previously unavailable. 8 C.F.R. § 1003.2(c)(1). "Unavailable" means that the respondent could not have discovered or presented the evidence at a former hearing. (See Matter of Coelho, 20 I&N Dec. 464, 472 (BIA 1992)). Respondent has obtained letters from the District Attorney of Queens County and The Office of Victims Services that detail the fact that Respondent was the victim of a violent crime in the United States. (see TAB 2  U Visa Application at Exhibits D and E). These letters were not avialiable to Respondent at this initial hearing and could not have been presented to the Immigration Court.

According to INS regulations, this Board has the sua sponte authority to reopen a case where unusual circumstances necessitate the case be reopened to serve the interests of justice. This grant of authority can be found in 8 C.F.R. § 3.23(b)(1). A Motion to Reopen can be granted where "it appears to the Court that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R § 1003.2 (c)(1). "In order for a motion to reopen to be granted, the respondent must establish prima facie eligibility for relief." In Re C-C-, 23 I. & N. Dec. 899, 900 (BIA 2006) (citing Matter of Coelho, 20 I. &

039-746-517

N. Dec. 464, 472 (BIA 1992)). The "Second Circuit has stated that a showing of prima facie eligibility for relief is made when there is a 'realistic chance' that the alien will be able to establish eligibility for relief." Id. (quoting Paradisova v. Gonzales, 420 F.3d 70, 78 (2d Cir. 2005)).

Respondent's emergency Motion to Reopen and for a Stay of Removal is based on the new facts that have arisen since the Court's final decision, independent evidence to support his assertions that he was shot by a international criminal organization, framed for a crime he did not commit, and documentary evidence of changes in his home Country based on case law. (see TAB 1 Asylum Application at Exhibit B) also (see TAB 2 UVisa Application and all attached Exhibits). The Respondent intends to present all of this information in this appeal. Based upon the fact as they now stand, Respondent should therefore be granted a Stay of Removal since he has a "realistic chance" of obtaining relief in his case due to the hardships his removal will cause to him and his family.

### I-b. Presenting new information that was not presented to the Court.

Respondent's emergency Motion to Reopen and for a Stay of Removal is based on new information that was not presented to the Immigration Court. Respondent was targeted for extortion by the Jamaican gang the "Gaza Empire" because of his sexual orientation. Respondent is bi-sexual and this discovered by these gang members. They used this information to threaten Respondent to pay extortion money to the "Dons" in Jamaica. (seeTAB 2 UVisa Application and all attached Exhibits), All forms of Homosexuality is looked down upon in Jamaican society. In fact it is still reported in Country Reports by Human Rights Watch 2020 that "The law in Jamaica criminalizes consensual same-sex sexual conduct between men".(see Country Reports 2020).

Respondent has already suffered a crime of violence in the United States at the hands of these Jamaican gang members because of his sexual orientation and fears that once he is deproted he will be burned alive as he was told he would be by these gang members for being homosexual and for exposing them to the police by refusing to take the blame for a crime that he did not commit. Respondent has already been shot five (5) times for his life style by multiple members of this criminal gang for refusing to pay extortion money. (see TAB 1 Asylum Application and TAB 2 U Visa Application). Respondent has already been victimized by these people and was not given a chance to present this evidence at his hearing on June 29, 2017. The letter from the

039-746-517

Office of Victims Services was not available to Respondent until October 12, 2017. (see TAB 2 U Visa Application at Exhibit E).

Respondent here presents that "(1) the germaneness of Jamaica's 'anti-buggery' law to an assessment of the government's prospective indifference to harm against members of the LGBT+ community; (2) the 2017 Human Rights Report, which indicates that "societal violence against lesbian, gay, **bisexual**, transgender, and intersex (LGBTI) persons" is one of the "most significant human rights issues" in the country, AR 513, that "[h]omophobia was widespread in the country," AR 525, and that an NGO collected reports over nine months of almost two dozen human rights violations concerning LGBT+ persons, including "six cases in which police failed to respond adequately to [such] reports," AR 525; (3) evidence that "Jamaica is a deeply homophobic society and there are reports of LGBT persons facing a high levels of both physical and sexual violence from non-state agents (and some rogue state agents) and many live in constant fear. **LGBT persons are targeted for mob violence, 'corrective rape', extortion, harassment, forced displacement and discrimination, and are taunted, threatened, fired from their jobs, thrown out of their homes, and suffer ill-treatment including being beaten, stoned, raped, or killed,"** AR 543; and (4) evidence that "[w]here LGBT persons do face a real risk of harm or ill-treatment by non-state actors, the authorities do not provide effective protection,". (see GORDON, v. ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA 828 Fed Appx 94828 [2020]). Respondent's removal would ensure that Respondent will face certain death. Respondent was denied due process under the United States Constitution when he was not allowed to present this evidence to the Immigration Court.

## II. RESPONDENT'S **MOTION** SHOULD BE GRANTED BASED ON THE CHANGE IN CIRCUMSTANCES OF HIS CRIMINAL CASE WHICH IS UNDER REVIEW BY THE CONVICTION INTEGRITY UNITY OF THE QUEENS COUNTY DISTRICT ATTORNEY AND CHANGES OF CONDITIONS IN THIS HOME COUNTRY.

Respondent respectfully ask this court to consider the change in the circumstances of his current criminal conviction. Respondent's case is currently under review by the Conviction Integrity Unit of the Queens County District Attorney's Office, where his conviction occurred. It is

039-746-517

being reviewed by Assistant District Attorney Bryce Benjit, due to the fact that evidence was withheld in Respondent's criminal case that will prove that the did not commit the crimes of which he is convicted. Based on this new evidence Respondent will be able to establish his actual and factual innocence.(see Tab 1 Asylum Application at Exhibit B pending Article 78 in the Appellate Division Second Department) also (see Tab 4 Letter from the Appellate Division Second Department of pending Appeal).

Respondent's Article 78 Motion is currently in the New York State Court of Appeals, Second Department. It is being reviewed to establish that the District Attorney of Queens withheld vital evidence at Respondent's trial. This evidence is of three (3) x-rays of a bullet that is lodged in the victim that Respondent is accused of shooting. The bullet in these x-rays are intact and the x-rays can be used to identify the caliber of the bullet, hence the caliber of the gun that was used to shoot the victim. (see Tab 1 Asylum Application at Exhibit B pending Article 78 in the Appellate Division Second Department) also (see Tab 4 Letter from the Appellate Division Second Department of pending Appeal).

The District Attorney already conceded that Respondent's finger prints nor his DNA were recovered from the gun they accused Respondent of using to commit his crimes. They also concede that the only ballistic evidence that links this gun to the crime is the bullet that is lodged in the victim which was never removed to be identified. The people could have used the x-rays to identify the caliber of the bullet but did not do so. The District Attorney have used x-rays to identify the caliber of bullets in the past. (see Tab 1 Asylum Application at Exhibit B pending Article 78 in the Appellate Division Second Department).

The People entered the victim's medical records as evidence against Respondent at his trial. (see Tab 1 Asylum Application at Exhibit B pending Article 78 in the Appellate Division Second Department). However, when they turned the medical records over to the defense, they failed to include the x-rays. These x-rays can be used to show that the victim was not shot by the gun that they claimed Respondent possessed, but by one of the same caliber guns that was used to shoot Respondent.

This will prove that Respondent and the person Respondent is accused of shooting was shot by the same person. It is important to note here that Respondent was shot five (5) times by

8 of 15

039-746-517

multiple persons using different caliber guns but due to a lack of a proper investigation by both the police and Respondent's criminal attorney this fact was not uncovered until after Respondent's conviction. This evidence is new and was not in Respondent's possessions until after his initial hearing in the Immigration Court.

Respondent here argues that circumstances have changed in his home country since he was given his initial hearing. Gang violence has always been previalent in Jamaica but it has gotten to a point that these criminal organizations now have a control over parts of the government and the police. To highlight the seriousness of these changes that has occurred since Petioner's initail hearing one only need to look at what the Court has said about the changing conditions in the country of Jamaica. "Petitoner claimed he was afraid of persecution at the hands of followers of Christopher Coke, the notorious leader of  the Jamaican gang the "Shower Posse"; Jamaican police; supporters of the former prime minister of Jamaica, Bruce Golding; and supporters of the Jamaican Labour Party". (see Blake v. United States A.G. 945 F.3d 1181 [2019]).

The Court went on to state that  "gangs ties to the highest levels of the Jamaican government are long-standing, and its policy of retaliating against those who run afoul of it, including by cooperating with law enforcement, is nothing new". (see Blake v. United States A.G945 F.3d 1181 [2019].). A State Department Country Report indicated that Jamaica's two major political parties, the Jamaica Labor Party ("JLP") and the People's National Party ("PNP"), sometimes use gangs to further political aims. The gangs most frequently affiliated with the JLP are the "Shower Posse" and the "One Order"; the gang most frequently associated with the PNP is the "Spanglers." Scarlett testified that he has never been affiliated with any political party or even voted in a Jamaican election". (see Scarlett v. Barr, 957 F.3d 316; [2020]).

The only difference with this Petitoner is that the gang that is going to kill him is called the "Gaza Empire" and they opporate with the same impunity as the "Shower Posse". (see TAB 1 Application for Asylum). These individuals from this international criminal organization was able to shoot Respondent five (5) times and frame him for a crime he did not commit in America.  They can do that and much worse to Respondent in Jamaica where they have control over some of  the security forces and members of the Government due there affiliation with the "One Order" and "One Don" gangs.

039-746-517

First, the Respondent's motion to reopen is supported by an affidavit of this aggrieved Respondent attesting to the relevant facts. (see TAB 2 UVisa Application at Exhibit A, H and I). Second, Respondent is presenting infromation that will lead to him being found actually and factually innocent of the crimes of which he has been convicted. (see Tab 1 Asylum Application at Exhibit B pending Article 78 in the Appellate Division Second Department). These said crime which tirggered this doportation proceeding. Thirdly, Petioner is presenting case law and Country Reports to show the changes of conditions in his home country since his initial hearing and since he has left this home country over 35 years ago.

Subsequently, case law supports Respondent's Motion to Reopen and of granting Petioner a Stay of Deportation; Respondent should be granted a Stay of Deportation pending resolution of his Application for Asylum. In <u>Anderson v. McElroy, 953 F.2d 803 (2d Cir. 1992)</u>, the Second Circuit decided that "the BIA had abused its discretion in denying a request for a stay of deportation, which was sought in order to reopen the removal proceedings. In Anderson, Respondent was eligible for the relief sought, and the denial was considered as abuse".

Here, Respondent qualifies, prima facie, for suspension of deportation. As with Anderson, it would be abuse of discretion to deny the stay. In <u>Butros v. INS, 804 F. Supp. 1336 (D. Ore. 1991)</u>, the Court held that "there was abuse of discretion in denying a stay particularly where the decision was "merely conclusory."

To justify a stay, a Respondent need only show that he has a "arguable claim,". ( see Order, Hechavarria v. Lynch, No 15-3331 (2d Cir. Dec. 15, 2016), ECF No. 55, which amounts to "showing less than 50 percent." Mohammed v. Reno, 306 F.3d 95, 102 (2d Cir. 2002)). Respondent here has more than a "arguable claim". The Respondent is now fighting for his life, to prevent his being returned to Jamaica where he would be placed in great danger and facing death due to his sexual orientation and for running afoul of these gang members. To deny Respondent a Stay of Removal would be inhumane and unjust. To deny a Stay may well result in Respondents demise, once he is removed and placed back in Jamaica at the mercy of a internation criminal organizarion.

On the basis of these rulings, Respondent believes that his Motion to Reopen suffices to prevent removal. Respondent begs this Board to stand by the findings at Respondent's initial hearing where this Court stated that "Respondent was found eligible to file for Defferal of

039-746-517

Removal-Convention Against Torture". (see TAB 4 Judge's Initial Decission and Recomendation ). Respondent was denied due process when he was not allowed to present this evidence before a final decission was made in this case.

## III. RESPONDENT'S MOTION SHOULD BE GRANTED BECAUSE RESPONDENT WAS DENIED DUE PROCESS WHEN HE WAS NOT INFORMED OF HIS NOTICE TO APPEAR ON JUNE 29, 2017 UNTIL THE DAY OF HIS APPEARANCE AND WAS NOT INFORMED THAT HE ONLY HAD 90 DAYS TO SUBMIT A MOTION TO REOPEN AFTER THE COURT'S FINAL DECISSION.

There is no time limit to reopen if the basis of a Motion to Reopen is to apply for asylum and it is based on changed country conditions arising in the country to which removal has been ordered, if evidence is material and was not avialable and would not have been discovered or presented at the previous proceedings. Respondent only had one court apperance and it was determined at this single proceeding that Respondent was deportable. Respondent was not afforded the due process to present evidence in his defense. Respondent was not notified of the hearing until the day of the hearing in Downstate Correctional Facility. (see TAB 3 Affidavit in Support of Board of Immigration Appeal). This was a deprivation of Respondent's right to present a defense on his own behalf. Respondent had a constitutional right to a meaningful opportunity to present a defense. (see United States Constitution 5th and 14th Amendments).

Respondent was never notified that he had 90 days to move to reopen his case if a final decision was made to have him removed. Respondent was under the impression that he would have additional court dates and would be allowed to present evidence in his favors. An agency decision denies due process "if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case," (see Colmenar v. INS, 210 F.3d 967, 971 [9th Cir. 2000] (cleaned up), and that this unfairness "affected the outcome," Lata v. INS, 204 F.3d 1241, 1246 [9th Cir. 2000]).

The court has stated that "[t]he Fifth Amendment's Due Process Clause protects individuals in removal proceedings" by requiring notice of the charges, a hearing before a tribunal, "and a fair opportunity to be heard". ( see Okpala v. Whitaker, 908 F.3d 965, 971 [5th Cir. 2018]).

11 Of 15

039-746-517

Clearly Respondent was denied Due Process when he was not notified of the hearing until the day and time of the hearing, was denied the opportunity to be heard and when he was not notified that he only had 90 days to move to reopen his proceedings after a final order had been issued. It seem that Respondent's appearance at the hearing was purely functional becuase the out come was already decided before Respondent was presented.

Respondent was denied a fair hearing because it seemed that the Immigration Judge had already made his decision to order Respondent deported and that Respondent's appearance was just a formality of the process. Respondent informed the Immigration Judge of being shot five (5) times by Jamaican gang members who would kill him if he was returned to his home country of Jamaica. The Immigration Judge brushed this claim aside and stated that that Respondent was afraid of retaliation. Respondent does not belong and has never belonged to a gang so has not reason to fear retaliation.

Respondent was the victim of Extortion due to his sexual orientation of being bi-sexual. When Respondent could not pay and refused to pay the extortion money he was then targeted for robbery and shot. Respondent was also framed and prosecuted for a crime that he did not commit. (see Tab 1 Asylum Application at Exhibit B pending Article 78 in the Appellate Division Second Department) also (see TAB 2 UVisa Application at Exhibit A, H and I).

Respondent informed the Immigration Judge of most of these issue but the Immigration did not want to investigate these issue because it seemed his only concern was to order Respondent deported. Respondent did not inform the Immigration Judge of his sexual orientation because there was a Correctional Officer who worked in Downstate Correctional Facility in the hearing room and Respondent was fearful of it being known in the prison of his sexual orientation. "Evidence of past threats and violence on the basis of a movant's membership in a disfavored group can establish this individualized risk". (see Sael v. Ashcroft, 386 F.3d 922, 927 (9th Cir. 2004).

If Respondent was given time he could have produced letters from the Queens County District Attorney to show that he was the victim of assault by gun and that one of the person who committed this crime was prosecuted. Respondentcould have produced his medical records from Jamaica Hospital in Queens New York to show that he was treated for gun shot wounds. (see TAB

12 of 15

039-746-517

2 UVisa Application). Respondent was not given the opportunity to present any evidence in his favor because the court had already made it's decision. "To establish a violation of due process, an alien must show that []he was denied a full and fair opportunity to present [his] claims or that the IJ or BIA otherwise deprived [him] of fundamental {850 Fed. Appx. 31} fairness." (see Burger v. Gonzales, 498 F.3d 131, 134 (2d Cir. 2007). Respondenthere states that he was denied a fair opportunity to present his case along with his evidence by the one appearance he was given and the rushed decission of the Immigration Judge.

039-746-517

## CONCLUSION

Based on the above, the Respondent respectfully begs that this Court grants him a Motion to Reopen and a Stay of Removal, so that his Asylum claim under the Convention Against Torture (CAT) can be processed and/or that his U Visa application can be processed and also that this Court issue a Emergency Stay of Removal while his Motion to Reopen is being reviewed processed.

Respectfully Submitted,

DATED:          May___, 2023

Buffalo New York

Respectfully submitted,

Kirk King

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Kirk King #A-039-746-517 | Mr. Merrick Garland et al |

| (b) County of Residence of First Listed Plaintiff    Erie | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Pro Se | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV |
| | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | **LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[X] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C 2241

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____



PRIORITY MAIL

Kirk King 089...
4250 Federal Drive
Batavia N.Y. 14020

TO: Office of Clerk
United States District
2 Niagara Square
Buffalo, N.Y. 142...



USDC - WDNY
MAY 2 8 2023
BUFFALO

Expected delivery date specified for domestic use.

Most domestic shipments include up to $50 of insurance (restrictions apply).*

USPS Tracking® included for domestic and many international destinations.



USPS TRACKING® #

9505 5143 7088 3142 6800 86

SHIP
TO:
2 NIAGARA SQ
BUFFALO NY 14202-3350

EXPECTED DELIVERY DAY: 05/24/23

C030

RDC 23

2 LB 9.60 OZ

PRIORITY MAIL®

US POSTAGE PAID
$0.00
Origin: 14020
05/22/23
3505200020-30

Retail

UNITED STATES POSTAL SERVICE.

P